UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------------------- X

ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE )
PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE NEW JERSEY )
INSURANCE COMPANY, ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, )
NORTHBROOK INDEMNITY COMPANY AND DEERBROOK INSURANCE COMPANY, )
)
)
**Plaintiffs,** )
)
-against- )
)
ALEKSANDR AFANASYEV, ELDAR AKHMEDOV, RUSLAN ALYAS, BETTY ANDRESOL, )
ARKADY BULOCHNIKOV, GRIGORY BRANFENBRENER, EDUARD BODRUNOV, )
GENNADIY BRONSHTEYN, DARIYA BYSTRA, VADYM DETS, MAKSYM FEDOTOV, )
ALEKSANDR FINKELSHTEYN, ROBERT FINKELSHTEYN, MARIYA GOMELSKAYA, )
YURY GROISMAN, LYUBOV GROYSMAN, MIKHAIL KAGAN, IGOR KATS, BORIS )
KATZ, VLADAMIR KHEMELNITSKI, YEFIM KLIKSHTEYN A/K/A YEFIM )
KLISSHTEYN, MAKSYM KLOSOVSKIY, OKSANA KOVALENKO, LEONID )
KOZACHKOV, MIKHAIL KREMARMAN, SOFIYA KUPERMAN, IGOR LADANOV, )
NADIA LADANOVA, NICHOLAS LESKO, VITALY LEVIN, ARTHUR LOJEWSKI, ILYA )
MUGERMAN, GARY NABITOVSKY, ALEX PIVENSHTEYN, IRINA PILYAVSKY, BELA )
RUD, OLEG SAVKUB, VIKTOR SEMERIK, ARKADI SHAPIRO, IGOR SHTURMAN A/KA )
IGOR SHIUPMAN, IGOR SOBOLEVSKY, ALEKSANDR TARTAKOVSKIY, ROMAN )
VCHERASHANSKY, VADIM VINOKOUR, VLADIMIR YEPIFANOV, ARTEM YURYEV, )
DENIS ZAGLADKO, IRINA ZAYONTS, SVETLANA ZILPER, A PLUS MEDICAL )
SUPPLIES CORP., ALEV MEDICAL SUPPLY, INC., ALROF, INC., ALUR MEDICAL )
SUPPLY, INC., AMEGA, INC., AVGUR SUPPLY, INC., BATH ORTHO SUPPLY, INC., D )
& R MEDICAL SUPPLY, INC., DB SUPPLY, INC., DORSI MEDICAL SUPPLY, INC., )
EGA GROUP, INC., ENKO ENTERPRISES INT'L, INC., FEMA MEDICAL SUPPLY, )
INC., HEAL SUPPLY INC., INFINITY HEALTH PRODUCTS, LTD., JESA MEDICAL )
SUPPLY, INC., LEICA SUPPLY INC., MED HELP SUPPLY, INC., MEDIX SURGICAL )
SUPPLY INC., MEGA SUPPLIES BILLING, INC., METROSTAR, INC., MILLENNIUM )
SUPPLIES, INC., MSSA, CORP., OLMA MEDICAL EQUIPMENT, INC., ORTHO )
PRODUCTS & EQUIPMENT, INC., ORTHO-MED SURGICAL SUPPLY, INC., PAHTA )
MEDICAL SUPPLY, INC., PARK SLOPE MEDICAL & SURGICAL SUPPLY, INC., PRIMA )
MEDICAL SUPPLY, INC., PROMED SUPPLY CO., INC., PRO-VEK PLUS INC., )
RELIABLE SUPPLY OF NY, INC., RIGHT SOLUTION MEDICAL SUPPLY, INC., )
TRIMED MEDICAL SUPPLY, INC., UNLIMITED PRODUCTS, LTD., VESPA SUPPLY, )
INC., VISS SUPPLY, INC., VISTA SURGICAL SUPPLIES, INC., WE DO CARE )
MEDICAL SUPPLY, INC., XVV, INC., YKLIK, INC., VLADISLAV AGUVAYEV, )
GRIGORY GROYSMAN, LIOUDMILA LITVINOVA, VADIM YUZOVITSKIY, MICHAEL )
ZAVRAZHIN, BENER WHOLESALE, INC., CHESTERON, INC., DEIMOS )
DISTRIBUTORS, INC., DELAZOOM, INC., DEVONIAN, INC., EXCELL PLUS, INC., )
FRAZIER TRADING COMPANY, INC., GALASA WHOLESALE, INC., GLOBAL BEST )
DEAL, INC., IVY MED DISTRIBUTORS, INC., MAJOR MARKET MERCHANDISE, )
INC., MDSS WHOLESALE, INC., NEW STEP SERVICES, INC., RIVIERA )
WHOLESALE, INC., ROPA, INC., WEST COAST, INC., JOHN DOES 1 THROUGH 20 )
AND ABC CORPORATIONS 1 THROUGH 20, )
)
)
**Defendants.** )
-------------------------------------------------------------------------------- X

**CIVIL ACTION
NO. _____**

**COMPLAINT**

**(TRIAL BY JURY
DEMANDED)**

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company, Northbrook Indemnity Company and Deerbrook Insurance Company (collectively "Plaintiffs"), by their attorneys, Stern & Montana, LLP, for their Complaint against:

Defendants Aleksandr Afanasyev, Eldar Akhmedov, Ruslan Alyas, Betty Andresol, Arkady Bulochnikov, Grigory Branfenbrener, Eduard Bodrunov, Gennaidy Bronshteyn, Dariya Bystra, Vadym Dets, Maksym Fedotov, Aleksandr Finkelshteyn, Robert Finkelshteyn, Mariya Gomelskaya, Yury Groisman, Lyubov Groysman, Mikhail Kagan, Igor Kats, Boris Katz, Vladamir Khmelnitski, Yefim Klikshteyn a/k/a Yefim Klisshteyn, Maksym Klosovskiy, Oksana Kovalenko, Leonid Kozachkov, Mikhail Kremarman, Sofiya Kuperman, Igor Ladanov, Nadia Ladanova, Nicholas Lesko, Vitaly Levin, Arthur Lojewski, Ilya Mugerman, Gary Nabitovsky, Alex Pivenshteyn, Irina Pilyavsky, Bela Rud, Oleg Savkub, Viktor Semerik, Arkadi Shapiro, Igor Shturman, Igor Sobolevsky, Aleksandr Tartakovskiy, Roman Vcherashansky, Vadim Vinokour, Vladimir Yepifanov, Artem Yuryev, Denis Zagladko, Irina Zayonts, Svetlana Zilper, (collectively the "Retail Owners");

A Plus Medical Supplies Corp., Alev Medical Supply, Inc., Alrof, Inc., Alur Medical Supply, Inc., Amega, Inc., Avgur Supply, Inc., Bath Ortho Supply, Inc., D & R Medical Supply, Inc., DB Supply, Inc., Dorsi Medical Supply, Inc., EGA Group, Inc., Enko Enterprises Int'l, Inc., Fema Medical Supply, Inc., Heal Supply, Inc., Infinity Health Products, Ltd., Jesa Medical Supply, Inc., Leica Supply Inc., Med Help Supply, Inc., Medix Surgical Supply Inc., Mega Supplies Billing, Inc., Metrostar, Inc., Millennium Supplies, Inc., MSSA, Corp., Olma Medical Equipment, Inc., Ortho Products & Equipment, Inc., Ortho-Med Surgical Supply, Inc., Pahta

2

Medical Supply, Inc., Park Slope Medical & Surgical Supply, Inc., Prima Medical Supply, Inc., Promed Supply Co., Inc., Pro-Vek Plus, Inc., Reliable Supply of NY, Inc., Right Solution Medical Supply, Inc., Trimed Medical Supply, Inc., Unlimited Products, Ltd., Vespa Supply, Inc., Viss Supply, Inc., Vista Surgical Supplies, Inc., We Do Care Medical Supply, Inc., XVV, Inc., YKLIK, Inc. (collectively referred to as the "Defendant Retailers," and together with the Retail Owners, referred to as "Retail Defendants");

Vladislav Aguvayev, Grigory Groysman, Lioudmila Litvinova, Vadim Yuzovitskiy, Michael Zavrazhin (collectively the "Wholesale Owners");

Bener Wholesale, Inc., Chesteron, Inc., Deimos Distributors, Inc., Delazoom, Inc., Devonian, Inc., Excell Plus, Inc. Frazier Trading Company, Inc., Galasa Wholesale, Inc., Global Best Deal, Inc., Ivy Med Distributors, Inc., Major Market Merchandise, Inc., MDSS Wholesale, Inc., New Step Services, Inc., Riviera Wholesale, Inc., Ropa, Inc., West Coast, Inc. (Bener Wholesale, Chesteron, Deimos Distributors, Delazoom, Galasa Wholesale, MDSS Wholesale and Riviera Wholesale are collectively referred to as the "Bener Group Wholesalers," and together with Devonian, Excel, Ivy Med Distributors, Global Best Deal, New Step Services, Major Market Merchandise, Ropa and West Coast are collectively referred to as the "Defendant Wholesalers." The Defendant Wholesalers and Wholesale Owners are referred to collectively as the "Wholesale Defendants");

John Does 1 Through 20 and ABC Corporations 1 Through 20 (collectively referred to with the Retail Defendants and Wholesale Defendants as "Defendants"), allege as follows:

## PRELIMINARY STATEMENT

1.      On information and belief, from at least 2006 and continuing through the date of the filing of this Complaint, Defendants engaged in massive, parallel and related schemes to

3

defraud automobile insurance companies, including Plaintiffs, through New York State's No-fault system.

2. This action seeks to recover more than $14,000,000.00 that Defendants stole from Plaintiffs through the submission of thousands of false and/or fraudulent insurance claims for durable medical equipment and ("DME") and/or orthotic devices. As used herein, (i) "DME" generally refers to equipment and/or supplies used for a medical purpose by individuals in their homes, including, among other things, cervical pillows, cervical traction units, cold/hot water circulating pumps, EMS units, hot/cold packs, infrared heat lamps, lumbar cushions, massagers, mattresses and whirlpools, and (ii) "orthotic devices" generally refer to items that are used to support a weak or deformed body member or to restrict or eliminate movement for medical purposes, including, but not limited to, ankle braces, back braces, cervical collars, knee braces, shoulder braces and wrist braces.

3. At all relevant times mentioned herein, each and every DME and/or orthotic device provided by the Defendant Retailers was provided pursuant to a predetermined course of treatment irrespective of medical necessity, based on illicit kickback and/or other financial compensation agreements between and among one or more of the Defendants and the No-fault Clinics as defined below.

4. To execute the scheme to defraud alleged herein, the Retail Owners, through one or more of the Retailers, entered into separate arrangements with one or more medical clinics operating in the New York metropolitan area that bill No-fault insurers for medical services (hereinafter "No-fault Clinics") and one or more of the Wholesale Defendants.

5. On information and belief, pursuant to these agreements and in exchange for kickbacks and/or other financial compensation, the No-fault Clinics, which are not named as

defendants in this action, ensured that (i) their associated doctors and/or chiropractors prescribed large amounts of virtually identical DME and/or orthotic devices to their patient population pursuant to a predetermined course of treatment irrespective of medical necessity, with the prescribed items being dictated by the Retailers; and (ii) the prescriptions were sufficiently generic so that the nature, quality and cost of any DME and/or orthotic devices could not be verified based on the description of the prescribed item alone.

6.      On information and belief, pursuant to similar agreements, and in exchange for kickbacks and/or other financial compensation, including, but not limited to, a share in the profits of the scheme to defraud, the Wholesale Defendants provided the Retailers with inexpensive DME and/or orthotic devices, along with fraudulent wholesale invoices that grossly inflated the amounts the Retailers paid for the DME and/or orthotic devices. In fact, the wholesale invoices provided typically reflected prices that were up to 30 times the actual prices that the Retailers paid to the Wholesale Defendants.

7.      On information and belief, to create the illusion that the Retailers paid the grossly inflated prices on the wholesale invoices, as more fully alleged in the "Money Laundering Scheme" section below, the Retailers who received the phony wholesale invoices issued checks to the Wholesale Defendants for the full amounts reflected on the wholesale invoices. The Retailers then used those checks to demonstrate to Plaintiffs, and others, that they had paid the false wholesale invoice amounts. In reality, on information and belief, the Wholesale Defendants converted the checks they received from the Retailers to cash and secretly returned to the Retailers upwards of 90% of the wholesale invoice amounts. These covert cash transactions were facilitated through various clandestine arrangements among the Retailers, the Wholesale Defendants, check brokers, check cashers and/or others unknown to Plaintiffs.

8.      On information and belief, through these transactions, the Retailers were able to surreptitiously obtain cash which would in turn be used for, among other things, the payment of kickbacks to the No-fault Clinics from which they purchased prescriptions for DME and/or orthotic devices.

9.      On information and belief, after obtaining the prescriptions from the No-fault Clinics and the inflated invoices from the Wholesale Defendants, the Retail Owners, through their respective Retailers, generated and submitted bills to Plaintiffs, among others, knowingly misrepresenting the actual amounts they paid for and the quality of the DME and/or orthotic devices purportedly provided.

10.     On information and belief, in order to prevent Plaintiffs from determining the appropriate charges associated with any such DME and/or orthotic device or whether the specific DME and/or orthotic device billed was medically necessary, the documents submitted to Plaintiffs by the Retail Owners through their respective Retailers in support of their fraudulent claims, including the wholesale invoices, deliberately omitted and/or misrepresented basic information about the DME and/or orthotic devices, including, but not limited to, the manufacturer, make, model, size, features and/or functions of the item and/or included information that was meaningless in determining the kind and quality of any specific DME and/or orthotic device.

11.     On information and belief, the Retail Owners, through their respective Retailers routinely purchased basic, low-quality and inexpensive items from the Wholesale Defendants, but submitted documents to Plaintiffs, including, but not limited to, inflated wholesale invoices that failed to correctly reflect the actual purchase price of each item.

12.     On information and belief, in carrying out their scheme to defraud, Defendants

stole in excess of $14,000,000 dollars from Plaintiffs by submitting, or causing to be submitted, fraudulent claims for persons who allegedly sustained injuries covered by the New York State Comprehensive Motor Vehicle Insurance Reparations Act, Ins. Law §§ 5101, *et seq.* (popularly known as the "No-fault Law").

## STATUTORY/REGULATORY SCHEME

13.     Pursuant to the No-fault Law, Plaintiffs are required to pay, *inter alia*, for health service expenses that are reasonably incurred as a result of injuries suffered by occupants of their insured motor vehicles or pedestrians ("Claimants" or "Covered Persons") which arise from the use or operation of such motor vehicles in the State of New York. Claimants can also assign these benefits to doctors and other properly licensed healthcare providers, including DME retailers, enabling them to bill insurance companies directly for their services. As described herein, Defendants exploited that system by obtaining such assignments and billing Plaintiffs for DME and/or orthotic devices that were never provided, not provided as billed, or if provided, were of inferior quality relative to what was represented in the bills submitted to Plaintiffs to have been provided and/or were otherwise medically unnecessary and provided pursuant to a predetermined course of treatment in which virtually all Claimants received substantially similar DME and/or orthotic devices. Exhibit "1" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to the Retailers notwithstanding that the DME and/or orthotic devices purportedly provided to Claimants were provided based upon a predetermined course of treatment irrespective of medical necessity.

14.     On information and belief, the Retailers are ostensibly DME supply companies that bill for medical supplies provided to, among others, individuals covered under the No-fault Law. In exchange for their services, the Retailers accepted assignments of benefits from

7

Claimants and submitted claims for payment to No-fault insurance carriers, in general, and to Plaintiffs, in particular.

15.    In purported compliance with the No-fault Law and 11 N.Y.C.R.R. 65 *et seq.*, the Retailers submitted proof of their claims to Plaintiffs using the claim form prescribed by the New York State Department of Insurance (known as a "Verification of Treatment by Attending Physician or Other Provider of Health Service" or "NYS form NF-3") or a substantially similar form.

16.    Pursuant to Section 403 of the New York State Insurance Law, the claim forms submitted to Plaintiffs by the Retailers contained the following warning at the foot of the page:

> Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.

17.    Pursuant to the No-fault Law and implementing regulations, as well as the applicable policies of insurance, Plaintiffs were required to promptly process claims within 30 days of receipt of proof of claim.

18.    Section 5108 of the No-fault Law circumscribes the amount that a licensed healthcare provider or other authorized person, such as a DME provider, may recover for health service related expenses. In particular, under this section, such persons are only entitled to reimbursement of necessary medically related expenses in accordance with the applicable fee schedules adopted by the Superintendent of Insurance.

19.    Effective October 6, 2004, the Superintendent of Insurance adopted the Medicaid Fee Schedule for the reimbursement of DME and/or medical supplies through the 28th amendment to "Regulation 83," which was in effect at all relevant times mentioned herein and

provides that the:

> maximum permissible charge for the purchase of durable medical equipment, medical/surgical supplies, orthopedic footwear and orthotic and prosthetic appliances is the fee payable for such equipment and supplies under the New York State Medicaid program at the time such equipment and supplies are provided. If the New York State Medicaid program has not established a fee payable for the specific item, then the fee payable, in accordance with Medicaid rules, shall be the lesser of: (1) the acquisition cost (i.e., the line item cost from a manufacturer or wholesaler net of any rebates, discounts or other valuable considerations, mailing, shipping, handling, insurance costs or any sales tax) to the provider plus 50%; or (2) the usual and customary price charged to the general public.

11 N.Y.C.R.R. § 68 (Appendix 17-C, Part F).

20.     Pursuant to Section 5108(c) of the No-fault Law, "no provider of health . . . services may demand or request any payment in addition to the charges authorized pursuant to this section."

21.     At all relevant times mentioned herein, nearly each and every bill mailed by the Retail Owners, through their respective Retailers, to Plaintiffs for reimbursement sought reimbursement in excess of the amounts authorized by the No-fault Law by materially misrepresenting the DME and/or orthotic devices provided, if provided at all, as well as the cost and quality of the billed for DME and/or orthotic devices. To the extent the DME and/or orthotic devices were provided at all, each item was a basic, low-quality piece of medical equipment for which the Retailers' wholesale cost was a mere fraction of the amount they charged Plaintiffs and/or was medically unnecessary because it was provided pursuant to a predetermined course of treatment, irrespective of need.

22.     At all times relevant herein, the Defendants exploited the No-fault Law through the utilization of various deceptive billing tactics engineered to maximize the amount of

reimbursement from insurers, in general, and Plaintiffs, in particular, through the submission of fraudulent billing documents that misrepresented the nature, quality and cost of items that both are and are not listed on the relevant fee schedule ("Fee Schedule items" and "Non-Fee Schedule items," respectively) purportedly provided to Claimants.

23.     As set forth in the "Non-Fee Schedule Scheme to Defraud" below, the Retail Owners, through their respective Retailers routinely submitted bills to Plaintiffs for Non-Fee Schedule items wherein the Retailers misrepresented that: (i) the DME and/or orthotic devices purportedly provided were reimbursable under the relevant Fee Schedule in existence at the time when, in fact, the Retailers were utilizing codes that were not recognized by, or otherwise listed in, the relevant Fee Schedule ("phantom codes"); (ii) the charges reflected on the Retailers' bills were in accordance with the Amendment to Regulation 83, when in fact the charges were grossly inflated; and/or (iii) the DME and/or orthotic devices purportedly provided were reimbursable pursuant to the Fee Schedule, when they were not. In doing so, the Retail Owners, through their respective Retailers, deliberately misrepresented the amounts that they were entitled to receive under the No-fault Law.

24.     In addition, as set forth below in the "Fee Schedule Scheme to Defraud" below, the Retail Owners, through their respective Retailers routinely submitted fraudulent bills to Plaintiffs for (i) DME and/or orthotic devices that were never provided, including, but not limited to, expensive custom-fabricated or custom-fit DME and/or orthotic devices; and/or (ii) DME and/or orthotic devices for which the Retailers billed Plaintiffs in excess of the relevant fee schedule in existence at the time.

25.     On information and belief, the Defendant Retailers and Wholesalers alike were created for the purpose of participating in the fraudulent billing of insurance companies under the

No-fault Law.

26.     Every aspect of Defendants' fraudulent scheme was motivated by money, without regard to the grave harm inflicted on the public at large by the Defendants, who, to the extent that they provided any DME and/or orthotic devices at all, provided No-fault Claimants with inferior, low-quality items, potentially compromising their health.

27.     The duration, scope and nature of the Defendants' illegal conduct bring this case well within the realm of criminal conduct to which the Racketeer Influenced and Corrupt Organizations Act ("RICO") applies. Defendants did not engage in sporadic acts of fraud – although that would be troubling enough – rather, they adopted fraudulent blueprints as their business plans and used them to participate in systematic patterns of racketeering activity. Every facet of Defendants' operations, from securing prescriptions for DME and/or orthotic devices pursuant to a predetermined course of treatment, to obtaining inflated wholesale invoices for inexpensive, low quality items, to generating bills that contained codes not recognized under the relevant Fee Schedule in existence at the time or that misrepresented the nature, quality and cost of DME and/or orthotic devices purportedly provided, was carried out for the purpose of committing fraud.

## NATURE OF THE ACTION

28.     This action is brought pursuant to:

    i)      The United States Racketeer Influenced and Corrupt Organizations Act ("RICO"); 18 U.S.C. §§ 1961, 1962(c) and 1964(c); and

    ii)     New York State common law.

## NATURE OF RELIEF SOUGHT

29.     Plaintiffs seek treble damages pursuant to 18 U.S.C. § 1964(c) which they

sustained as a result of the Defendants' schemes to defraud and acts of mail fraud in connection with their use of the facilities of the No-fault system to fraudulently obtain payments from Plaintiffs for DME and/or orthotic devices which Defendants allegedly provided to individuals covered by Plaintiffs under New York State's No-fault Law.

30.    As a result of Defendants' actions alleged herein, Plaintiffs were defrauded of an amount in excess of $14,000,000.00, the exact amount to be determined at trial, in payments that Defendants received as a result of their fraudulent billing of Plaintiffs for DME and/or orthotic devices that was never provided, or if provided, were not the billed for items.

## THE PARTIES

### A.    Plaintiffs

31.    Plaintiff Allstate Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

32.    Plaintiff Allstate Indemnity Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

33.    Plaintiff Allstate Property & Casualty Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

34.    Plaintiff Allstate New Jersey Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

35.    Plaintiff Allstate Fire & Casualty Insurance Company is a corporation duly

12

organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

36.     Plaintiff Northbrook Indemnity Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

37.     Plaintiff Deerbrook Insurance Company is a corporation duly organized and existing under the laws of the State of Illinois, having its principal place of business in Northbrook, Illinois.

38.     Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company, Northbrook Indemnity Company and Deerbrook Insurance Company are collectively referred to as "Plaintiffs."

39.     Plaintiffs are duly organized and licensed to engage in the writing of automobile insurance policies in the State of New York and provide automobile insurance coverage to their policyholders under and in accordance with New York State Law.

**B.     The Individual Retail Owner Defendants**

40.     Aleksandr Afanasyev ("Afanasyev") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer MSSA, Corp., and at all times relevant herein, together with Defendants Rud and Vinokour participated in the management and/or control of MSSA, Corp.'s activities.  Moreover, at all times relevant herein, Defendant Afanasyev, together with Defendants Lesko, Vinokour, Rud and Zagladko participated in the management and/or control of Retailer Viss Supply, Inc.'s activities. In addition to the foregoing, at all times relevant herein, Defendant Afanasyev, together with

Defendants Zagladko, Vinokour and Rud participated in the management and/or control of Vespa Supply, Inc.'s activities. Furthermore, at all times relevant herein, Defendant Afanasyev, together with Defendants Dets, Vinokour, Rud and Zagladko participated in the management and/or control of Retailer Amega, Inc.'s activities.

41. On information and belief, on or about June 8, 2010, Afanasyev was indicted by the United States Attorney's Office for the Eastern District of New York for insurance fraud related-crimes (Indictment No. 10-CR-459 (ARR)). Specifically, Afanasyev was indicted for, *inter alia,* conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347, 1349 and 1351 in connection with a vast conspiracy to systematically defraud No-fault insurance carriers by submitting fraudulent claims for DME through one or more of the Defendant Retailers named herein.

42. On May 16, 2011, Afanasyev pled guilty to count one of the aforementioned indictment, *to wit:* Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349, and also pled guilty to tax evasion in violation of 26 U.S.C. § 7201 based upon his failure to report, to the Internal Revenue Service, approximately $1,000,000.00 of income earned in the 2009 and 2010 tax years in connection with the health care fraud he perpetrated against No-fault insurance companies.

43. Eldar Akhmedov ("Akhmedov") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Med Help Supply, Inc., and at all times relevant herein, operated, managed and/or controlled its activities.

44. Ruslan Alyas ("Alyas") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Park Slope Medical & Surgical Supply, Inc., and at all times relevant herein, together with Defendant Kremarman,

14

participated in the management and/or control of its activities.

45. Betty Andresol ("Andresol") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Avgur Supply, Inc., and at all times relevant herein, operated, managed and/or controlled its activities.

46. Arkady Bulochnikov ("Bulochnikov") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Prima Medical Supply, Inc., and at all times relevant herein, operated, managed and/or controlled its activities.

47. Grigory Branfenbrener ("Branfenbrener") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Leica Supply Inc., and at all times relevant herein, together with Defendant L. Groysman, participated in the operation, management and/or control of its activities. In addition to the foregoing, at all times relevant herein, Defendant Branfenbrener, together with Defendants Kuperman and L. Groysman, participated in the operation, management and/or control of Retailer EGA Group, Inc.'s activities.

48. On information and belief, on or about June 8, 2010, Branfenbrener was indicted by the United States Attorney's Office for the Eastern District of New York for insurance fraud related-crimes (Indictment No. 10-CR-459 (ARR)). Specifically, Branfenbrener was indicted for, *inter alia*, Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. §§ 1347, 1349 and 1351 in connection with a vast conspiracy to systematically defraud No-fault insurance carriers by submitting fraudulent claims for DME through one or more of the Defendant Retailers named herein.

49. On November 3, 2011, Branfenbrener pled guilty to count one of the

aforementioned indictment, *to wit*: Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349 in connection with the health care fraud he perpetrated against No-fault insurance companies.

50.     Eduard Bodrunov ("Bodrunov") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Avgur Supply, Inc., and at all times relevant herein, participated in the operation, management and/or control of its activities. In addition to the foregoing, at all times relevant herein, Defendant Bodrunov, together with Defendant Bystra, participated in the operation, management and/or control of Retailer DB Supply, Inc.'s activities.

51.     On information and belief, on or about June 8, 2010, Bodrunov was indicted by the United States Attorney's Office for the Eastern District of New York for insurance fraud related-crimes (Indictment No. 10-CR-459 (ARR)). Specifically, Bodrunov was indicted for, *inter alia*, conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347, 1349 and 1351 in connection with a vast conspiracy to systematically defraud No-fault insurance carriers by submitting fraudulent claims for DME through one or more of the Defendant Retailers named herein.

52.     On May 23, 2011, Bodrunov pled guilty to count one of the aforementioned indictment, *to wit*: Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349 in connection with the health care fraud he perpetrated against No-fault insurance companies.

53.     Gennaidy Bronshteyn ("Bronshteyn") is a natural person residing in the State of New York and, on information and belief, at all times relevant herein, together with Defendant Shapiro, participated in the operation, management and/or control of Retailer Alev Medical Supply, Inc.'s activities. In addition to the foregoing, at all times relevant herein, Defendant

Bronshteyn, together with Defendants Fedotov and Shapiro, participated in the operation, management and/or control of Retailer Fema Medical Supply, Inc.'s activities.

54.    On information and belief, on or about June 8, 2010, Bronshteyn was indicted by the United States Attorney's Office for the Eastern District of New York for insurance fraud related-crimes (Indictment No. 10-CR-459 (ARR)). Specifically, Bronshteyn was indicted for, *inter alia*, conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347, 1349 and 1351 in connection with a vast conspiracy to systematically defraud No-fault insurance carriers by submitting fraudulent claims for DME through one or more of the Defendant Retailers named herein.

55.    On information and belief, on June 7, 2011, Bronshteyn pled guilty to count one of the aforementioned indictment, *to wit*: Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349, and also plead guilty to tax evasion in violation of 26 U.S.C. § 7201 based upon his failure to report to the Internal Revenue Service approximately $1,100,000.00 of income earned in the 2008 tax year in connection with the health care fraud he perpetrated against No-fault insurance companies.

56.    Dariya Bystra ("Bystra") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer DB Supply, Inc., and at all times relevant herein, together with Defendant Bodrunov, participated in the operation, management and/or control of its activities.

57.    Vadym Dets ("Dets") is a natural person residing in the State of Illinois and on information and belief, is a principal, officer and/or director of Retailer Amega, Inc., and at all times relevant herein, together with Defendants Afanasyev, Zagladko, Vinokour and Rud, participated in the operation, management and/or control of its activities.

58.     Maksym Fedotov ("Fedotov") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Fema Medical Supply, Inc., and at all times relevant herein, together with Defendants Bronshteyn, and Shapiro, participated in the operation, management and/or control of its activities.

59.     Aleksandr Finkelshteyn ("A. Finkelshteyn") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Alrof, Inc., and at all times relevant herein, together with R. Finkelshteyn, participated in the operation, management and/or control of its activities.

60.     Robert Finkelshteyn ("R. Finkelshteyn") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Alrof, Inc., and at all times relevant herein, together with A. Finkelshteyn, participated in the operation, management and/or control of its activities.

61.     On information and belief, on or about September 12, 2011, R. Finkelshteyn and A. Finkelshteyn were charged by the United States Attorney's Office for the Eastern District of New York for insurance fraud related-crimes (Complaint M-11-909). Specifically, R. Finkelshteyn and A. Finkelshteyn were charged with Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. §§ 1347 and 1349 in connection with a vast conspiracy to systematically defraud No-fault insurance carriers by submitting fraudulent claims for DME through Retailer Alrof, Inc.   Subsequently, on or about October 28, 2011, Defendant R. Finkelshteyn was indicted by the United States Attorney's Office for the Eastern District of New York for insurance fraud related-crimes (Indictment No. 11-CR-737 (SJ) relating to the aforementioned Complaint.

62.     Mariya Gomelskaya ("Gomelskaya") is a natural person residing in the State of

New York and, on information and belief, is a principal, officer and/or director of Retailer Dorsi Medical Supply, Inc. and at all times relevant herein, together with Defendant Shturman, participated in the operation, management and/or control of its activities and the activities of Retailer Trimed Medical Supply, Inc.

63.     On information and belief, on or about June 16, 2010, Gomelskaya and Shturman were indicted by the United States Attorney's Office for the Eastern District of New York for insurance fraud related-crimes (Indictment No. 10-CR-460 (SJ). Specifically, Gomelskaya and Shturman were indicted for, *inter alia*, Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. §§ 1347, 1349 and 1351 in connection with a vast conspiracy to systematically defraud No-fault insurance carriers by submitting fraudulent claims for DME through Retailers Dorsi Medical Supply, Inc. and Trimed Medical Supply, Inc.

64.     On May 24, 2011, Gomelskaya pled guilty to count one of the aforementioned indictment, *to wit*: Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349 in connection with the health care fraud he perpetrated against No-fault insurance companies through Defendant Retailers Trimed Medical Supply, Inc. and Dorsi Medical Supply, Inc.

65.     Yury Groisman ("Groisman") is a natural person residing in the State of New Jersey and on information and belief, is a principal, officer and/or director of Retailer Reliable Supply of NY, Inc., and at all times relevant herein, operated, managed and/or controlled its activities.

66.     Lyubov Groysman ("L. Groysman") is a natural person residing in the State of New York and, on information and belief, at all times relevant herein, together with Defendant Branfenbrener, participated in the operation, management and/or control of every aspect Retailers Leica Supply Inc.'s activities. In addition to the foregoing, at all times relevant herein,

Defendant Groysman, together with Defendants Kuperman and Branfenbrener, participated in the operation, management and/or control of Retailer EGA Group, Inc.'s activities.

67.     On information and belief, on or about June 8, 2010, L. Groysman was indicted by the United States Attorney's Office for the Eastern District of New York for insurance fraud related-crimes (Indictment No. 10-CR-459 (ARR)). Specifically, L. Groysman was indicted for, *inter alia*, Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. §§ 1347, 1349 and 1351 in connection with a vast conspiracy to systematically defraud No-fault insurance carriers by submitting fraudulent claims for DME through one or more of the Defendant Retailers named herein.

68.     Mikhail Kagan ("M. Kagan") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Infinity Health Products, Ltd., and at all times relevant herein, together with Defendant Mugerman, participated in the operation, management and/or control of its activities.

69.     Igor Kats ("Kats") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Vista Surgical Supplies, Inc., and at all times relevant herein, operated, managed and/or controlled its activities.

70.     Boris Katz ("Katz") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Ortho Products and Equipment, Inc., and at all times relevant herein, operated, managed and/or controlled its activities.

71.     Vladamir Khemelnitski ("Khemelnitski") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Pro-Vek Plus, Inc., and at all times relevant herein, together with Defendant Semerik, participated in

the operation, management and control of its activities. In addition to the foregoing, at all times relevant herein, Defendant Khemelnitski, together with Defendants Kovalenko and Semerik, participated in the operation, management and/or control of Retailer Enko Enterprises Int'l, Inc.'s activities.

72. On information and belief, on or about June 8, 2010, Khemelnitski was indicted by the United States Attorney's Office for the Eastern District of New York for insurance fraud related-crimes (Indictment No. 10-CR-459 (ARR)). Specifically, Khemelnitski was indicted for, *inter alia*, Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. §§ 1347, 1349 and 1351 in connection with a vast conspiracy to systematically defraud No-fault insurance carriers by submitting fraudulent claims for DME through one or more of the Defendant Retailers named herein.

73. Yefim Klikshteyn a/k/a Yefim Klisshteyn ("Klikshteyn") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailers XVV, Inc., YKLIK, Inc. and Right Solution Medical Supply, Inc., and at all times relevant herein, operated, managed and/or controlled every aspect of their activities.

74. Maksym Klosovskiy ("Klosovskiy") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Bath Ortho Supply, Inc., and at all times relevant herein, together with Defendant Yuryev, participated in the operation, management and/or control of its activities.

75. Oksana Kovalenko ("Kovalenko") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Enko Enterprises Int'l, Inc., and at all times relevant herein, together with Defendants Khemelnitski and Semerik, participated in the operation, management and/or control of its activities.

76.     Leonid Kozachkov ("Kozachkov") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Mega Supplies Billing, Inc., and at all times relevant herein, operated, managed and/or controlled its activities.

77.     Mikhail Kremarman ("Kremarman") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Park Slope Medical & Surgical Supply, Inc., and at all times relevant herein, together with Defendant Alyas, participated in the operation, management and/or control of its activities.

78.     Sofiya Kuperman ("Kuperman") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer EGA Group, Inc., and at all times relevant herein, together with Defendants Branfenbrener and Groysman, participated in the operation, management and/or control of its activities.

79.     Igor Ladanov ("Ladanov") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Promed Supply Co., Inc., and at all times relevant herein, together with Defendant Yuryev, participated in the operation, management and/or control of its activities.

80.     On information and belief, on or about June 15, 2010, Ladanov was indicted by the United States Attorney's Office for the Eastern District of New York for insurance fraud related-crimes (Indictment No. 10-CR-472 (DGT)). Specifically, Ladanov was indicted for, *inter alia*, Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. §§ 1347, 1349 and 1351 in connection with a vast conspiracy to systematically defraud No-fault insurance carriers by submitting fraudulent claims for DME through one or more of the Defendant Retailers named herein.

81.     On April 28, 2011, Ladanov pled guilty to count one of the aforementioned indictment, *to wit*: Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349 in connection with the health care fraud he perpetrated against No-fault insurance companies.

82.     Nadia Ladanova ("Ladanova") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Heal Supply, Inc., and at all times relevant herein, together with Defendant Yepifanov, operated, managed and/or controlled its activities.

83.     Nicholas Lesko ("Lesko") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Viss Supply, Inc., and at all times relevant herein, together with Defendants Vinokour and Afanasyev, participated in the operation, management and/or control of its activities.

84.     Vitaly Levin ("Levin") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailers Medix Surgical Supply, Inc. and Ortho-Med Surgical Supply, Inc., and at all times relevant herein, operated, managed and/or controlled every aspect of their activities.

85.     Arthur Lojewski ("Lojewski") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer A Plus Medical Supplies, Corp., and at all times relevant herein, operated, managed and/or controlled its activities.

86.     Ilya Mugerman ("Mugerman") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Unlimited Products, Ltd., and at all times relevant herein, operated, managed and/or controlled every aspect of its activities, and, together with Defendant M. Kagan, participated in the operation,

23

management and/or control of Retailer Infinity Health Products, Ltd.'s activities.

87.     On information and belief, on or about June 8, 2010, Mugerman was indicted by the United States Attorney's Office for the Eastern District of New York for insurance fraud related-crimes (Indictment No. 10-CR-459 (ARR) ). Specifically, Mugerman was indicted for, *inter alia*, Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. §§ 1347, 1349 and 1351 in connection with a vast conspiracy to systematically defraud No-fault insurance carriers by submitting fraudulent claims for DME through one or more of the Defendant Retailers named herein.

88.     Gary Nabitovsky ("Nabitovsky") is a natural person residing in the State of Pennsylvania and on information and belief, is a principal, officer and/or director of Retailer Jesa Medical Supply, Inc., and at all times relevant herein, operated, managed and/or controlled its activities.

89.     Alex Pivenshteyn ("Pivenshteyn") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer D & R Medical Supply, Inc., and at all times relevant herein, operated, managed and/or controlled its activities.

90.     Irina Pilyavsky ("Pilyavsky") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer We Do Care Medical Supply, Inc., and at all times relevant herein, operated, managed and/or controlled its activities.

91.     Bela Rud ("Rud") is a natural person residing in the State of New York and, on information and belief, at all times relevant herein, together with Defendants Afanasyev, Vinokour and Zagladko participated in the operation, management and/or control of MSSA,

Corp.'s activities. In addition to the foregoing, at all times relevant herein, Defendant Rud, together with Lesko, Vinokour, Afanasyev and Zagladko participated in the operation, management and/or control of Retailer Viss Supply, Inc.'s activities. Moreover, at all times relevant herein, Defendant Rud, together with Defendants Zagladko, Vinokour and Afanasyev participated in the operation, management and/or control of Vespa Supply, Inc.'s activities. Furthermore, at all times relevant herein, Defendant Rud, together with Defendants Dets, Vinokour, Afanasyev and Zagladko participated in the operation, management and/or control of Retailer Amega, Inc.'s activities.

92. On information and belief, on or about June 8, 2010, Rud was indicted by the United States Attorney's Office for the Eastern District of New York for insurance fraud related-crimes (Indictment No. 10-CR-459 (DGT)). Specifically, Rud was indicted for, *inter alia*, Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. §§ 1347, 1349 and 1351 in connection with a vast conspiracy to systematically defraud No-fault insurance carriers by submitting fraudulent claims for DME through one or more of the Defendant Retailers named herein.

93. Oleg Savkub ("Savkub") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Olma Medical Equipment, Inc., and at all times relevant herein, operated, managed and/or controlled its activities.

94. Viktor Semerik ("Semerik") is a natural person residing in the State of New York and, on information and belief, at all times relevant herein, together with Defendant Kovalenko and Khmelnitski, participated in the operation, management and/or control of Retailer Enko Enterprises Int'l, Inc.'s activities. In addition to the foregoing, at all times relevant herein,

Defendant Semerik, together with Defendant Khemelnitski, participated in the operation, management and/or control of Retailer Pro-Vek Plus, Inc.'s activities.

95.     On information and belief, on or about June 8, 2010, Semerik was indicted by the United States Attorney's Office for the Eastern District of New York for insurance fraud related-crimes (Indictment No. 10-CR-459 (ARR)).  Specifically, Semerik was indicted for, *inter alia*, Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. §§ 1347, 1349 and 1351 in connection with a vast conspiracy to systematically defraud No-fault insurance carriers by submitting fraudulent claims for DME through one or more of the Defendant Retailers named herein.

96.     On December 6, 2011, Semerik pled guilty to count one of the aforementioned indictment, *to wit*: Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349 in connection with the health care fraud he perpetrated against No-fault insurance companies.

97.     Arkadi Shapiro ("Shapiro") is a natural person residing in the State of New York and, on information and belief, at all times relevant herein, together with Defendant Bronshteyn, participated in the operation, management and/or control of Retailer Alev Medical Supply, Inc.'s activities.  In addition to the foregoing, at all times relevant herein, Defendant Shapiro, together with Defendants Fedotov and Bronshteyn, participated in the operation, management and/or control of Retailer Fema Medical Supply, Inc.'s activities.

98.     On information and belief, on or about June 8, 2010, Shapiro was indicted by the United States Attorney's Office for the Eastern District of New York for insurance fraud related-crimes (Indictment No. 10-CR-459 (ARR)).  Specifically, Shapiro was indicted for, *inter alia*, Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. §§ 1347, 1349 and 1351 in connection with a vast conspiracy to systematically defraud No-fault insurance carriers by

submitting fraudulent claims for DME through one or more of the Defendant Retailers named herein.

99. On June 7, 2011, Shapiro pled guilty to count one of the aforementioned indictment, *to wit*: Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349, and also pled guilty to tax evasion in violation of 26 U.S.C. § 7201 based upon his failure to report to the Internal Revenue Service approximately $1,100,000.00 of income earned in the 2008 tax year in connection with the health care fraud he perpetrated against No-fault insurance companies.

100. Igor Shturman ("Shturman") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Trimed Medical Supply, Inc., and at all times relevant herein, together with Defendant Gomelskaya, participated in the operation, management and/or control its activities and the activities of Retailer Dorsi Medical Supply, Inc.

101. On information and belief, on or about June 16, 2010, Shturman and Gomelskaya were indicted by the United States Attorney's Office for the Eastern District of New York for insurance fraud related-crimes (Indictment No. 10-CR-460 (SJ)). Specifically, Shturman and Gomelskaya were indicted for, *inter alia*, Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. §§ 1347, 1349 and 1351 in connection with a vast conspiracy to systematically defraud No-fault insurance carriers by submitting fraudulent claims for DME through Retailers Dorsi Medical Supply, Inc. and Trimed Medical Supply, Inc.

102. On May 24, 2011, Shturman pled guilty to count one of the aforementioned indictment, *to wit*: Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349 in connection with the health care fraud he perpetrated against No-fault insurance companies

27

through Defendant Retailers Trimed Medical Supply, Inc. and Dorsi Medical Supply, Inc.

103.    Igor Sobolevsky ("Sobolevsky") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Alur Medical Supply, Inc., and at all times relevant herein, together with Defendant Zayonts, participated in the operation, management and/or control of its activities.

104.    Aleksandr Tartakovskiy ("Tartakovskiy") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Millennium Supplies, Inc., and at all times relevant herein, participated in the operation, management and/or control of its activities.

105.    Roman Vcherashansky ("Vcherashansky") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Metrostar, Inc., and at all times relevant herein, participated in the operation, management and/or control of its activities.

106.    Vadim Vinokour ("Vinokour") is a natural person residing in the State of New York and, on information and belief, at all times relevant herein, together with Defendants Afanasyev, Rud and Zagladko participated in the operation, management and/or control of MSSA, Corp.'s activities. Moreover, at all times relevant herein, Defendant Vinokour, together with Defendants Lesko, Rud, Afanasyev and Zagladko participated in the operation, management and/or control of Retailer Viss Supply, Inc.'s activities. Furthermore, at all times relevant herein, Defendant Vinokour, together with Defendants Zagladko, Rud and Afanasyev participated in the operation, management and/or control of Vespa Supply, Inc.'s activities. In addition to the foregoing, at all times relevant herein, Defendant Vinokour, together with Defendants Dets, Rud, Afanasyev and Zagladko, participated in the operation, management and/or control of Retailer

Amega, Inc.'s activities.

107.    On information and belief, on or about June 8, 2010, Vinokour was indicted by the United States Attorney's Office for the Eastern District of New York for insurance fraud related-crimes (Indictment No. 10-CR-459 (ARR). Specifically, Vinokour was indicted for, *inter alia*, conspiracy to commit health care fraud in violation of 18 U.S.C. §§ 1347, 1349 and 1351 in connection with a vast conspiracy to systematically defraud No-fault insurance carriers by submitting fraudulent claims for DME through one or more of the Defendant Retailers named herein.

108.    On February 2, 2010, Vinokour pled guilty to count one of the aforementioned indictment, *to wit*: Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349 in connection with the health care fraud he perpetrated against No-fault insurance companies submitting fraudulent claims for DME through, among others, Defendant Retailers MSSA, Corp., Viss Supply, Inc. and Vespa Supply, Inc.

109.    Vladimir Yepifanov ("Yepifanov") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Heal Supply, Inc., and at all times relevant herein, together with Defendant Ladanova, operated, managed and/or controlled its activities.

110.    Artem Yuryev ("Yuryev") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailers Bath Ortho Supply, Inc. and Promed Supply Co., Inc., and at all times relevant herein, together with Defendant Ladanov, participated in the operation, management and/or control of Retailer Promed Supply Co., Inc.'s activities. In addition to the foregoing, at all times relevant herein, Defendant Yuryev, together with Defendant Klosovskiy, participated in the operation, management and/or

control of Retailer Bath Ortho Supply, Inc.'s activities.

111. On information and belief, on or about June 15, 2010, Yuryev was indicted by the United States Attorney's Office for the Eastern District of New York for insurance fraud related-crimes (Indictment No. 10-CR-472 (DGT)). Specifically, Yuryev was indicted for, *inter alia*, Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. §§ 1347, 1349 and 1351 in connection with a vast conspiracy to systematically defraud No-fault insurance carriers by submitting fraudulent claims for DME through one or more of the Defendant Retailers named herein.

112. On April 28, 2011, Yuryev pled guilty to count one of the aforementioned indictment, *to wit*: Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349 in connection with the health care fraud he perpetrated against No-fault insurance companies.

113. Denis Zagladko ("Zagladko") is a natural person residing in the State of New York and, on information and belief, at all times relevant herein, together with Defendants Afanasyev, Rud and Vinokour, participated in the operation, management and/or control of MSSA, Corp.'s activities. Furthermore, at all times relevant herein, Defendant Zagladko, together with Lesko, Rud, Afanasyev and Vinokour, participated in the operation, management and/or control of Retailer Viss Supply, Inc.'s activities. Moreover, at all times relevant herein, Defendant Zagladko, together with Defendants Vinokour, Rud and Afanasyev, participated in the operation, management and/or control of Vespa Supply, Inc.'s activities. In addition to the foregoing, Defendant Zagladko, together with Defendants Dets, Rud, Afanasyev and Vinokour, participated in the operation, management and/or control of Retailer Amega, Inc.'s activities.

114. On information and belief, on or about June 8, 2010, Zagladko was indicted by the United States Attorney's Office for the Eastern District of New York for insurance fraud

related-crimes (Indictment No. 10-CR-459 (ARR)). Specifically, Zagladko was indicted for, *inter alia*, Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. §§ 1347, 1349 and 1351 in connection with a vast conspiracy to systematically defraud No-fault insurance carriers by submitting fraudulent claims for DME through one or more of the Defendant Retailers named herein.

115.   On July 11, 2011, Zagladko pled guilty to count one of the aforementioned indictment, *to wit*: Conspiracy to Commit Health Care Fraud in violation of 18 U.S.C. § 1349 in connection with the health care fraud he perpetrated against No-fault insurance companies.

116.   Irina Zayonts ("Zayonts") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Alur Medical Supply, Inc., and at all times relevant herein, together with Defendant Sobolevsky, operated, managed and/or controlled its activities.

117.   Svetlana Zilper ("Zilper") is a natural person residing in the State of New York and, on information and belief, is a principal, officer and/or director of Retailer Pahta Medical Supply, Inc., and at all times relevant herein, operated, managed and/or controlled its activities.

## C.   The Individual Wholesale Owner Defendants

118.   Vladislav Aguvayev ("Aguvayev") is a natural person residing in the State of New York and is a principal, officer and/or director of Wholesale Defendant Frazier Trading, Inc., and at all times relevant herein, operated, managed and/or controlled its activities.

119.   Grigory Groysman ("G. Groysman") is a natural person residing in the State of New York and is a principal, officer and/or director of one or more of the Bener Group Wholesalers and at all times relevant herein, participated in the operation, management and/or control of their activities

31

120. Lioudmila Litvinova ("Litvinova") is a natural person residing in the State of New York and is listed as a principal, officer and/or director of Wholesale Defendant MDSS on paperwork filed with the New York Department of State.

121. Vadim Yuzovitskiy ("Yuzovitskiy") is a natural person residing in the State of New York and is a principal, officer and/or director of one or more of the Bener Group Wholesalers and at all times relevant herein, participated in the operation, management and/or control of their activities.

122. Michael Zavrazhin ("Zavrazhin") is a natural person residing in the State of New York and is a principal, officer and/or director of Wholesale Defendants Major Market, Inc. and Devonian, Inc. and at all times relevant herein, operated, managed and/or controlled their activities.

## D.    The Corporate Retailer Defendants

123. On information and belief, A Plus Medical Supplies Corp. ("A Plus Medical Supplies") was incorporated on or about October 23, 2007 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 653 East 5th Street, Brooklyn, New York 11218. A Plus Medical Supplies is operated, managed, and/or controlled by Defendant Lojewski and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

124. On information and belief, Alev Medical Supply, Inc. ("Alev Medical Supply") was incorporated on or about December 13, 2006 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 1639 Bath Avenue, Brooklyn, New York 11214. Alev Medical Supply is operated, managed, and/or controlled by Defendants Shapiro and Bronshteyn and submitted fraudulent

claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

125. On information and belief, Alrof. Inc. ("Alrof") was incorporated on or about February 12, 2007 and, until its corporate dissolution on or about July 27, 2011, purported to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 2515 65th Street, Brooklyn, New York 11204. Alrof is operated, managed, and/or controlled by Defendants A. Finkelshteyn and R. Finkelshteyn and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

126. On information and belief, Alur Medical Supply, Inc. ("Alur Medical Supply") was incorporated on or about March 16, 2006 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 2515 65th Street, Brooklyn, New York 11204. Alur Medical Supply is operated, managed, and/or controlled by Defendants Zayonts and Sobolevsky and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

127. On information and belief, Amega, Inc. ("Amega") was incorporated on or about May 19, 2009 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 2294 East 14th Street, Brooklyn, New York 11229. Amega is operated, managed, and/or controlled by Defendants Dets, Vinokour, Afanasyev, Zagladko and Rud and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

128. On information and belief, Avgur Supply, Inc. ("Avgur Supply") was incorporated on or about July 30, 2009 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 1839 East 13th

Street, Brooklyn, New York 11229. Avgur Supply is operated, managed, and/or controlled by Defendants Bodrunov and Andresol and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

129.    On information and belief, Bath Ortho Supply, Inc. ("Bath Ortho Supply") was incorporated on or about November 19, 2008 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 187 Avenue S, Brooklyn, New York 11223. Bath Ortho Supply is operated, managed, and/or controlled by Defendants Yuryev and Klosovskiy and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

130.    On information and belief, D & R Medical Supply, Inc. ("D & R Medical Supply") was incorporated on or about January 31, 2007 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 2479 65th Street, Brooklyn, New York 11204. D & R Medical Supply is operated, managed, and/or controlled by Defendant Pivenshteyn and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

131.    On information and belief, DB Supply, Inc. ("DB Supply") was incorporated on or about September 18, 2009 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 2113 West 7 Street, Brooklyn, New York 11223. DB Supply is operated, managed, and/or controlled by Defendant Bystra and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

132.    On information and belief, Dorsi Medical Supply, Inc. ("Dorsi Medical Supply") was incorporated on or about January 8, 2008 and purports to be a retail DME supply company

authorized to do business in the State of New York with its principal place of business located at 20 Avenue T, Brooklyn, New York 11223. Dorsi Medical Supply is operated, managed, and/or controlled by Defendant Gomelskaya and Shturman and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

133.    On information and belief, EGA Group, Inc. ("EGA Group") was incorporated on or about May 22, 2009 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 2317 Avenue X, Brooklyn, New York 11235. EGA Group is operated, managed, and/or controlled by Defendants Kuperman, Branfenbrener and Groysman and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

134.    On information and belief, Enko Enterprises Int'l, Inc. ("Enko Enterprises") was incorporated on or about October 18, 2005 and, until its corporate dissolution on or about October 13, 2011, purported to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 1301 Gravesend Neck Road, Suite 2A, Brooklyn, New York 11229. Enko Enterprises is operated, managed, and/or controlled by Defendants Kovalenko, Khemelnitski and Semerik and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

135.    On information and belief, Fema Medical Supply, Inc. ("Fema Medical Supply") was incorporated on or about April 28, 2009 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 6324 Bay Parkway, Brooklyn, New York 11204. Fema Medical Supply is operated, managed, and/or controlled by Defendants Fedotov, Shapiro and Bronshteyn and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

136. On information and belief, Heal Supply, Inc. ("Heal Supply") was incorporated on or about January 18, 2008 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 2941 Avenue S, Brooklyn, New York 11229. Heal Supply is operated, managed, and/or controlled by Defendants Yepifanov and Ladanova and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

137. On information and belief, Infinity Health Products, Ltd. ("Infinity Health Products") was incorporated on or about November 2, 1998 and, until its corporate dissolution on or about January 26, 2011, purported to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 1301 Kings Highway, Brooklyn, New York 11229. Infinity Health Products was operated, managed, and/or controlled by Defendant M. Kagan and Mugerman and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

138. On information and belief, Jesa Medical Supply, Inc. ("Jesa Medical Supply") was incorporated on or about October 27, 2006 and is a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 2503 65th Street, Brooklyn, New York 11204. Jesa Medical Supply is operated, managed, and/or controlled by Defendant Nabitovsky and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

139. On information and belief, Leica Supply Inc. ("Leica Supply") was incorporated on or about June 5, 2007 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 1602 McDonald Avenue, Brooklyn, New York 11230. Leica Supply is operated, managed, and/or controlled by

Defendants Branfenbrener and Groysman and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

140. On information and belief, Med Help Supply, Inc. ("Med Help Supply") was incorporated on or about September 21, 2010 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 2201 Avenue X, Brooklyn, New York 11229. Med Help Supply is operated, managed, and/or controlled by Defendant Akhmedov and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

141. On information and belief, Medix Surgical Supply Inc. ("Medix Surgical Supply") was incorporated on or about March 1, 2010 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 2309 Avenue Z, Brooklyn, New York 11235. Medix Surgical Supply is operated, managed, and/or controlled by Defendant Levin and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

142. On information and belief, Mega Supplies Billing, Inc. ("Mega Supplies Billing") was incorporated on or about June 10, 2003 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 2451 East 21st Street, Brooklyn, NY 11235, New York 11229. Mega Supplies Billing is operated, managed, and/or controlled by Defendant Kozachkov and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

143. On information and belief, Metrostar, Inc. ("Metrostar") was incorporated on or about August 17, 2007 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 187 Avenue S,

Brooklyn, New York 11223. Metrostar is operated, managed, and/or controlled by Defendant Vcherashansky and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

144. On information and belief, Millennium Supplies, Inc. ("Millennium Supplies") was incorporated on or about September 25, 2009 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 2950 Avenue X, Brooklyn, New York 11235. Millennium Supplies is operated, managed, and/or controlled by Defendant Tartakovskiy and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

145. On information and belief, MSSA, Corp. ("MSSA"") was incorporated on or about June 22, 2007 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 2271 East 14th Street, Brooklyn, New York 11229. MSSA is operated, managed, and/or controlled by Defendants Afanasyev, Rud, Vinokour and Zagladko and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

146. On information and belief, Olma Medical Equipment, Inc. ("Olma Medical Equipment") was incorporated on or about February 5, 2007 and purports to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 2005 71st Street, Brooklyn, New York 11204. Olma Medical Equipment is operated, managed, and/or controlled by Defendant Savkub and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

147. On information and belief, Ortho Products & Equipment, Inc. ("Ortho Products & Equipment") was incorporated on or about July 24, 2008 and purports to be a retail DME supply

company authorized to do business in the State of New York with its principal place of business located at 1808 Haring Street, Brooklyn, New York 11229. Ortho Products & Equipment is operated, managed, and/or controlled by Defendant Katz and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

148.    On information and belief, Ortho-Med Surgical Supply, Inc. ("Ortho-Med Surgical Supply") was incorporated on or about November 9, 2004 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 7114 20th Avenue, Brooklyn, New York 11204. Ortho-Med Surgical Supply is operated, managed, and/or controlled by Defendant Levin and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

149.    On information and belief, Pahta Medical Supply, Inc. ("Pahta Medical Supply") was incorporated on or about February 28, 2005 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 2005 71st Street, Brooklyn, New York 11204. Pahta Medical Supply is operated, managed, and/or controlled by Defendant Zilper and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

150.    On information and belief, Park Slope Medical & Surgical Supply, Inc. ("Park Slope Medical & Surgical Supply") was incorporated on or about March 21, 2006, until its corporate dissolution on or about April 27, 2011, purported to be a retail DME supply company authorized to do business in the State of New York, with its principal place of business located at 691 6th Avenue, Brooklyn, New York 11215. Park Slope Medical & Surgical Supply is operated, managed, and/or controlled by Defendants Alyas and Kremarman and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

151.    On information and belief, Prima Medical Supply, Inc. ("Prima Medical Supply") was incorporated on or about July 12, 2007 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 1711 West 10 Street, Brooklyn, New York 11223. Prima Medical Supply is operated, managed, and/or controlled by Defendant Bulochnikov and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

152.    On information and belief, Promed Supply Co., Inc. ("Promed Supply") was incorporated on or about December 1, 2009 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 1330 Coney Island Avenue, Brooklyn, New York 11230. Promed Supply is operated, managed, and/or controlled by Defendants Yuryev and Ladanov and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

153.    On information and belief, Pro-Vek Plus, Inc. ("Pro-Vek Plus") was incorporated on or about March 20, 2009 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 65 West End Avenue, Brooklyn, New York 11235. Pro-Vek Plus is operated, managed, and/or controlled by Defendants Khmelnitski and Semerik and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

154.    On information and belief, Reliable Supply of NY, Inc. ("Reliable Supply") was incorporated on or about January 30, 2008 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 1839 East 13th Street, Brooklyn, New York 11229. Reliable Supply is operated, managed, and/or controlled by Defendant Groisman and submitted fraudulent claims to Plaintiffs for

reimbursement for DME and/or orthotic devices under the No-fault Law.

155. On information and belief, Right Solution Medical Supply, Inc. ("Right Solution Medical Supply") was incorporated on or about April 8, 2009 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 1884 McDonald Avenue, Brooklyn, New York 11223. Right Solution Medical Supply is operated, managed, and/or controlled by Defendant Klikshteyn and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

156. On information and belief, Trimed Medical Supply, Inc. ("Trimed Medical Supply") was incorporated on or about February 4, 2005 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 2176 63rd Street, Brooklyn, New York 11204. Trimed Medical Supply is operated, managed, and/or controlled by Defendants Shturman and Gomelskaya and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

157. On information and belief, Unlimited Products, Ltd. ("Unlimited Products") was incorporated on or about September 5, 2008 and, until its corporate dissolution on or about August 26, 2011, purported to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 7124 Bay Parkway, Brooklyn, New York 11204. Unlimited Products is operated, managed, and/or controlled by Defendant Mugerman and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

158. On information and belief, Vespa Supply, Inc. ("Vespa Supply") was incorporated on or about August 25, 2008 and purports to be a retail DME supply company authorized to do

business in the State of New York with its principal place of business located at 2201 Avenue X, Brooklyn, New York 11235. Vespa Supply is operated, managed, and/or controlled by Defendants Vinokour, Afanasyev, Zagladko and Rud and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

159. On information and belief, Viss Supply, Inc. ("Viss Supply") was incorporated on or about March 7, 2008 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 1301 Gravesend Neck Road, Brooklyn, New York 11229. Viss Supply is operated, managed, and/or controlled by Defendants Lesko, Vinokour, Afanasyev, Zagladko and Rud and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

160. On information and belief, Vista Surgical Supplies, Inc. ("Vista Surgical Supplies") was incorporated on or about January 4, 2001 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 653 East 5th Street, Brooklyn, New York 11218. Vista Surgical Supplies is operated, managed, and/or controlled by Defendant Kats and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

161. On information and belief, We Do Care Medical Supply, Inc. ("We Do Care Medical Supply") was incorporated on or about November 29, 2000 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 1711 West 10th Street, Brooklyn, New York 11223. We Do Care Medical Supply is operated, managed, and/or controlled by Defendant Pilyavsky and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

162. On information and belief, XVV, Inc. ("XVV") was incorporated on or about September 15, 2010 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 136 Highlawn Avenue, Brooklyn, New York 11223. We Do Care Medical Supply is operated, managed, and/or controlled by Defendant Klikshteyn and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

163. On information and belief, YKLIK, Inc. ("YKLIK") was incorporated on or about April 10, 2007 and purports to be a retail DME supply company authorized to do business in the State of New York with its principal place of business located at 177B West End Avenue, Brooklyn, New York 11226. We Do Care Medical Supply is operated, managed, and/or controlled by Defendant Klikshteyn and submitted fraudulent claims to Plaintiffs for reimbursement for DME and/or orthotic devices under the No-fault Law.

E. **The Corporate Wholesale Defendants**

164. On information and belief, Bener Wholesale, Inc. ("Bener") was incorporated on or about July 19, 2007 and, until its corporate dissolution on or about July 27, 2011, purported to be a wholesale DME supply company authorized to do business in the State of New York with its principal place of business located at 1927 Kings Highway, Suite Z, Brooklyn, New York 11229 and/or 1618 Sheepshead Bay Road, Brooklyn NY 11235. Bener is operated, managed, and/or controlled by Defendants Yuzovitskiy and G. Groysman, and, on information and belief, supplied one or more of the Retailers, including, but not limited to, YKLIK, Mega Supplies Billing, Park Slope Medical & Surgical Supply, MSSA, Alev Medical Supply, Alrof, Fema Medical Supply, Heal Supply and A Plus Medical Supplies, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflated the true cost and/or quantity of

the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (1) misrepresented the wholesale prices for the DME and/or orthotic devices purportedly provided and (2) intentionally omitted any model number, make, manufacturer or other identifiable information so that the Retailers could, in turn, submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

165. On information and belief, Chesteron, Inc. ("Chesteron") was incorporated on or about July 28, 2008 and purports to be a wholesale DME supply company authorized to do business in the State of New York with its principal place of business located at 2754 Coney Island Avenue, Brooklyn, New York 11235. Chesteron is operated, managed, and/or controlled by Defendants Yuzovitskiy and G. Groysman, and, on information and belief, supplied one or more of the Retailers, including, but not limited to, Right Solution Medical Supply and Mega Supplies Billing, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (1) misrepresented the wholesale prices for the DME and/or orthotic devices purportedly provided and (2) intentionally omitted any model number, make, manufacturer or other identifiable information so that the Retailers could, in turn, submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

166. On information and belief, Deimos Distributors, Inc. ("Deimos") was incorporated on or about December 23, 2005, and, until its corporate dissolution on or about February 7, 2007, purported to be a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 1580 Dahill Road, Ground Floor, Brooklyn, New York 11205 and/or 1415 Avenue O, Brooklyn, NY 11230. Deimos

was operated, managed, and/or controlled by Defendants Yuzovitskiy and G. Groysman, and, on information and belief, supplied one or more of the Retailers, including, but not limited to, Alur Medical Supply, Pahta Medical Supply and Park Slope Medical & Surgical Supply, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (1) misrepresented the wholesale prices for the DME and/or orthotic devices purportedly provided and (2) intentionally omitted any model number, make, manufacturer or other identifiable information so that the Retailers could, in turn, submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

167.    On information and belief, Delazoom, Inc. ("Delazoom") was incorporated on or about July 30, 2009 and purports to be a wholesale DME supply company authorized to do business in the State of New York with its principal place of business located at 338 Forest Avenue, Amsterdam, New York 10201. Delazoom is operated, managed, and/or controlled by Defendants John Doe 1, Yuzovitskiy and G. Groysman and, on information and belief, supplied one or more of the Retailers, including, but not limited to, Promed Supply, We Do Care Medical Supply, EGA Group, Avgur Supply, DB Supply, Vespa Supply, MSSA and Pro-Vek Plus, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (1) misrepresented the wholesale prices for the DME and/or orthotic devices purportedly provided and (2) intentionally omitted any model number, make, manufacturer or other identifiable information so that the Retailers could, in turn, submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent

claims for reimbursement.

168.    On information and belief, Devonian, Inc. ("Devonian") was incorporated on or about September 26, 2005, and until its corporate dissolution on or about August 5, 2010, purported to be a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 2294 East 14th Street, Brooklyn, New York 11229. Devonian is operated, managed, and/or controlled by Defendant Michael Zavrazhin and, on information and belief, supplied one or more of the Retailers, including, but not limited to, Dorsi Medical Supply, Heal Supply and Ortho-Med Surgical Supply, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (1) misrepresented the wholesale prices for the DME and/or orthotic devices purportedly provided and (2) intentionally omitted any model number, make, manufacturer or other identifiable information so that the Retailers could, in turn, submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

169.    On information and belief, Frazier Trading Company, Inc. ("Frazier") was incorporated on or about June 2, 2005, and until its corporate dissolution on or about November 2, 2010, purported to be a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 2700 Stillwell Avenue, Brooklyn, New York 11224. Frazier is operated, managed, and/or controlled by Defendant Vladislav Aguvayev and, on information and belief, supplied one or more of the Retailers, including, but not limited to, Ortho-Med Surgical Supply, Dorsi Medical Supply, Trimed Medical Supply and We Do Care Medical Supply, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflated the true cost and/or quantity of the DME

and/or orthotic devices provided to the Retailers. These wholesale invoices (1) misrepresented the wholesale prices for the DME and/or orthotic devices purportedly provided and (2) intentionally omitted any model number, make, manufacturer or other identifiable information so that the Retailers could, in turn, submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

170.    On information and belief, Excell Plus, Inc. ("Excell") was incorporated on or about June 19, 2006, and, until its dissolution on or about April 27, 2011, purported to be a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 4050 Nostrand Avenue, Brooklyn, New York 11235. Excell is operated, managed, and/or controlled by Defendant John Doe 2 and, on information and belief, supplied one or more of the Retailers, including, but not limited to, Park Slope Medical & Surgical Supply, Jesa Medical Supply and D & R Medical Supply with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (1) misrepresented the wholesale prices for the DME and/or orthotic devices purportedly provided and (2) intentionally omitted any model number, make, manufacturer or other identifiable information so that the Retailers could, in turn, submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

171.    On information and belief, Galasa Wholesale, Inc. ("Galasa") was incorporated on or about September 19, 2007 and purports to be a wholesale DME supply company authorized to do business in the State of New York with its principal place of business located at 2065 86th Street, Brooklyn, New York 11215 and/or 2715 Coney Island Avenue, Brooklyn, New York, 11297.    Galasa is operated, managed, and/or controlled by Defendants Yuzovitskiy and G.

Groysman, and, on information and belief, supplied one or more of the Retailers, including, but not limited to, Alev Medical Supply, Leica Supply, Viss Supply, Pahta Medical Supply and Olma Medical Equipment, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (1) misrepresented the wholesale prices for the DME and/or orthotic devices purportedly provided and (2) intentionally omitted any model number, make, manufacturer or other identifiable information so that the Retailers could, in turn, submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

172. On information and belief, Global Best Deal, Inc. ("Global") was incorporated on or about February 27, 2008 and purports to be a wholesale DME supply company authorized to do business in the State of New York with its principal place of business located at 316 Avenue X, Brooklyn, New York 11223. Global is operated, managed, and/or controlled by Defendant John Doe 8 and, on information and belief, supplied one or more of the Retailers, including, but not limited to, Medix Surgical Supply and Ortho-Med Surgical Supply, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (1) misrepresented the wholesale prices for the DME and/or orthotic devices purportedly provided and (2) intentionally omitted any model number, make, manufacturer or other identifiable information so that the Retailers could, in turn, submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

173. On information and belief, IVY Med Distributors, Inc. ("IVY") is an unauthorized foreign corporation organized under the laws of the State of New Jersey and was incorporated on

or about December 4, 2008, with offices located at 1050 State Street, Building 34, Perth Amboy, New Jersey 08861. On information and belief, at all times relevant herein, IVY was an unauthorized foreign corporation transacting and doing business in New York State sufficient to subject it to this Court's jurisdiction, was operated, managed, and/or controlled by Defendant John Doe 3 and supplied one or more of the Retailers, including, but not limited to, Fema Medical Supply, Millennium Supplies, Amega, Dorsi Medical Supply and Ortho-Med Surgical Supply, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (1) misrepresented the wholesale prices for the DME and/or orthotic devices purportedly provided and (2) intentionally omitted any model number, make, manufacturer or other identifiable information so that the Retailers could, in turn, submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

174. On information and belief, Major Market Merchandise, Inc. ("Major Market") was incorporated on or about August 10, 2007, and, until its corporate dissolution on or about December 13, 2010, purported to be a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 2369 81st Street, Brooklyn, New York 11223 and/or 2294 East 14th Street, Brooklyn, NY 11229. Major Market is operated, managed, and/or controlled by Defendant Michael Zavrazhin and, on information and belief, supplied one or more of the Retailers, including, but not limited to, Dorsi Medical Supply, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (1) misrepresented the wholesale prices for

the DME and/or orthotic devices purportedly provided and (2) intentionally omitted any model number, make, manufacturer or other identifiable information so that the Retailers could, in turn, submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

175. On information and belief, MDSS Wholesale, Inc. ("MDSS") was incorporated on or about December 27, 2006, and, until its corporate dissolution on or about January 20, 2009, purported to be a wholesale DME supply company authorized to do business in the State of New York, with its principal place of business located at 1425 Kings Highway, Suite 5, Brooklyn, New York 11229. MDSS is owned, operated, managed, and/or controlled by Defendants Litvinova, Yuzovitskiy and G. Groysman, and, on information and belief, supplied one or more of the Retailers, including, but not limited to, Vista Surgical Supplies, Jesa Medical Supply, D & R Medical Supply, Alrof, Alev Medical Supply, Park Slope Medical & Surgical Supply, Mega Supplies Billing and YKLIK, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (1) misrepresented the wholesale prices for the DME and/or orthotic devices purportedly provided and (2) intentionally omitted any model number, make, manufacturer or other identifiable information so that the Retailers could, in turn, submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

176. On information and belief, New Step Services, Inc. ("New Step") was incorporated on or about August 5, 2008, and, until its corporate dissolution on or about April 13, 2011, purported to be a wholesale DME supply company authorized to do business in the State of New York with its principal place of business located at 3525 Kings Highway, Brooklyn, New

50

York 11234. New Step is operated, managed, and/or controlled by Defendant John Doe 4 and, on information and belief, supplied one or more of the Retailers, including, but not limited to, Olma Medical Equipment, Avgur Supply, EGA Group, DB Supply and Ortho Products & Equipment, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (1) misrepresented the wholesale prices for the DME and/or orthotic devices purportedly provided and (2) intentionally omitted any model number, make, manufacturer or other identifiable information so that the Retailers could, in turn, submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

177.    On information and belief, Riviera Wholesale, Inc. ("Riviera") was incorporated on or about August 10, 2007, and, until its corporate dissolution on or about April 27, 2011, purported to be a wholesale DME supply company authorized to do business in the State of New York with its principal place of business located at 3089 Brighton 2nd Street, 2nd Floor, Brooklyn, New York 11235. Riviera is operated, managed, and/or controlled by Defendants John Doe 5, Yuzovitskiy and G. Groysman and, on information and belief, supplied one or more of the Retailers, including, but not limited to, Jesa Medical Supply, Mega Supplies Billing, Park Slope Medical & Surgical Supply and Alur Medical Supply, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (1) misrepresented the wholesale prices for the DME and/or orthotic devices purportedly provided and (2) intentionally omitted any model number, make, manufacturer or other identifiable information so that the Retailers could, in turn, submit the fraudulent wholesale

invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

178.    On information and belief, Ropa, Inc. ("Ropa") was incorporated on or about August 17, 2007, and, until its corporate dissolution on or about July 27, 2011, purported to be a wholesale DME supply company authorized to do business in the State of New York with its principal place of business located at 1811 Stillwell Avenue, Brooklyn, New York 11223. Ropa is operated, managed, and/or controlled by Defendant John Doe 5 and, on information and belief, supplied one or more of the Retailers, including, but not limited to, We Do Care Medical Supply, Leica Supply and Prima Medical Supply, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (1) misrepresented the wholesale prices for the DME and/or orthotic devices purportedly provided and (2) intentionally omitted any model number, make, manufacturer or other identifiable information so that the Retailers could, in turn, submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

179.    On information and belief, West Coast, Inc. ("West Coast") was incorporated on or about August 27, 2009 and purports to be a wholesale DME supply company authorized to do business in the State of New York with its principal place of business located at 177B West End Avenue, Brooklyn, New York 11226. West Coast is operated, managed, and/or controlled by Defendant John Doe 7 and, on information and belief, supplied one or more of the Retailers, including, but not limited to, EGA Group, with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices provided to the Retailers. These wholesale invoices (1) misrepresented the wholesale prices for the DME and/or orthotic devices purportedly provided

and (2) intentionally omitted any model number, make, manufacturer or other identifiable information so that the Retailers could, in turn, submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement.

**F.    The John Doe Defendants**

180.    John Doe 1 is a principal, officer and/or director of Wholesale Defendant Delazoom and, at all times relevant herein, operated, managed and/or controlled its activities.

181.    John Doe 2 is a principal, officer and/or director of Wholesale Defendant Excell and, at all times relevant herein, operated, managed and/or controlled its activities.

182.    John Doe 3 is the principal, officer and/or director of Wholesale Defendant IVY and, at all times relevant herein, operated, managed and/or controlled its activities.

183.    John Doe 4 is the principal, officer and/or director of Wholesale Defendant New Step and, at all times relevant herein, operated, managed and/or controlled its activities.

184.    John Doe 5 is a principal, officer and/or director of Wholesale Defendant Riviera and, at all times relevant herein, operated, managed and/or controlled its activities.

185.    John Doe 6 is the principal, officer and/or director of Wholesale Defendant Ropa and, at all times relevant herein, operated, managed and/or controlled its activities.

186.    John Doe 7 is the principal, officer and/or director of Wholesale Defendant West Coast and, at all times relevant herein, operated, managed and/or controlled its activities.

187.    John Doe 8 is the principal, officer and/or director of Wholesale Defendant Global Best Deal, Inc., Inc. and, at all times relevant herein, operated, managed and/or controlled its activities.

188.    On information and belief, John Does 9 through 20 are additional principals, officers and/or directors of the Wholesale Defendants and/or principals, officers and/or directors

of ABC Corporations 1 through 20. On information and belief, John Doe Defendants 9 through 20, through the ABC Corporations 1 through 20, entered into kickback and/or other financial compensation agreements with the Retailers to provide inexpensive DME and/or orthotic devices and fraudulent wholesale invoices that enabled the Retailers to fraudulently bill Plaintiffs. These individuals will be added as defendants when their names and the extent of their participation become known through discovery.

## G.    The ABC Corporations

189.    On information and belief, the ABC Corporations 1 through 20 are additional corporations that purport to be wholesale DME supply companies that supply the Retailers with basic, inexpensive DME and/or orthotic devices, coupled with fraudulent wholesale invoices that greatly inflate the true cost and/or quantity of the DME and/or orthotic devices actually provided to the Retailers. These wholesale invoices (1) misrepresent the wholesale prices for the DME and/or orthotic devices purportedly provided and (2) intentionally omit any model number, make, manufacturer or other identifiable information so that the Retailers can, in turn, submit the fraudulent wholesale invoices to insurers, including Plaintiffs, in support of their fraudulent claims for reimbursement. The ABC Corporations 1 through 20 will be added as defendants when their names and the full extent of their participation become known through discovery.

## JURISDICTION AND VENUE

190.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, as the court has jurisdiction over claims brought under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq.* because they arise under the laws of the United States.

191.    This Court also has supplemental jurisdiction over the claims arising under state law under the principles of pendent jurisdiction and pursuant to 28 U.S.C. § 1367(a).

54

192.    Venue lies in this District Court under the provisions of 18 U.S.C. § 1965(a) and 28 U.S.C. § 1391(b) as the Eastern District of New York is the district where one or more of the Defendants reside and because this is the district where a substantial amount of the activities forming the basis of this Complaint occurred.

## FACTUAL BACKGROUND AND ALLEGATIONS
## APPLICABLE TO ALL CAUSES OF ACTION

193.    Plaintiffs underwrite automobile insurance in New York State.

194.    As set forth in the Statutory/Regulatory Scheme section above, pursuant to the No-fault Law, Plaintiffs are required to pay, *inter alia*, for health service expenses that are reasonably incurred as a result of injuries suffered by Covered Persons that arise from the use or operation of motor vehicles in the State of New York. The Retailers are ostensibly DME supply companies that bill for medical supplies provided to, among others, individuals covered under the No-fault Law. In exchange for their services, the Retailers accept assignments of benefits from No-fault Claimants and submit claims for payment to No-fault insurance carriers, in general, and to Plaintiffs, in particular.

195.    To process and verify claims submitted by the Retailers, Plaintiffs required and the Retailers submitted prescriptions and other documents relative to the DME and/or orthotic devices allegedly supplied to No-fault claimants and for which the Retailers were seeking reimbursement from Plaintiffs.

196.    On information and belief, the Retailers, with the exception of Enko Enterprises, Infinity Health Products, Med Help Supply, Metrostar, Reliable Supply, Unlimited Products and XVV also submitted inflated wholesale invoices to Plaintiffs in support of their claims for reimbursement.

197.    Pursuant to the No-fault Law and implementing regulations, as well as the

applicable policies of insurance, Plaintiffs were required to promptly process the Retailers' claims within 30 days of receipt of the proofs of claims.

198. To fulfill their obligation to promptly process claims, Plaintiffs justifiably relied upon the bills and documentation submitted by the Retailers in support of their claims and paid the Retailers based on the representations and information that Defendants mailed to Plaintiffs.

199. The New York State Medicaid program has established limits on the permissible charges for, among other things, DME and/or orthotic devices that are listed on the New York State DME Services Fee Schedule and provides that the maximum permissible charge for the purchase of durable medical equipment, medical/surgical supplies, orthopedic footwear and orthotic and prosthetic appliances is the fee payable for such equipment and supplies under the New York State Medicaid program at the time such equipment and supplies are provided. *See* 11 N.Y.C.R.R. § 68 (Appendix 17-C, Part F) ("Fee Schedule Items").

200. With respect to DME and/or medical supplies for which the New York State Medicaid program has not established a fee ("Non-Fee Schedule Items"), the Department of Insurance regulation provides that the fee payable shall be the lesser of:

(1) the acquisition cost (i.e., the line item cost from a manufacturer or wholesaler net of any rebates, discounts or other valuable considerations, mailing, shipping, handling, insurance costs or any sales tax) to the provider plus 50%; or

(2) the usual and customary price charged to the general public.

11 N.Y.C.R.R § 68 (Appendix 17-C, Part F).

201. On information and belief, the Retailers were created as the centerpieces of elaborate parallel schemes to fraudulently bill No-fault insurance carriers, in general, and Plaintiffs, in particular, for DME and/or orthotic devices that were never provided, not provided as billed or if provided, were of inferior quality relative to what was represented in the bills

submitted to Plaintiffs, and/or were otherwise medically unnecessary and provided pursuant to a predetermined course of treatment in which virtually all No-fault Claimants received substantially similar DME and/or orthotic devices.

202. The DME and/or orthotic devices that the Retailers purported to provide, and for which they billed Plaintiffs, seldom varied from patient-to-patient over a given period of time and did not reflect any differences in the patients' conditions. Instead, the Retail Owners, through their respective Retailers, created a billing apparatus that was designed to drain the maximum amount of dollars from insurance companies for each and every patient, including those who required little or no DME and/or orthotics at all.

203. On information and belief, the Retailers, created and controlled by the Retail Owners, were part of separate but related and well-organized illegal enterprises (the "DME Network Enterprises") that engaged in fundamentally similar, systematic and pervasive fraudulent practices which distinguished them from legitimate providers of DME and/or orthotic devices. By way of example and not limitation:

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, misrepresented the nature, quality and cost of DME and/or orthotic devices purportedly provided to No-fault Claimants;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, submitted bills misrepresenting the amounts they were entitled to be reimbursed under the No-fault Law;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, submitted bills for DME and/or orthotic devices that were never provided to No-fault Claimants;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, misrepresented the wholesale cost of Non-Fee Schedule Items purportedly provided to No-fault Claimants;

- Unlike legitimate retail DME companies, the Retail Owners,

57

through their respective Retailers, with the exception of Enko Enterprises, Infinity Health Products, Med Help Supply, Metrostar, Reliable Supply, Unlimited Products and XVV, submitted wholesale invoices that failed to provide meaningful descriptions (i.e,. make and model and/or additional information) of the DME and/or orthotic devices purportedly provided that is necessary to determine whether the charges submitted were legitimate;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, with the exception of Enko Enterprises, Infinity Health Products, Med Help Supply, Metrostar, Reliable Supply, Unlimited Products and XVV, submitted wholesale invoices reflecting prices far in excess of those actually paid by the Retailers and concealing the manufacturer, make, model, size and/or quality of the DME and/or orthotic devices purportedly supplied;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, submitted bills reflecting prices far in excess of those authorized by the applicable insurance regulations;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, submitted prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants that generically described the items to conceal the type of item being prescribed;

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, concealed the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol pursuant to a kickback arrangement with No-fault Clinics;

- Unlike legitimate retail DME companies, the Retailers, through the Retail Owners and/or those acting under their direction and control, had agreements and/or understandings as to what generic DME and/or orthotic devices would be prescribed by the No-fault Clinics;

- Unlike legitimate retail DME companies, the Retailers were oftentimes shell corporations, with no discernable, formal corporate structure or physical office space;

- Unlike legitimate retail DME companies, the Retailers oftentimes claimed to conduct their daily operations from locations with no signage or that were shuttered with no indication that any business was conducted at that location; and

- Unlike legitimate retail DME companies, the Retail Owners, through their respective Retailers, entered into illicit relationships with the Wholesale Defendants, who, in exchange for kickbacks

and/or a fee, provided wholesale invoices that fraudulently inflated the prices and quantities of the items provided, with the payments relating to such invoices actually serving as the vehicle through which Defendants laundered the money back to the Retail Owners through the use of check cashing establishments.

204. In these and numerous other ways, Defendants sought to deceive Plaintiffs into paying fraudulent claims that typically exceeded thousands of dollars per Covered Person.

205. The members of each of the DME Network Enterprises played well-defined and essential roles in the Defendants' schemes to defraud and in directing the affairs of the DME Network Enterprises. By way of example and not limitation, in furtherance of their scheme to defraud, the Retail Owners:

- Entered into kickback arrangements with No-fault Clinics, not named as defendants in this action, to ensure that their associated doctors and/or chiropractors prescribed large amounts of virtually identical DME and/or orthotic devices to their patient population pursuant to a predetermined course of treatment, irrespective of medical necessity;

- Entered into kickback arrangements with No-fault Clinics to ensure that the prescriptions provided were sufficiently generic so that the nature, quality and cost of any DME and/or orthotic device could not be verified based on the description of the prescribed item alone;

- Entered into kickback arrangements with one or more of the Wholesale Defendants so that they would provide inexpensive DME and/or orthotic devices along with fraudulent wholesale invoices that grossly inflated the amounts the Retailers paid for the DME and/or orthotic devices;

- Submitted or caused to be submitted, on behalf of the Retailers, numerous fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to claimants;

- Prepared or caused to be prepared fraudulent bills and sent them to Plaintiffs;

- Participated, or caused those acting under their direction to participate, in the preparation and mailing of bogus claims, knowing that the mailings contained materially false and misleading information.

206. By way of further example and not limitation, in furtherance of their scheme to

defraud, the Wholesale Owners, through the Defendant Wholesalers:

- Entered into kickback arrangements with the Retail Owners, through their respective Retailers, to provide inexpensive DME and/or orthotic devices coupled with wholesale invoices that grossly inflated the cost and/or quantity of the DME and/or orthotic devices reflected therein;

- Entered into kickback arrangements with the Retail Owners, through their respective Retailers, to provide wholesale invoices that were sufficiently generic so that the nature, quality and cost of any DME and/or orthotic device could not be verified based on the description of the item alone; and

- Prepared or caused to be prepared fraudulent wholesale invoices and sent them to the Retailers, knowing that the Retailers, in turn, could or would submit them in support of fraudulent claims for reimbursement.

207. By way of further example, in furtherance of the schemes to defraud alleged herein, the Defendant Wholesalers:

- Unlike legitimate wholesale DME companies, provided inexpensive DME and/or orthotic devices, along with fraudulent wholesale invoices that grossly inflated the amounts the Retailers paid for the DME and/or orthotic devices;

- Unlike legitimate wholesale DME companies, provided generic, non-descript wholesale invoices that deliberately omitted the make, model and/or manufacturer of the DME and/or orthotic devices to ensure that the nature, quality and cost of any DME and/or orthotic device could not be verified based on the description of the item alone;

- Unlike legitimate wholesale DME companies, allowed the Retailers to negotiate grossly inflated prices reflected on wholesale invoices irrespective of the items' actual costs, and, in doing so, provided the essential means through which the Retail Owners were able to submit fraudulent bills to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

- Unlike legitimate wholesale DME companies, knew or should have known that the inflated costs and/or quantities of the DME and/or orthotic devices reflected in the wholesale invoices they provided were materially misrepresented in the bills submitted by the Retail Owners, through their respective Retailers, to insurers;

- Unlike legitimate wholesale DME companies, knew or should have known that the generic, non-descript wholesale invoices they

provided were used to materially misrepresent the nature, cost and quality of the DME and/or orthotic devices reflected in the bills submitted by the Retail Owners, through their respective Retailers, to insurers;

- Unlike legitimate wholesale DME companies, in furtherance of the money laundering scheme, converted the checks they received from the Retailers to cash and returned to the Retailers upwards of 90% of the wholesale invoice amounts;

- Unlike legitimate wholesale DME companies, were oftentimes shell corporations, with no discernable, formal corporate structure or physical office space; and

- Unlike legitimate retail DME companies, oftentimes conducted their daily operations from locations with no signage or that were shuttered with no indication that any business was conducted at that location.

208. At all relevant times mentioned herein, the Wholesale Owners, either directly or through others acting under and pursuant to their directions, instructions and control, caused fraudulent wholesale invoices to be provided to the Retailers which they knew or should have known would be used by the Retailers in furtherance of the schemes to defraud alleged herein.

209. At all relevant times mentioned herein, the fraudulent wholesale invoices provided by the Wholesale Defendants provided an essential means by which the Retail Owners, through their respective Retailers, were able to further the scheme to defraud alleged in this Complaint.

210. At all relevant times mentioned herein, the Wholesaler Owners knew or should have known that the fraudulent wholesale invoices that were provided to the Retailers through the Wholesalers would be used by the Retailers to obtain payment from insurers, in general, and Plaintiffs, in particular in connection with fraudulent claims.

211. At all relevant times mentioned herein, the Retail Owners knew that the wholesale invoices provided by the Wholesale Defendants were fraudulent in that they misstated the price, quantity and quality of the DME and/or orthotic devices purportedly sold to the Retailers.

212. At all relevant times mentioned herein, the Retail Owners and Wholesale Defendants, acting in concert with each other, conducted, controlled, aided and abetted and furthered the fraudulent schemes through a common course of conduct and purpose, which was to defraud insurers, in general, and Plaintiffs, in particular, of money.

## THE MECHANICS OF THE SCHEME TO DEFRAUD

213. On information and belief, beginning in 2006 and continuing until the present day, Defendants, and others not named in the Complaint, engaged in systematic fraudulent billing schemes based upon the alleged sale of DME and/or orthotic devices.

214. On information and belief, the Retail Owners incorporated, owned and/or controlled their respective Retailers for the purpose of defrauding insurers, in general, and Plaintiffs, in particular.

215. On information and belief, each of the Retailers, through the Retail Owners, engaged in virtually identical and parallel schemes to defraud wherein the Retail Owners (i) paid kickbacks to the No-fault Clinics in exchange for referrals of DME and/or orthotic devices; (ii) obtained prescriptions that were provided pursuant to a predetermined course of treatment as opposed to need; (iii) paid fees (pursuant to the money laundering scheme described herein) to the Wholesale Defendants in exchange for fraudulent wholesale invoices that the Retailers, with the exception of Enko Enterprises, Infinity Health Products, Med Help Supply, Metrostar, Reliable Supply, Unlimited Products and XVV, would use to substantiate bogus claims for reimbursement of No-fault benefits; (iv) arranged for the No-fault Clinics to have assignments of benefits and acknowledgements of delivery of receipt forms signed by Claimants on their behalf to ensure that they had all of the documents necessary to submit claims to insurers, in general, and Plaintiffs, in particular; and (v) systematically submitted bills to insurers, in general, and

Plaintiffs, in particular, for DME and/or orthotic devices that were purportedly provided to Claimants based on medical necessity when, in fact, the Retail Owners, through their respective Retailers, were determining during any particular period of time, what DME would be prescribed by the No-fault Clinics, with virtually every Claimant receiving substantially similar DME and/or orthotic devices during such period of time from a particular Retailer.

216. While each DME Network Enterprise alleged in this Complaint carried out its scheme to defraud through substantially similar means, in numerous instances, in order to avoid detection of their fraud by insurance companies, some Retail Owners created retail companies to replace those that they were already operating. In other instances, pursuant to kickback and/or other financial agreements, Retail Owners established and operated Retailers at locations where different Retailers, owned by different Retail Owners were already operating, similarly to avoid suspicion and detection by insurance companies. On information and belief, in both instances, the predecessor Retailers were oftentimes gradually phased out and stopped billing insurance companies, in general, and Plaintiffs, in particular, allowing for only a brief overlap before entirely ceasing billing.

217. On information and belief, in those instances where Retail Owners created retail companies to replace those that they were already operating, the same fraudulent blueprint was adopted for the replacement Retailers. Examples of Retail Owners who created more than one Retailer to avoid scrutiny by insurance companies are identified in the table below:

| Owner(s) / Manager(s) | Retailer | Date Of Incorporation | Office Location | Approximate Dates of Billing |
|---|---|---|---|---|
| Gomelskaya/ Shturman | Trimed Medical Supply, Inc. | 02/24/2005 | 2176 63rd Street, Brooklyn, NY 11204 | 1/23/2005 – 3/20/2008 |
| | Dorsi Medical Supply, Inc. | 01/08/2008 | 20 Avenue T, Brooklyn, NY 11223 | 1/15/2008 – 8/24/2010 |
| Klikshteyn | YKLIK, Inc. | 04/10/2007 | 177B West End Avenue, Brooklyn, New York 11226. | 7/10/2005 – 4/9/2009 |
| | Right Solution Medical Supply, Inc. | 04/8/2009 | 1884 McDonald Avenue, Brooklyn, NY 11223 | 4/29/2009 – 9/10/2010 |
| | XVV, Inc. | 09/15/2010 | 136 Highlawn Avenue, Brooklyn NY, 11223 | 10/7/2010 – 4/15/2011 |
| Levin | Ortho-Med Surgical Supply, Inc. | 11/09/2004 | 7114 20th Avenue, Brooklyn, NY 11204 | 10/29/2005 – 5/17/2010 |
| | Medix Surgical Supply, Inc. | 09/21/2010 | 2309 Avenue Z, Brooklyn, NY 11235 | 4/7/2010 – 9/18/2010 |
| Mugerman | Infinity Health Products | 09/02/1998 | 1301 Kings Highway, Brooklyn, NY 11229 | 5/12/2000 – 11/17/2009 |
| | Unlimited Products, Inc. | 11/02/2008 | 7124 Bay Parkway, Brooklyn, New York, 11204 | 11/13/2000 – 5/7/2010 |

218.    On information and belief, in those instances where Retail Owners established and operated Retailers at locations where different Retailers, owned by different Retail Owners, were already operating, the predecessors' fraudulent blueprint was similarly adopted. Examples of Retailers opened at a location where another Retailer was already operating are identified in the table below:

| Office Location | Retailer | Owner(s) and/or Manager(s) | Date Of Incorporation | Approximate Dates of Billing |
|---|---|---|---|---|
| 1839 E.13th St. Brooklyn, New York, 11229 | Reliable Supply of NY, Inc. | Y. Groisman | 1/30/2008 | 3/24/2008 – 2/24/2009 |
| | Avgur Supply, Inc. | Andresol | 07/30/2009 | 9/3/2009 – 4/30/2010 |
| 2005 71st St. Brooklyn, NY 11204 | Pahta Medical Supply, Inc. | Zilper | 02/28/2005 | 3/24/2005 – 8/18/2009 |
| | Olma Medical Equipment, Inc. | Savkub | 02/05/2007 | 2/15/2007 – 11/16/2010 |
| 1301 Gravesend Neck Road Brooklyn, NY 11229 | Enko Enterprises Int'l Inc. | Kovalenko | 05/18/2005 | 10/27/2005 – 9/4/2007 |
| | Viss Supply, Inc. | Lesko, Vinokour | 03/07/2008 | 6/23/2008 – 8/17/2009 |
| 187 Avenue S. Brooklyn, NY 11223 | Metrostar, Inc. | Vcherashansky | 08/17/2007 | 9/2/2007 – 7/15/2008 |
| | Bath Ortho Supply, Inc. | Yuryev Klosovskiy | 11/19/2008 | 1/1520/09 – 12/2/2009 |
| 1711 West 10th Street Brooklyn, NY, 11223 | We Do Care Medical Supply, Inc. | Pilyavsky | 11/29/2000 | 1/9/2001 – 5/10/2010 |
| | Prima Medical Supply, Inc. | Bulochnikov | 07/12/2007 | 8/2/2007 – 4/14/2010 |
| 2201 Avenue X, Brooklyn, NY 11229 | Vespa Supply, Inc. | Zagladko, Afanasyev, Vinokour, Rud | 08/25/2008 | 9/25/2008 – 7/23/2009 |
| | Med Help Supply, Inc. | Akhmedov | 09/21/2010 | 11/22/2010 – 4/7/2011 |

219.    On information and belief, once the DME Retailer was established, Defendants devised and carried out fundamentally identical schemes to fraudulently bill insurers, in general, and Plaintiffs, in particular, for expensive DME and/or orthotic devices that either were never provided or, if provided, were inexpensive items of inferior quality that cost a fraction of the amounts that Defendants materially misrepresented in their fraudulent bill submissions to

Plaintiffs.

220. On information and belief, in exchange for kickbacks and/or other financial compensation agreements with the Retailers, one or more No-fault Clinics operating in the New York metropolitan area, through their medical doctors and/or chiropractors, provided the Retailers with prescriptions for DME and/or orthotic devices pursuant to a standard protocol or predetermined course of treatment. Regardless of whether a Covered Person was seen by a doctor on the date of the initial office visit at any of the unnamed No-fault Clinics, a Covered Person's initial office consultation would automatically trigger a series of internal practices and procedures through which the No-fault Clinics would issue a prescription for a fundamentally similar battery of DME and/or orthotic devices, irrespective of whether such items were medically necessary or otherwise needed.

221. On information and belief, irrespective of the purported complaints of pain or type of injury documented in connection with a particular claim, the No-fault Clinics prescribed virtually the exact same DME and/or orthotic devices to its patient population, regardless of factors such as their age, height, weight, prior medical history, position in the vehicle and/or purported involvement in an accident.

222. On information and belief, the No-fault Clinics also directed their associated physicians, chiropractors and/or other providers to prescribe DME and/or orthotic devices that are not included in the Fee Schedule, such as bed boards, car seats, EMS units, infrared heat lamps, hot/cold packs, massagers and whirlpools, and to ensure that the prescriptions issued were generic and non-descript, meaning that they omit any detailed description of the items to be supplied to the No-fault Claimants.

223. On information and belief, in furtherance of the schemes to defraud, the No-fault

Clinics did not directly provide the No-fault Claimants with the prescriptions for DME and/or orthotic devices. Instead, these prescriptions were given directly to the Retailers to eliminate the possibility that the No-fault Claimants would fill the prescriptions with a legitimate retailer of DME and/or orthotic devices.

224.    On information and belief, in addition to prescribing Non-Fee Schedule Items, as part of their kickback and/or other financial compensation agreement, the No-fault Clinics routinely provided the Retailers with generic, non-descript prescriptions for certain Fee Schedule Items, such as back braces, knee braces, shoulder braces, ankle braces, elbow supports, cervical traction units, cervical collars, lumbar cushions and thermophores, which the Retailers then used in support of their claims for reimbursement at a higher rate.

225.    On information and belief, in furtherance of the schemes to defraud alleged herein, the Retailers also entered into agreements with one or more of the Wholesale Defendants whereby the Wholesale Defendants supplied the Retailers with invoices that were used to document inflated and outrageous wholesale costs. With the exception of Enko Enterprises, Infinity Health Products, Med Help Supply, Metrostar, Reliable Supply, Unlimited Products and XVV, those invoices were submitted to Plaintiffs as part of the Retailers' proof of claim. Exhibit "2" in the accompanying Compendium of Exhibits is a representative sample of inflated invoices provided by the Wholesalers to the aforementioned Retailers that were submitted to Plaintiffs in support of the Retailers' claims for reimbursement.

226.    On information and belief, in order to perpetrate the massive fraud alleged herein, the Retail Owners informed the Wholesale Owners of the information they wanted reflected on fictitious wholesale invoices, including, but not limited to, generic descriptions of DME and/or orthotic devices, the quantity of the DME and/or orthotic devices, as well as negotiated the

inflated prices for the DME and/or orthotic devices.

227.    On information and belief, to avoid suspicion and detection by insurance companies, the Retailers, in many instances, used the Wholesalers interchangeably in order to feign the appearance that the wholesale prices indicated on the phony invoices were the industry accepted wholesale costs for the DME and/or orthotic devices purportedly provided, when, in fact, the prices reflected on the wholesale invoices were far in excess of the DME and/or orthotic devices' actual costs.

228.    By way of example and not limitation, on information and belief, Defendants Yuzovitskiy and G. Groisman, together with Litvinova and one or more of the John Does 9 through 20, established the Bener Group Wholesalers by using legitimate identity information, including, but not limited to,  social security numbers and tax identification numbers that were oftentimes issued to Russian or Eastern European students who had been legally and temporarily admitted into the United States on visitor visas.   Once established, the Bener Group Wholesalers were used interchangeably by the Retailers, with each wholesalers operating for a short period of time before being replaced, at the direction of Yuzovitskiy and G. Groysman, by a successor wholesaler that operated as a carbon copy of its predecessor.   The table below reflects the approximate dates that the Bener Group Wholesalers provided fraudulent invoices to one or more Retailers in furtherance of the schemes to defraud alleged herein.

| Wholesaler | Date of Incorporation | Approximate Dates of Providing Invoices to Retailers |
|---|---|---|
| Deimos Distributors, Inc. | February 7, 2005 | June 2006 to August 2006 |
| Riviera Wholesale, Inc. | August 10, 2007 | September 2006 to December 2006 |
| MDSS Wholesale, Inc. | December 27, 2006 | December 2006 to October 2007 |
| Bener Wholesale, Inc. | July 19, 2007 | September 2007 to January 2009 |
| Galasa Wholesale, Inc. | September 19, 2007 | June 2008 to August 2009 |
| Chesteron, Inc. | July 28, 2008 | April 2009 to July 2009 |
| Delazoom, Inc. | July 30, 2009 | August 2009 to May 2010 |

229.    On information and belief, once a Bener Group Wholesaler was replaced, the successor wholesaler provided the Retailers with phony invoices indicating the purported sale of the same items as its predecessor, using the same purported wholesale costs and item codes.

230.    On information and belief, because the Bener Group Wholesalers were operated interchangeably for the purpose of providing fraudulent, inflated wholesale invoices to the Retailers, the purported wholesale costs of the DME and/or orthotic devices seldom changed from year to year, even when the DME and/or orthotic devices were purportedly provided by different Bener Group Wholesalers.  By way of example and not limitation:

- By invoices dated October 23, 2006, June 20, 2007, December 26, 2007 and April 1, 2009, wholesalers Riviera Wholesale, MDSS Wholesale, Bener Wholesale and Chesteron, respectively, purportedly provided bed boards to retailer Mega Supplies Billing at a wholesale cost of $94.00 each, with wholesalers Bener Wholesale, Chesteron and MDSS Wholesale using item code "BB."   Copies of the aforementioned invoices are in the accompanying Compendium of Exhibits as Exhibit "3."

- By invoices dated June 29, 2006, November 28, 2008 and May 21, 2009, wholesalers Deimos Distributors, Galasa Wholesale and Chesteron, respectively, purportedly provided orthopedic cervical

pillows to retailer Pahta Medical Supply at a wholesale cost of $45.00 each, using billing code "OCP." Copies of the aforementioned invoices are in the accompanying Compendium of Exhibits as Exhibit "4."

- By invoices dated October 29, 2007, May 7, 2008 and June 18, 2009, wholesalers MDSS Wholesale, Galasa Wholesale and Chesteron, respectively, purportedly provided egg crate mattresses to Retailer Olma Medical Equipment at a wholesale cost of $102.00 each, using billing code "EGM." Copies of the aforementioned invoices are in the accompanying Compendium of Exhibits as Exhibit "5."

- By invoices dated, by invoices dated June 21, 2007, April 3, 2008 and May 18, 2009, wholesalers MDSS, Bener Wholesale and Galasa Wholesale, respectively, purportedly provided ankle braces to retailer Alev Medical Supply at a wholesale cost of $54.00 each, using billing code "AB." Copies of the aforementioned invoices are in the accompanying Compendium of Exhibits as Exhibit "6."

231. On information and belief, the Wholesale Owners created and provided the Retailers with wholesale invoices that intentionally omitted the make, model or manufacturer of the DME and/or orthotic devices reflected in the invoice, thereby ensuring that the nature and quality of the item that was supposedly provided could not be verified based on the wholesale invoice alone.

232. In addition, the Wholesale Owners provided the Retailers with wholesale invoices that included artificial prices, negotiated by the Retailers, which far exceeded the actual wholesale price of the DME and/or orthotic devices reflected therein.

233. On information and belief, in furtherance of the schemes to defraud alleged herein, to the extent the Wholesalers Defendants provided any DME and/or orthotic devices to the Retailers, such DME and/or orthotic devices were cheap, inexpensive items that that were a fraction of the wholesale costs indicated on the inflated invoices provided to the Retailers by the Wholesale Defendants. By way of example and not limitation, the Bener Group Wholesalers

routinely:

- Purchased cervical collars from a non-defendant wholesaler at a cost of approximately $3.00 each and provided them to one or more Retailers along with inflated invoices falsely indicating that the actual wholesale cost of the cervical collars were anywhere from approximately $32.00 to $39.00;

- Purchased EMS belts from a non-defendant wholesaler at a cost of approximately $6.00 each and provided them to one or more Retailers along with inflated invoices falsely indicating that the actual wholesale cost of the EMS belts were anywhere from approximately $25.00 to $95.00;

- Purchased lumbar cushions from a non-defendant wholesaler at a cost of approximately $7.00 each and provided them to one or more Retailers along with inflated invoices falsely indicating that the actual wholesale cost of the lumbar cushions were anywhere from approximately $36.00 to $200.00;

- Purchased mattresses from a non-defendant wholesaler at a cost of approximately $7.00 each and provided them to one or more Retailers along with inflated invoices falsely indicating that the actual wholesale cost of the mattresses were anywhere from approximately $67.00 to $140.00;

- Purchased massagers from a non-defendant wholesaler at a cost of approximately $9.00 each and provided them to one or more Retailers along with inflated invoices falsely indicating that the actual wholesale cost of the massagers were anywhere from approximately $98.00 to $192.00;

- Purchased infrared lamps from a non-defendant wholesaler at a cost of approximately $9.00 each and provided them to one or more Retailers along with inflated invoices falsely indicating that the actual wholesale cost of the infrared lamps were anywhere from approximately $79.00 to $198.00;

- Purchased EMS units from a non-defendant wholesaler at a cost of approximately $20.00 each and provided them to one or more Retailers along with inflated invoices falsely indicating that the actual wholesale cost of the EMS units were anywhere from approximately $350.00 to $598.00;

- Purchased bed boards from a non-defendant wholesaler at cost of approximately $7.25 each and provided them to one or more

Retailers along with inflated invoices falsely indicating that the actual wholesale cost of the bed boards were anywhere from approximately $84.00 to $180.00; and

- Purchased LSOs from a non-defendant wholesaler at a cost of approximately $6.00 each and provided them to one or more Retailers along with inflated invoices falsely indicating that the actual wholesale cost of the LSOs were anywhere from approximately $117.00 to $795.00;

234. On information and belief, to the extent they provided anything, once the Wholesale Defendants purchased the cheap DME and/or orthotic devices, they provided the items to the Retailers along with invoices that reflected grossly inflated wholesale prices negotiated by the Retailers, irrespective of the items' actual costs.

235. On information and belief, by allowing the Retailers to negotiate the grossly inflated prices reflected on the wholesale invoices irrespective of the items' actual costs, the Wholesalers provided the essential means through which the Retail Owners were able to submit fraudulent bills to Plaintiffs for reimbursement of DME and/or orthotic devices under the No-fault Law.

236. On information and belief, in many instances, the Wholesalers provided different Retailers with wholesale invoices that, while reflecting identical DME and/or orthotic devices purportedly provided to the Retailers on the same day, also reflected different wholesale costs, underscoring that it was the Retailer that determined the amounts listed on the wholesale invoices provided by the Wholesale Defendants. By way of example and not limitation:

- By invoices dated 8/5/08, Wholesaler Bener purportedly provided Retailers A Plus Medical Supplies (invoice No. 08/05/08-3) and Alrof, Inc. (invoice No. 08/05/08-4) with: (i) the same deep heat massager units (Bener item code "MASS") at wholesale costs of $112.00 and $130.00, respectively; (ii) the same E.M.S. portable units (Bener item code "EMS") at wholesale costs of $375.00 and $425.00, respectively; and (iii) the same E.M.S. belts (Bener item code "EMSB") at wholesale costs of $25.00 and $50.00,

respectively. In furtherance of the schemes to defraud alleged herein, the aforementioned invoices, which reflect grossly inflated wholesale prices, were submitted by A Plus Medical Supplies and Alrof to one or more Plaintiffs for reimbursement in amounts reflected on the invoices plus 50%. Copies of the aforementioned invoices are in the accompanying Compendium of Exhibits as Exhibit "7."

- By invoices dated 6/4/09, Wholesaler Chesteron purportedly provided Retailers Fema Medical Supply (invoice No. 6.4.09.1) and Right Solution Medical Supply (invoice No. 6.4.09.2) with: (i) the same lumbrosacral supports (Chesteron item code "LSS") at wholesale costs of $117.00 and $160.00, respectively; and (ii) the same orthopedic cervical pillows (Chesteron item code "OCP") at wholesale costs of $65.00 and $70.00, respectively. In furtherance of the schemes to defraud alleged herein, the aforementioned invoices, which reflect grossly inflated wholesale prices costs, were submitted by Fema Medical Supply and Right Solution Medical Supply to one or more Plaintiffs for reimbursement in amounts reflected on the invoices plus 50%. Copies of the aforementioned invoices are in the accompanying Compendium of Exhibits as Exhibit "8."

- By invoices dated 3/18/10, Wholesaler Delazoom purportedly provided Retailers Avgur Supply (invoice No. Nos. DE03181001) and DB Supply (invoice No. DE03181002) with: (i) the same E.M.S. portable units at wholesales cost of $440.00 and $475.00, respectively; (ii) the same E.M.S. accessory kits at wholesale costs of $80.00 and $90.00, respectively; (iii) the same infrared heat lamps at wholesale costs of $135.00 and $137.00, respectively; (iv) the same hydrotherapy whirlpools at wholesale costs of $380.00 and $385.00, respectively; and (v) the same deep heat massagers at wholesale costs of $135.00 and $130.00, respectively. In furtherance of the schemes to defraud alleged herein, the aforementioned invoices, which reflect grossly inflated wholesale prices, were submitted by Avgur Supply and DB Supply to one or more Plaintiffs for reimbursement in amounts reflected on the invoices plus 50%. Copies of the aforementioned invoices are in the accompanying Compendium of Exhibits as Exhibit "9."

- By invoices dated 5/26/09, Wholesaler Galasa purportedly provided Retailers Leica Supply (invoice No. 05260901) and Alev Medical Supply (invoice No. 05260902) with (i) the same E.M.S. belts (Galasa item code "EMSB") at wholesale costs of $30.00 and $40.00, respectively; (ii) the same E.M.S. accessory kits (Galasa item code "EMSK") at wholesale costs of $40.00 and $95.00,

respectively. In furtherance of the schemes to defraud alleged herein, the aforementioned invoices, which reflect grossly inflated wholesale prices, were submitted by Leica Supply and Alev Medical Supply to one or more Plaintiffs for reimbursement in amounts reflected on the invoices plus 50%. Copies of the aforementioned invoices are in the accompanying Compendium of Exhibits as Exhibit "10."

- By invoices dated 12/14/06, Wholesaler Riviera purportedly provided Retailers Park Slope Medical & Surgical Supply (invoice No. 4441) and Jesa Medical Supply (invoice No. 4442) with: (i) the same hydrotherapy whirlpools at wholesale costs of $470.00 and $420.00, respectively; and (ii) the same infrared heat lamps at wholesale costs of $134.00 and $125.00, respectively. In furtherance of the schemes to defraud alleged herein, the aforementioned invoices, which reflect grossly inflated wholesale prices, were submitted by Park Slope Medical & Surgical Supply and Jesa Medical Supply to one or more Plaintiffs for reimbursement in amounts reflected on the invoices plus 50%. Copies of the aforementioned invoices are in the accompanying Compendium of Exhibits as Exhibit "11."

- By invoices dated 2/23/07, Wholesaler MDSS purportedly provided Retailers Mega Supplies Billing (invoice No. F300232M) and D & R Medical Supply (invoice No. J200235D&R) with: (i) the same E.M.S. units (MDSS item code "EMS") at wholesale costs of $400.00 and $475.00, respectively; (ii) the same E.M.S. belts ("MDSS" item code "EMSB") at wholesale costs of $45.00 and $50.00, respectively; and (iii) the same hydrotherapy whirlpools (MDSS item code "HW") at wholesale costs of $480.00 and $440.00, respectively. In furtherance of the schemes to defraud alleged herein, the aforementioned invoices, which reflect grossly inflated wholesale prices, were submitted by Mega Supplies Billing and D & R Medical Supply to one or more Plaintiffs for reimbursement in amounts reflected on the invoices plus 50%. Copies of the aforementioned invoices are in the accompanying Compendium of Exhibits as Exhibit "12."

237. On information and belief, in other instances, the Wholesalers provided different Retailers with wholesale invoices for the same items at varying wholesale costs, notwithstanding that the invoices were purportedly provided to the Retailers within a very short period of time during which the actual wholesale prices of the DME and/or orthotic devices purportedly

provided did not change. By way of example and mot limitation:

- By invoice Nos. 1665 (dated 7/3/06) and 1720 (dated 7/5/06), Wholesaler Deimos purportedly provided Retailers Alur Medical Supply and Pahta Medical Supply, respectively with: (i) the same E.M.S. units (Deimos item code "EMS") at wholesale costs of $475.00 and $567.00, respectively; (ii) the same E.M.S. belts to (Deimos item code "EMSB") at wholesale costs of $50.00 and $60.00, respectively; (iii) the same infrared heat lamps (Deimos item code "IHL") at wholesale cost of $125.00 and $135.00, respectively; and (iv) the same deep heat massagers (Deimos item code "MASS") at wholesale costs of $135.00 and $110.00, respectively. In furtherance of the schemes to defraud alleged herein, the aforementioned invoices, which reflect grossly inflated wholesale prices, were submitted by Alur Medical Supply and Pahta Medical Supply to one or more Plaintiffs for reimbursement in amounts reflected on the invoices plus 50%. Copies of the aforementioned invoices are in the accompanying Compendium of Exhibits as Exhibit "13."

- By invoice Nos. 444497 (dated 2/24/10) and 357973 (dated 2/25/10), Wholesaler New Step Services purportedly provided Ortho Products & Equipment and Avgur Supply with: (i) the same knee supports at wholesale costs of $69.00 and $75.00, respectively; (ii) the same hot/cold packs at wholesale costs of $19.00 and $33.00, respectively; (iii) the same cervical collars at wholesale cost of $53.00 and $55.00, respectively; (iv) the same thermophores at wholesale costs of $18.00 and $97.00 respectively, (v) the same walking canes at wholesale cost of $28.00 and $24.00, respectively; and (vi) the same shoulder supports at wholesale costs of $67.00 and $64.00 respectively. In furtherance of the schemes to defraud alleged herein, the aforementioned invoices, which reflect grossly inflated wholesale prices, were submitted by Ortho Products & Equipment and Avgur Supply to one or more Plaintiffs for reimbursement in amounts reflected on the invoices plus 50%. Copies of the aforementioned invoices are in the accompanying Compendium of Exhibits as Exhibit "14."

- By invoice Nos. 6396 (dated 10/10/07) and 6322 (dated 10/17/07), Wholesaler Frazier Trading purportedly provided Retailers Trimed Medical Supply and We Do Care Medical Supply with: (i) the same ankle braces at wholesale costs of $30.00 and $34.00, respectively; (ii) the same semi-rigid cervical collars at wholesale costs of $55.00 and $57.00, respectively; (iii) the same knee braces at wholesale cost of $45.00 and $39.00, respectively; and (iv) the

same elbow braces at wholesale costs of $49.00 and $36.00 respectively. In furtherance of the schemes to defraud alleged herein, the aforementioned invoices, which reflect grossly inflated wholesale prices, were submitted by Trimed Medical Supply and We Do Care Medical Supply to one or more Plaintiffs for reimbursement in amounts reflected on the invoices plus 50%. Copies of the aforementioned invoices are in the accompanying Compendium of Exhibits as Exhibit "15."

238. On information and belief, irrespective of the amounts reflected on the wholesale invoices, the Wholesale Defendants, to the extent that they provided the Retailers with any items at all, provided the Retailers with basic, cheap, and inexpensive DME and/or orthotic devices that had wholesale costs a fraction of the amount indicated on the invoices.

239. On information and belief, in addition to providing the Retailers with cheap, inexpensive DME and/or orthotic devices along with the phony invoices, in numerous instances, the DME and/or orthotic devices reflected in the wholesale invoices were never provided to the Retailers; rather the Wholesale Defendants created and provided the wholesale invoices to the Retailers to create the illusion of a sale.

240. On information and belief, to facilitate the scheme to defraud, which included providing the Retailers with bogus invoices and low-quality, inexpensive DME and/or orthotic devises, to the extent such DME and/or orthotic devices were provided at all, the Wholesalers would often operate out of the same location as the Retailers, and, at times, use the same location as their official corporate headquarters. By way of example and not limitation, Wholesaler West Coast and Retailer YKLIK both list 177 West End Avenue, Brooklyn, NY 11226 as their corporate address on paperwork filed with the State of New York. By way of further example and not limitation, Wholesalers Devonian and Major Market Merchandise and Retailer Amega, all list 2294 East 14th Street, Brooklyn, New York, 11229, as their corporate address on paperwork filed with the State of New York.

241. On information and belief, in furtherance of the schemes to defraud alleged herein, upon receiving the fraudulent wholesale invoices from the Wholesale Defendants, the Retailers, as a matter of pattern and practice, generated and submitted bills to Plaintiffs knowingly misrepresenting the actual amounts that they paid for the DME and/or orthotic devices.

242. On information and belief, in furtherance of the scheme to defraud and to maximize reimbursement from Plaintiffs, each and every bill submitted by the Retail Owners, through their respective Retailers, deliberately obscured all identifying information relating to the billed for DME and/or orthotic devices so as to prevent Plaintiffs from determining the appropriate charges associated with any such DME and/or orthotic device and/or whether the specific DME and/or orthotic device was medically necessary. In doing so, the Retail Owners, through their respective Retailers, materially misrepresented the nature, quality and cost of the billed for DME and/or orthotic device and deliberately misrepresented the amounts they were entitled to receive under the No-fault Law.

243. On information and belief, in furtherance of the schemes to defraud alleged herein, the Retailers routinely submitted fraudulent documents, including, but not limited to, the same type of boilerplate claim forms, prescriptions, delivery receipts and wholesale invoices that materially misrepresented the nature, quality and cost of Non-Fee Schedule and Fee Schedule items purportedly provided to No-fault Claimants.

244. By way of example and not limitation, and as set forth below in the Non-Fee Schedule Scheme to Defraud, the Retail Owners, through their respective Retailers routinely submitted bills to Plaintiffs for Non-Fee Schedule items wherein the Retailers misrepresented that: (i) certain DME and/or orthotic devices were reimbursable under the relevant Fee Schedule

in existence at the time when, in fact, the Retailers were utilizing phantom codes for which there was no published fee schedule; (ii) the charges reflected on the Retailers' bills for Non-Fee Schedule items was the lesser of their acquisition costs or the usual and customary price charged to the general public; and/or (iii) the Fee Schedule codes and descriptions contained in the Retailers' bills corresponded with the equipment purportedly provided.

245. In addition, as set forth below in the Fee Schedule Scheme to Defraud below, the Retail Owners, through their respective Retailers routinely submitted fraudulent bills to Plaintiffs: (i) in support of expensive custom-fitted DME and/or orthotic devices, such as LSOs, knee, wrist, elbow and shoulder braces that were never provided; (ii) in support of expensive DME and/or orthotic devices that required a fitting and/or adjustment that they never performed; and/or which sought reimbursement rates for DME and/or orthotic devises in excess of the relevant fee schedule in existence at the time.

246. On information and belief, Defendants' activity promoted and facilitated other acts that incurred costs to Plaintiffs well beyond the insurance proceeds that Defendants collected, including, but not limited to, Plaintiffs' expenditures for verifying each fraudulent claim through examinations under oath ("EUO"), associated attorneys' and court reporting fees, independent medical examinations ("IME") and peer reviews.

## THE NON-FEE SCHEDULE SCHEME TO DEFRAUD

### 1. Fraudulent Billing Using Phantom Codes Not Recognized in the Fee Schedule

247. On information and belief, in furtherance of the schemes to defraud alleged herein, the Retail Owners, through their respective Retailers, with the exception of Medix Surgical Supply, Metrostar, MSSA, Ortho-Med Surgical Supply and Vista Supply, routinely submitted bills for Non-Fee Schedule items, such as EMS units, massagers, whirlpool baths and

water circulation units, wherein they misrepresented that those items were reimbursable pursuant to the Fee Schedule, when in fact, the Retailers, with the exception of Medix Surgical Supply, were utilizing phantom codes that did not exist in the relevant Fee Schedule in existence at the time. Exhibit "16" in the accompanying Compendium of Exhibits is a representative sample of claims paid by Plaintiffs in which the Retailers, with the exception of Medix Surgical Supply, Metrostar, MSSA, Ortho-Med Surgical Supply and Vista Supply fraudulently submitted bills for Non-Fee Schedule items, using phantom codes.

248. By way of example, and not limitation, the Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Alrof, Alur Medical Supply, Bath Ortho Supply, D & R Medical Supply, DB Supply, Heal Supply, Jesa Medical Supply, Park Slope Medical & Surgical Supply, Promed Supply, Right Solution Medical Supply, We Do Care Medical Supply and YKLIK routinely submitted bills to Plaintiffs for whirlpools using phantom codes E1300 and E1310, which are not recognized in the Fee Schedule, in amounts ranging from $540.00 to $630.00, notwithstanding that to the extent any DME was provided, the whirlpools were inexpensive jet spas that have an actual wholesale cost of approximately $28.00, and therefore should have been billed at approximately $42.00. Exhibit "17" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to the aforementioned Retailers based upon the fraudulent submission of bills for whirlpools using phantom codes E1300 and E1310.

249. By way of further example and not limitation, the Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Amega, Bath Ortho Supply, D & R Medical Supply, DB Supply, EGA Group, Heal Supply, Leica Supply, Med Help Supply, Millennium Supplies, Park Slope Medical & Surgical Supply, Promed Supply, Reliable

Supply, Pro-Vek Plus, Vespa Supply and We Do Care Medical Supply routinely submitted bills to Plaintiffs for water circulation units using phantom codes E0217 and/or E0218, which are not recognized in the Fee Schedule, in amounts ranging from $422.00 to approximately $595.00, notwithstanding that, to the extent any DME was provided, the water circulating units and pads were "water circulation packs" that have an actual wholesale cost of $34.00, therefore should have been billed at approximately $46.00. Exhibit "18" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to the aforementioned Retailers based upon the fraudulent submission of bills for water circulation units using phantom codes E0217 and/or E0218.

250. On information and belief, by billing under the phantom codes, the Retail Owners, through their respective Retailers, billed and were paid nearly one and a half to five times more than they would have otherwise have been entitled to receive under the No-fault Law.

251. On information and belief, separate and apart from billing for whirlpools and water circulation units under phantom codes not recognized the Fee Schedule, the Retail Owners, through their respective Retailers, with the exception of Medix Surgical Supply routinely submitted bills for other Non-Fee Schedule items using phantom codes that are not recognized in the Fee Schedule, and in doing so, materially misrepresented that the items were reimbursable under the relevant Fee Schedule and the amount they were entitled to receive. By way of example and not limitation:

- The Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Alrof, Alur Medical Supply, Bath Ortho Supply, D & R Medical Supply, Heal Supply, Infinity Health Products, Jesa Medical Supply, Promed Supply, Right Solution Medical Supply, Unlimited Products and YKLIK routinely submitted bills to Plaintiffs for bed boards in amounts ranging from $126.00 to in excess of $172.00 using phantom code E0273, notwithstanding that to the extent any DME was provided, the bed

boards were inexpensive foldable pieces of cardboard reimbursable, if at all, as a Non-Fee Schedule item for which the legitimate wholesale cost was approximately $7.00 and therefore should have been billed at approximately $10.00. Exhibit "19" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to the aforementioned Retailers based upon the fraudulent submission of bills for bed boards using phantom code E0273.

- The Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Alrof, Alur Medical Supply, A Plus Medical Supplies, Avgur Supply, Bath Ortho Supply, D & R Medical Supply, DB Supply, EGA Group, Fema Medical Supply, Heal Supply, Infinity Health Products, Jesa Medical Supply, Leica Supply, Med Help Supply, Mega Supplies Billing, Olma Medical Equipment, Ortho Products & Equipment, Pahta Medical Supply, Park Slope Medical & Surgical Supply, Prima Medical Supply, Promed Supply, Reliable Supply, Right Solution Medical Supply, Unlimited Products, Vespa Supply, Viss Supply, Vista Surgical Supplies, We Do Care Medical Supply and YKLIK routinely submitted bills to Plaintiffs for infrared heat lamps in amounts ranging from $117.00 to in excess of $450.00 using phantom codes E0200 and E0205, notwithstanding that to the extent any DME was provided, the infrared heat lamps were reimbursable, if at all, as a Non-Fee Schedule item for which the legitimate wholesale cost was approximately $9.00, and therefore should have been billed at approximately $13.50. Exhibit "20" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to the aforementioned Retailers based upon the fraudulent submission of bills for infrared lamps using phantom codes E0200 and E0205.

- The Retail Owners, through their respective Retailers including, but not limited to, Alev Medical Supply, Alrof, Alur Medical Supply, A Plus Medical Supplies, Avgur Supply, Bath Ortho Supply, D & R Medical Supply, DB Supply, Dorsi Medical Supply, Fema Medical Supply, Heal Supply, Infinity Health Products, Jesa Medical Supply, Mega Supplies Billing, Olma Medical Equipment, Pahta Medical Supply, Park Slope Medical & Surgical Supply, Prima Medical Supply, Promed Supply, Reliable Supply, Right Solution Medical Supply, Unlimited Products, Vespa Supply, Viss Supply, Vista Supply, We Do Care Medical Supply and YKLIK routinely submitted bills to Plaintiffs for EMS units using phantom codes E0744, E0745 and/or E0746, in amounts ranging from $459.00 to in excess of $880.00, notwithstanding that to the extent anything was provided, the EMS Units were reimbursable, if at all, as Non-Fee Schedule items for which the legitimate wholesale cost was

approximately $20.00 and therefore should have been billed at approximately $30.00. Exhibit "21" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to the aforementioned Retailers based upon the fraudulent submission of bills for EMS Units using phantom codes E0744, E0745 and/or E0746.

- The Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Alur Medical Supply, Jesa Medical Supply, Right Solution Medical Supply and YKLIK routinely submitted bills to Plaintiffs for hot/cold packs using phantom code 97010 in amounts ranging from $48.00 to $50.00, notwithstanding that to the extent anything was provided, the hot/cold packs are reimbursable, if at all, as Non-Fee Schedule items for which the legitimate wholesale cost was approximately $2.50 and therefore should have been billed at approximately $3.75. Exhibit "22" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to the aforementioned Retailers based upon the fraudulent submission of bills for hot/cold packs using phantom code 97010.

- The Retail Owners, through their respective Retailers, including A Plus Medical Supplies, Alrof, Alur Medical Supply, D & R Medical Supply, Jesa Medical Supply, Park Slope Medical & Surgical Supply and Vista Surgical Supplies routinely submitted bills to Plaintiffs for LSOs using phantom codes L0515, L0565, K0638 and/or K0646 in amounts ranging from $175.00 to in excess of $844.00, notwithstanding that to the extent any orthotic device was provided, the LSOs were one-size-fits-all elastic back braces, reimbursable, if at all, as Non-Fee Schedule items for which the legitimate wholesale cost was approximately $9.00, and therefore should have been billed at approximately $13.50. Exhibit "23" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to the aforementioned Retailers based upon the fraudulent submission of bills for LSOs using phantom codes L0515, L0565, K0638 and/or K0646.

- The Retail Owners, through their respective Retailers including, but not limited to, Alev Medical Supply, Alur Medical Supply, Avgur Supply, D & R Medical Supply, DB Supply, Jesa Medical Supply, Mega Supplies Billing and Vespa Supply routinely submitted bills to Plaintiffs for lumbar cushions using code L0300 in amounts ranging from $134.00 to $297.00, notwithstanding that to the extent any DME was provided, the lumbar cushions were reimbursable, if at all, as Non-Fee Schedule items for which the legitimate wholesale cost was approximately $7.00, and therefore should have been billed at approximately $10.50. Exhibit "24" in the accompanying Compendium of Exhibits is a representative sample of claims paid

by one or more Plaintiffs to the aforementioned Retailers based upon the fraudulent submission of bills for lumbar cushions using phantoms code L0300.

- The Retail Owners, through their respective Retailers, including, but not limited to, Millennium Supplies and Pro-Vek Plus routinely submitted bills to Plaintiffs for orthopedic car seats using phantom code E0261 in amounts in excess of $69.00, notwithstanding that to the extent any DME was provided, the orthopedic car seats were reimbursable, if at all, as Non-Fee Schedule items for which the legitimate wholesale cost was approximately $7.00, and therefore should have been billed at approximately $10.50. Exhibit "25" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to the aforementioned Retailers based upon the fraudulent submission of bills for orthopedic car seats using phantoms code E0261.

- The Retail Owners, through their respective Retailers, including, but not limited to, A Plus Medical Supplies, Alev Medical Supplies, Alrof, Alur Medical Supply, Avgur Supply, Bath Ortho Supply, D & R Medical Supply, DB Supply, Heal Supply, Mega Supplies Billing, Olma Medical Equipment, Pahta Medical Supply, Park Slope Medical & Supply, Prima Medical Supply, Reliable Supply, Right Solution Medical Supply, Jesa Medical Supply, Vespa Supply, Vista Surgical Supplies, Viss Supply, We Do Care Medical Supply and YKLIK routinely submitted bills to Plaintiffs for EMS belts using phantom codes E0731 and/or E0770 in amounts ranging from $36.29 to $115.00, notwithstanding that to the extent any DME was provided, the EMS belts were reimbursable, if at all, as Non-Fee Schedule items for which the legitimate wholesale cost was approximately $7.00, and therefore should have been billed at approximately $10.50. Exhibit "26" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to the aforementioned Retailers based upon the fraudulent submission of bills for EMS belts using phantom codes E0731 and/or E0770.

- The Retail Owners, through their respective Retailers, including, but not limited to, D & R Medical Supply, Jesa Medical Supply, Leica Supply and Reliable Supply of NY routinely submitted bills to Plaintiffs for thermophores using phantom code Z2304 in the amount of $145.00, notwithstanding that to the extent any DME was provided, the thermophores are inexpensive heat pads reimbursable as a Fee Schedule item with a maximum permissible charge of $20.93. Exhibit "27" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to the aforementioned Retailers based upon the fraudulent submission

of bills for thermophores using phantoms code Z2304.

252. By submitting bills to Plaintiffs that contained phantom codes not recognized by the relevant Fee Schedule in existence at the time, the Retail Owners, through their respective Retailers deliberately misrepresented that their bills reflected either a reimbursement amount set by the Fee Schedule or the lesser of their acquisition cost, plus 50% or the usual and customary price for the public, when, in reality, to the extent anything was provided, the items did not have a fee schedule code, and the Retail Owners, through their respective Retailers, were entitled to receive only a fraction of the amounts reflected in their bills.

253. On information and belief, in addition to containing phantom codes that were not recognized in the Fee Schedule, the Retailers' bills routinely contained grossly inflated charges, oftentimes supported by fraudulent wholesale invoices for DME and/or orthotic devices that were inexpensive and of poor quality.

2. **Fraudulent Billing Using Code 1399**

254. On information and belief, in furtherance of the schemes to defraud alleged herein, the Retail Owners, through their respective Retailers, with the exception of Trimed Medical Supply, Vista Surgical Supplies and XVV routinely submitted bills to Plaintiffs for Non-Fee Schedule items, including, but not limited to, arm slings, bed boards, car seats, cervical pillows, EMS units, EMS belts, EMS accessory kits, egg crate mattresses, hot/cold pack, infrared heat lamps, lumbar cushions, massagers, orthopedic pillows, thermophores and whirlpools, using Fee Schedule Code E1399, which is reserved for miscellaneous items, and in doing so, they fraudulently misrepresented the nature and quality of the billed for DME and/or orthotic devices and their acquisition costs. Specifically, the Retailers, with the exception of Trimed Medical Supply, Vista Surgical Supplies and XVV, falsely and materially misrepresented that the billed-

for amounts were the lesser of the usual and customary prices charged to the general public or the Retailers' acquisition costs plus 50%, when they were not. Exhibit "28" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the Retailers, with the exception of Trimed Medical Supply, Vista Surgical Supplies and XVV fraudulently submitted bills for Non-Fee Schedule items using Fee Schedule Code E1399.

255. By way of example and not limitation, the Retail Owners, through their respective Retailers, with exception Med Help, Supply, Medix, Trimed Medical Supply, Vista Surgical Supplies and XVV routinely submitted bills to Plaintiffs for massagers using code E1399 in amounts ranging from $148 to $289.50, falsely representing these amounts were the lesser of the usual and customary prices charged to the general public or the Retailers' acquisition costs plus 50%, when, on information and belief, to the extent anything was provided, the massagers were simple, hand held massagers for which the legitimate wholesale costs was approximately $9.00 and therefore should have been billed at approximately $13.50. Exhibit "29" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the Retailers, with the exception of Med Help Supply, Medix and XVV fraudulently submitted bills for massagers using Fee Schedule Code E1399. By way of further example and not limitation:

- The Retail Owners, through their respective Retailers, including, but not limited to Amega, Dorsi Medical Supply, EGA Group, Fema Medical Supply, Leica Supply, Medix Surgical Supply, Metrostar, Millennium Supplies, MSSA Corp, Olma Medical Equipment, Ortho-Med Surgical Supply, Pro-Vek Plus, Trimed Medical Supply, Vespa Supply, Viss Supply and We Do Care Medical Supply routinely submitted bills to Plaintiffs for bed boards using code E1399 in amounts ranging from $95.00 to $270.00, falsely representing that these amounts were the lesser of the usual and customary prices charged to the general public or the Retailers' acquisition cost plus 50%, when, on information and belief, to the extent anything was provided, the bed boards purportedly supplied

had a legitimate wholesale cost of approximately $7.00 and therefore should have been billed at approximately $10.50. Exhibit "30" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the aforementioned Retailers fraudulently submitted bills for bed boards using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including, but not limited to, Amega, EGA Group, Leica Supply, Medix Surgical Supply, Metrostar, Millennium Supplies, MSSA, Corp., Ortho Products & Equipment, Ortho-Med Surgical Supply, Viss Supply and We Do Care Medical Supply routinely submitted bills to Plaintiffs for EMS belts using code E1399 in amounts ranging from $37.61 to $112.00, falsely representing that these amounts were the lesser of the usual and customary prices charged to the general public or the Retailers' acquisition costs plus 50%, when, on information and belief, to the extent anything was provided, the EMS belts had a legitimate wholesale cost of approximately $6.00 and therefore should have been billed at approximately $9.00. Exhibit "31" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the aforementioned Retailers fraudulently submitted bills for EMS belts using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including, but not limited to, Amega EGA Group, Leica Supply, Medix Surgical Supply, Metrostar, Millennium Supplies, MSSA, Ortho Products & Equipment, Ortho-Med Surgical Supply, Viss Supply and We Do Care Medical Supply routinely submitted bills to Plaintiffs for EMS units using code E1399 in amounts ranging from $525.00 to $897.00, falsely representing that these amounts were the lesser of the usual and customary prices charged to the general public or the Retailers' acquisition costs plus 50%, when, to the extent anything was provided, the EMS units' legitimate wholesale cost was approximately $20.00 and therefore should have been billed at approximately $30.00. Exhibit "32" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the aforementioned Retailers fraudulently submitted bills for EMS Units using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including, but not limited to, DB Supply and Leica Supply routinely submitted bills to Plaintiffs for hot/cold packs using code E1399 in amounts ranging from $19.50 to $35.00, falsely representing that these amounts were the lesser of the usual and customary prices charged to the general public or the Retailers' acquisition costs plus 50%, when, on information and belief, to the extent anything was

provided, the hot/cold packs had a legitimate wholesale cost of approximately $2.50 and therefore should have been billed at approximately $3.75. Exhibit "33" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the aforementioned Retailers fraudulently submitted bills for hot/cold packs using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including, but not limited to, Amega, Dorsi Medical Supply, Medix Surgical Supply, Millennium Supplies, MSSA, Ortho-Med Surgical Supply, Trimed Medical Supply, Viss Supply and We Do Care Medical Supply routinely submitted bills to Plaintiffs for infrared heat lamps using code E1399 in amounts ranging from $175.00 to $316.00, falsely representing that these amounts were the lesser of the usual and customary prices charged to the general public or the Retailers' acquisition costs plus 50%, when, on information and belief, to the extent anything was provided, the infrared heat lamps had a legitimate wholesale cost of approximately $9.00 and therefore should have been billed at approximately $13.50. Exhibit "34" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the aforementioned Retailers fraudulently submitted bills for infrared heat lamps using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including, but not limited to, Pahta Medical Supply and Reliable Supply routinely submitted bills to Plaintiffs for lumbar cushion supports using code E1399 in amounts ranging from $25.00 to $96.00, falsely representing that these amounts were the lesser of the usual and customary prices charged to the general public or the Retailers' acquisition costs plus 50%, when, on information and belief, to the extent anything was provided, the lumbar cushion supports purportedly supplied had a legitimate wholesale cost of approximately $7.00 and therefore should have been billed at approximately $10.50. Exhibit "35" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the aforementioned Retailers fraudulently submitted bills for lumbar cushion supports using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including, but not limited to, Bath Oro Supply, Inc., Med Help Supply, Olma Medical Equipment, Pahta Medical Supply and Promed Supply Co., routinely submitted bills to Plaintiffs for orthopedic car seats using code E1399 in amounts ranging from $135.00 to $250.00, falsely representing that these amounts were the lesser of the usual and customary prices charged to the general public or the Retailers'

acquisition costs plus 50%, when, on information and belief, to the extent anything was provided, the orthopedic car seats purportedly supplied had a legitimate wholesale cost of approximately $7.00 and therefore should have been billed at approximately $10.50. Exhibit "36" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the aforementioned Retailers fraudulently submitted bills for orthopedic car seats using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including, but not limited to, Bath Ortho Supply, Heal Supply, MSSA, Promed Supply and Vespa Supply routinely submitted bills to Plaintiffs for orthopedic cervical pillows using code E1399 in amounts ranging from $65.50 to $152.00, falsely representing that these amounts were the lesser of the usual and customary prices charged to the general public or the Retailers' acquisition costs plus 50%, when, on information and belief, to the extent anything was provided, the orthopedic cervical pillows purportedly supplied had a legitimate wholesale cost of approximately $8.00 and therefore should have been billed at approximately $12.00. Exhibit "37" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the aforementioned Retailers fraudulently submitted bills for cervical pillows using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including, but not limited to, Alrof, Alur Medical Supply, Bath Ortho Supply, Infinity Health Products, Millennium Supplies, MSSA, Olma Medical Equipment, Pahta Medical Supply, Park Slope Medical & Surgical Supply, Right Solution Medical Supply, Unlimited Products, Vespa Supply and YKLIK routinely submitted bills to Plaintiffs for thermophores using code E1399 in amounts ranging from $94.00 to $148.00, falsely representing that these amounts were the lesser of the usual and customary prices charged to the general public or the Retailers' acquisition costs plus 50%, when, on information and belief, to the extent anything was provided, the thermophores had a legitimate wholesale cost of approximately $9.00 and therefore should have been billed at approximately $13.50. Exhibit "38" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the aforementioned Retailers fraudulently submitted bills for thermophores using Fee Schedule Code E1399.

- The Retail Owners, through their respective Retailers, including, but not limited to, Amega, Dorsi Medical Supply, EGA Group, Inc., Fema Medical Supply, Infinity Health Products, Leica Supply, Med Help Supply, Medix Surgical Supply, Ortho-Med Surgical Supply, Ortho Products & Equipment, Unlimited Products, Vespa Supply

and Viss Supply routinely submitted bills to Plaintiffs for whirlpools using code E1399 in amounts ranging from $349.50 to $628.00, falsely representing that these amounts were the lesser of the usual and customary prices charged to the general public or the Retailers' acquisition costs plus 50%, when to the extent anything was provided, the whirlpools' legitimate wholesale cost was approximately $30.00 and therefore should have been billed at approximately $45.00. Exhibit "39" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs in which the aforementioned Retailers fraudulently submitted bills for whirlpools using Fee Schedule Code E1399.

**3.      Fraudulent Billing of Non-Fee Schedule Items under Fee Schedule Codes**

256.    On information and belief, in furtherance of the schemes to defraud alleged herein, the Retail Owners, through their respective Retailers, with the exception of Vista Surgical Supplies, A Plus Medical Supplies, Mega Supplies Billing, Park Slope Medical & Surgical Supply, Trimed Medical Supply and XVV routinely submitted bills to Plaintiffs for Non-Fee Schedule Items using codes reserved for Fee Schedule Items in order to maximize the fraudulent charges they could submit to Plaintiffs, despite the fact that they never provided the billed-for items. By way of example and not limitation, the Retail Owners, through their respective Retailers, with the exception of Vista  Surgical Supplies, A Plus Medical Supplies, Mega Supplies Billing, Park Slope Medical & Surgical Supply, Trimed Medical Supply and XVV routinely submitted bills to Plaintiffs for "eggcrate mattresses," which is a Non-Fee Schedule Item, using codes E0272, which is reserved for a "foam rubber mattress reimbursable in the maximum amount of $155.52;"  E0184, which is reserved for a "dry pressure mattress reimbursable in the maximum amount of $153.13;" and/or E0199, which is reserved for "dry pressure pad for mattress, standard mattress length and width reimbursable in the maximum amount of $19.48," all of which are Fee Schedule items.

257.    On information and belief, the aforementioned Retailers never provided foam

rubber mattresses, dry pressure mattresses or dry pressure mattress pads to any Claimant. Instead, to the extent any DME and/or orthotic device was provided, the Retailers, with the exception of Vista Surgical Supplies, A Plus Medical Supplies, Mega Supplies Billing, Park Slope Medical & Surgical Supply, Trimed Medical Supply and XVV provided inexpensive eggcrate mattresses for which the legitimate wholesale cost was approximately $7.00, meaning that the maximum reimbursement for such an item would be approximately $10.50.

258. On information and belief, by submitting bills using codes E0272, E0184 and E0199, the Retail Owners, through their respective Retailers, with the exception of A Plus Medical Supplies, Mega Supplies Billing, Park Slope Medical & Surgical Supply, Trimed Medical Supply and XVV materially misrepresented that they provided foam rubber mattresses, dry pressure mattresses and/or dry pressure mattress pads, when they did not, and also materially misrepresented that the items purportedly provided were Fee Schedule Items, and in doing so, sought reimbursement in amounts upwards of thirty times over what would otherwise have been a permissible charge for the Non-Fee Schedule item. Exhibit "40" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to the Retailers, with the exception of A Plus Medical Supplies, Mega Supplies Billing, Park Slope Medical & Surgical Supply, Trimed Medical Supply and XVV based upon the fraudulent submission of bills for eggcrate mattress using codes E0272, E0184 and/or E0199.

259. By way of further example and not limitation, the Retail Owners, through their respective Retailers, including Avgur Supply, DB Supply, Enko Enterprises, Med Help Supply, Park Slope Medical & Surgical Supply, Prima Medical Supply, Reliable Supply and We Do Care Medical Supply routinely submitted bills to Plaintiffs for "bed boards," which is a Non-Fee Schedule Item, using Fee Schedule Code E0274, which is reserved for an "over-bed table."

260. On information and belief, the aforementioned Retailers never provided an over-bed table to any No-fault Claimant. Instead, to the extent any DME was provided, the bed boards purportedly supplied were inexpensive, foldable, pieces of cardboard for which the legitimate wholesale cost was approximately $7.00 and therefore, should have been billed at approximately $10.50.

261. On information and belief, by submitting bills for bed boards using code E0274, the Retail Owners, through their respective Retailers, including Avgur Supply, DB Supply, Enko Enterprises, Med Help Supply, Park Slope Medical & Surgical Supply, Prima Medical Supply, Reliable Supply and We Do Care Medical Supply, materially misrepresented that they provided over-bed tables when they did not and also materially misrepresented that the item purportedly provided was a Fee Schedule Item, and in doing so, sought reimbursement in amounts upwards of nine times what would otherwise have been a permissible charge for the Non-Fee Schedule item. Exhibit "41" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to Avgur Supply, DB Supply, Enko Enterprises, Med Help Supply, Park Slope Medical & Surgical Supply, Prima Medical Supply, Reliable Supply and We Do Care Medical Supply based upon the fraudulent submission of bills for bed boards using code E0274.

262. By way of further example and not limitation, the Retail Owners, through their respective Retailers, including, but not limited to, Leica Supply, EGA Group, DB Supply, Infinity Health Products, Medix Surgical Supply and Ortho-Med Surgical Supply, routinely submitted bills to Plaintiffs for "orthopedic car seats," which is a Non-Fee Schedule item, using Fee Schedule Code T5001, which is reserved for a "positioning seat for persons with special orthopedic needs," in amounts ranging from $160.00 to $350.00.

263. On information and belief, the foregoing Retailers never provided a positioning seat for persons with special orthopedic needs to any No-fault Claimant, and to the extent that any DME and/or orthotic device was provided, those Retailers provided inexpensive, cheap bubble pads that they described as "orthopedic car seats," for which the usual and customary price charged to the general public did not exceed $13.00.

264. On information and belief, by submitting bills using code T5001, the Retail Owners, through their respective Retailers, including, but not limited to, Leica Supply, EGA Group, DB Supply, Infinity Health Products, Medix Surgical Supply and Ortho-Med Surgical Supply materially misrepresented that they provided positioning seat for persons with special orthopedic needs, when they did not, and also materially misrepresented that the item purportedly provided was a Fee Schedule item and in doing so, sought reimbursement in amounts more twenty-six times over what would otherwise have been a permissible charge for the Non-Fee Schedule item. Exhibit "42" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the foregoing Retailers materially misrepresented the nature and quality of the orthopedic car seats billed for and their acquisition costs by billing for the non-Fee Schedule DME under a Fee Schedule code.

## FEE SCHEDULE SCHEME TO DEFRAUD

**1.    Fraudulent Billing for Custom Fabricated or Custom Fit DME and/or Orthotic Devices.**

265. On information and belief, in furtherance of the scheme to defraud, the Retail Owners, through their respective Retailers routinely submitted fraudulent bills in support of expensive (1) custom-fabricated DME and/or orthotic devices and/or (2) pre-fabricated DME and/or orthotic devices that required a fitting and adjustment to the purported Claimant's measurements.

92

266. On information and belief, the term custom-fabricated as used in the New York State Fee Schedule refers to any DME, orthopedic footwear, orthotics or prosthetics fabricated solely for a particular person from mainly raw materials that cannot be readily changed to conform to another person's needs.

267. On information and belief, raw materials are used to create custom-made DME, orthopedic footwear, orthotics or prosthetics based on a particular person's measurements, tracings and patterns.

268. On information and belief, to bill under any Fee Schedule code reserved for custom-fabricated DME and/or orthotic devices, a retailer is required to measure the recipient of the items and fabricate the custom-made item based on those measurements.

269. On information and belief, in furtherance of the schemes to defraud alleged herein, the Retail Owners, through their respective Retailers routinely submitted fraudulent bills in support of expensive custom-fabricated DME and/or orthotic devices, notwithstanding that to the extent any DME and/or orthotic devices were provided, the Retail Owners, through their respective Retailers, provided cheap, elastic, one-size-fits-all items that were not custom fabricated to the Claimants' measurements

270. On information and belief, in addition to providing cheap, elastic, one-size-fits-all items that were not custom fabricated to the Claimants' measurements, the Retail Owners, through their respective Retailers routinely submitted fraudulent bills in support of expensive pre-fabricated DME and/or orthotic devices that required a fitting and adjustment to the purported Claimant's measurements, notwithstanding that a fitting and adjustment was not made.

271. By way of example and not limitation, under the relevant Fee Schedule in existence at the time, the permissible charges for LSOs ranged from $43.27 under code L0625

for basic, prefabricated LSOs that require a fitting and adjustment, to $1,150.00 under code L0632 for more complex LSOs that are custom fabricated.

272. On information and belief, the Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Alrof, Bath Oro Supply, EGA Group, Heal Supply, Infinity Health Products, Leica Supply, Ortho Products & Equipment, Park Slope Medical & Surgical Supply, Promed Supply, Co., Unlimited Products and XVV, submitted bills to Plaintiffs seeking reimbursement for expensive, custom fabricated LSOs that were never provided using codes L0629, L0632, L0634, L0636 and/or L0638. To the extent any DME and/or orthotic devices were provided, the aforementioned Retail Owners, through their respective Retailers, supplied cheap, elastic, one-size-fits-all back braces that were not custom made to the claimants' measurements. By way of example, and not limitation, Exhibit "43" in the accompanying Compendium of Exhibits is a representative sample of claims where Alev Medical Supply, Alrof, Bath Oro Supply, EGA Group, Heal Supply, Infinity Health Products, Leica Supply, Ortho Products & Equipment, Park Slope Medical & Surgical Supply, Promed Supply, Co., Unlimited Products and XVV fraudulently billed for custom fabricated LSOs that were not provided using codes L0629, L0632, L0634, L0636 and/or L0638.

273. On information and belief, by billing LSOs under codes L0629, L0632, L0634, L0636 and/or L0638, the Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Alrof, Bath Oro Supply, EGA Group, Heal Supply, Infinity Health Products, Leica Supply, Ortho Products & Equipment, Park Slope Medical & Surgical Supply, Promed Supply, Co., Unlimited Products and XVV, falsely represented that they fabricated the DME and/or orthotic device solely for a particular No-fault Claimant from mainly raw materials based on the No-fault Claimants' measurements, tracings and patterns, which they

did not.

274.   On information and belief, separate and apart from billing for custom fabricated LSOs, the Retail Owners, through their respective Retailers with the exception of Alev Medical Supply, D & R Medical Supply, EGA Group, Leica Supply and Vista Surgical Supplies routinely submitted bills for LSOs using codes reserved for prefabricated DME and/or orthotic devices that require a fitting or adjustment, including, but not limited to, codes L0625, L0627, L0630, L0631, L0633, L0635 and/ or L0637, notwithstanding that a fitting or adjustment was never performed.  By way example and not limitation, Exhibit "44" in the accompanying Compendium of Exhibits is a representative sample of claims where the Retailers, with the exception of Alev Medical Supply, D & R Medical Supply, EGA Group, Leica Supply and Vista Surgical Supplies, fraudulently billed for LSOs that required a fitting and adjustment, which was never performed.

275.   On information and belief, under the relevant Fee Schedule in existence at the time, the permissible charges for thoracolumbosacral orthosis range from $144.00 under code L0450 for basic, prefabricated TLSOs that require a fitting and adjustment, to $ 1,523.40 under code L0486 for more complex TLSOs that are custom fabricated.

276.   On information and belief, the Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Dorsi Medical Supply, Medix Surgical Supply, Ortho-Med Surgical Supply and Pro-Vek Plus routinely submitted bills to Plaintiffs seeking reimbursement for expensive TLSOs that were never provided, and to the extent any DME and/or orthotic devices were provided, the aforementioned Retailers provided cheap, elastic, one-size-fits-all back braces, that were not custom made to the claimants' measurements and for which no fitting and/or adjustment was ever performed.  By way of example and not limitation, Exhibit "45" in the accompanying Compendium of Exhibits is a representative sample

of claims where Alev Medical Supply, Dorsi Medical Supply, Medix Surgical Supply, Metrostar, Ortho-Med Surgical Supply and Pro-Vek Plus fraudulently billed for custom fabricated TLSOs and/or prefabricated TSLOs for which a fitting and/or adjustment was required but not performed, using codes L0450, L0454, L0466 and L0468.

277. On information and belief, by billing for TLSOs that were custom fabricated and/or fitted and adjusted to claimants' specifications, the Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Dorsi Medical Supply, Medix Surgical Supply, Ortho-Med Surgical Supply and Pro-Vek Plus, falsely represented that the TLSOs purportedly received by the No-fault Claimants were custom fabricated and/or adjusted to their specifications, when they were not.

278. On information and belief, under the relevant Fee Schedule in existence at the time, the permissible charges for knee braces ranged from $38.00, under code L1800 for a prefabricated knee brace that requires a fitting and adjustment, to $1,107.70, under code L1844, for more complex models that are custom fabricated.

279. On information and belief, the Retail Owners, through their respective Retailers routinely submitted bills to Plaintiffs seeking reimbursement for expensive, custom-fabricated knee braces, or prefabricated knee braces that required fitting and adjustment, which were never provided, when, to the extent any DME and/or orthotic devices were provided, the aforementioned Retailers provided cheap, elastic, one-size-fits-all knee braces, which were not custom fabricated to the claimants' measurements and for which no fitting and/or adjustment was ever performed.

280. By way of example and not limitation, Right Solution Medical Supply routinely billed Plaintiffs for custom fabricated knee braces under code L1844, falsely representing that it

96

measured the No-fault Claimant who purportedly received the item, when it did not, and that it fabricated the DME and/or orthotic device solely for a particular No-fault Claimant from mainly raw materials based on the No-fault Claimants' measurements, tracings and patterns, which it did not. Exhibit "46" in the accompanying Compendium of Exhibits is a representative sample of claims where Right Solution Medical Supply fraudulently billed for custom-fabricated knee braces that were not provided using codes L1844.

281.    By way of further example and not limitation, on information and belief, the Retailers, with the exception of Amega, Fema Medical Supply, Ortho Products and Equipment, Reliable Supply of NY, Trimed Medical Supply, XVV and Vista Surgical Supplies routinely submitted bills for knee braces using codes reserved for prefabricated DME and/or orthotic devices that require a fitting or adjustment, including, but not limited to, L1810, L1815, L1820, L1832, L1834, and/or L1845, notwithstanding that a fitting or adjustment was never performed. Exhibit "47" in the accompanying Compendium of Exhibits is a representative claims paid by one or more Plaintiffs where the Retailers, with the exception of Amega, Fema Medical Supply, Ortho Products and Equipment, Reliable Supply of NY, Trimed Medical Supply, XVV and Vista Surgical Supplies submitted bills to Plaintiffs for prefabricated knee braces that required fitting and adjustment, which was were never provided, using codes L1810, L1815, L1820, L1832, L1834 and/or L1843.

282.    On information and belief, to the extent any DME and/or orthotic devices was provided, the Retail Owners, through their respective Retailers, with the exception of Amega, Trimed Medical Supply and Vista Surgical Supplies, provided cheap, elastic, one-size-fits-all knee braces for which no fitting and/or adjustment was ever performed.

283.    On information and belief, under the relevant Fee Schedule in existence at the

time, the permissible charge for a basic shoulder support is $40.00 under code L3650.

284. On information and belief, in furtherance of the schemes to defraud alleged herein, and to ensure they received the maximum reimbursement permitted under the relevant Fee Schedule in existence at the time for shoulder supports, the Retail Owners, through their respective Retailers including, but not limited to, Alev Medical Supply, Alur Medical Supply, Avgur Supply, Bath Ortho Supply, Dorsi Medical Supply, Heal Supply, Infinity Health Products, Jesa Medical Supply, Med Help Supply, Medix Surgical Supply, Mega Supplies Billing, Millennium Supplies, MSSA, Olma Medical Equipment, Ortho-Med Surgical Supply, Park Slope Medical & Surgical Supply, Promed Supply, Right Solution Medical Supply, Unlimited Products and YKLIK routinely submitted fraudulent bills for shoulder supports using codes L3650, L3651, L3652, L3660 and/or L3670, which require fitting and adjustment despite the fact that the billed-for item was never provided, not provided as billed or provided pursuant to a predetermined course of treatment, irrespective of medical necessity.

285. On information and belief, to the extent any DME and/or orthotic devices was provided, the aforementioned Retailers provided cheap, elastic, one-size-fits-all shoulder supports, for which no fitting and/or adjustment was ever performed. By way of example and not limitation, Exhibit "48" in the accompanying Compendium of Exhibits is a representative sample of claims where the Retailers, with the exception of A Plus Medical Supplies, Alrof, Amega, D & R Medical Supply, EGA Group, Fema Medical Supply, Leica Supply, Ortho Products & Equipment, Pahta Medical Supply, Pro-Vek Plus, Viss Supply and Vista Surgical Supplies, fraudulently billed for shoulder supports where no fitting and/or adjustment was performed using codes L3650, L3651, L3652, L3660, L3670, L3671 and/or L3675.

286. On information and belief, by billing shoulder supports under codes L3650,

L3651, L3652, L3660, L3670, L3671 and/or L3675, the Retail Owners, through their respective Retailers, with the exception of A Plus Medical Supplies, Alrof, Amega, D & R Medical Supply, EGA Group, Fema Medical Supply, Leica Supply, Ortho Products & Equipment, Pahta Medical Supply, Pro-Vek Plus, Viss Supply and Vista Surgical Supplies, falsely represented that they fitted and/or adjusted the DME and/or orthotic device provided to the No-fault Claimant, when they did not.

287.    On information and belief, under the relevant Fee Schedule in existence at the time, the permissible charge for a basic wrist support is $6.99 under code L3909 for a prefabricated item that includes fitting and adjustment.

288.    On information and belief, the Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Dorsi Medical Supply, EGA Group, Leica Supply, Medix Surgical Supply, Ortho-Med Surgical Supply, Park Slope Medical & Surgical Supply, Unlimited Products, Vespa Supply and YKLIK routinely submitted bills to Plaintiffs seeking reimbursement for wrist supports under codes L3807, 3908 and/or L3931, all of which require fitting and/or adjustment, in amounts ranging from $47.50 to in excess of $168.86 despite the fact that the billed for item was never provided, not provided as billed or provided pursuant to a predetermined course of treatment, irrespective of medical necessity.  By way of example and not limitation, Exhibit "49" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where Alev Medical Supply, Dorsi Medical Supply, EGA Group, Leica Supply, Medix Surgical Supply, Ortho-Med Surgical Supply, Park Slope Medical & Surgical Supply, Unlimited Products, Vespa Supply and YKLIK submitted fraudulent bills for wrist supports using codes L3807, L3808, 3908 and/or L3931.

289.    On information and belief, to the extent any DME and/or orthotic device was

provided, the Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Dorsi Medical Supply, EGA Group, Leica Supply, Medix Surgical Supply, Ortho-Med Surgical Supply, Park Slope Medical & Surgical Supply, Unlimited Products, Vespa Supply and YKLIK provided cheap, elastic, one-size-fits-all wrist supports for which no fitting and/or adjustment was ever performed.

290.    On information and belief, by billing wrist supports under codes L3807, L3808, 3908 and/or L3931, the Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Dorsi Medical Supply, EGA Group, Leica Supply, Medix Surgical Supply, Ortho-Med Surgical Supply, Park Slope Medical & Surgical Supply, Unlimited Products, Vespa Supply and YKLIK falsely represented that they fitted and/or adjusted the DME and/or orthotic device provided to the No-fault Claimant, when they did not.

291.    On information and belief, under the relevant Fee Schedule in existence at the time, the permissible charges for elbow supports range from $8.99 under code L3701 for basic, prefabricated supports, to $221.18 under code L3702 for more complex supports, which include fitting and/or adjustment.

292.    On information and belief, the Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Leica Supply, MSSA, Ortho-Med Surgical Supply, Right Solution Medical Supply, Unlimited Products, Vespa Supply and YKLIK routinely submitted bills to Plaintiffs seeking reimbursement amounts in excess of $120.00 for elbow supports under codes L3700, L3710, L3760 and/or L3762, which require fitting and adjustment, despite the fact that the billed for item was never provided, not provided as billed or provided pursuant to a predetermined course of treatment, irrespective of medical necessity.

293.    On information and belief, to the extent any DME and/or orthotic device was

100

provided, the Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Leica Supply, Mega Supplies Billing, MSSA, Ortho-Med Surgical Supply, Right Solution Medical Supply, Unlimited Products, Vespa Supply and YKLIK provided cheap, elastic, one-size-fits-all elbow supports for which no fitting and/or adjustment was ever performed.

294. On information and belief, by billing elbow supports under L3700, L3710, L3760 and/or L3762, the Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Leica Supply, Mega Supplies Billing, MSSA, Ortho-Med Surgical Supply, Right Solution Medical Supply, Unlimited Products, Vespa Supply and YKLIK falsely represented that they fitted and/or adjusted the DME and/or orthotic device provided to the No-fault Claimant, when they did not. Exhibit "50" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the aforementioned Retailers submitted fraudulent bills for elbow supports under L3700, L3702, L3710, L3760 and/or L3762.

295. Under the relevant Fee Schedule in existence at the time, the permissible charges for ankle supports ranged from $8.09, under code L1901 for basic, prefabricated ankle supports that require a fitting and adjustment, to $690.00 under code L1950 for more complex items that were custom fabricated.

296. On information and belief, in furtherance of the scheme to defraud, and to ensure they received the maximum reimbursement permitted under the relevant Fee Schedule in existence at the time for ankle braces, the Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Alur Medical Supply, Dorsi Medical Supply, EGA Group, Infinity Health Products, Leica Supply, Millennium Supplies, Ortho-Med Surgical

101

Supply, Unlimited Products, Vespa Supply and YKLIK routinely submitted fraudulent bills for ankle braces using code L1902 and/or L1906 despite the fact that the billed for item was never provided, not provided as billed or provided pursuant to a predetermined course of treatment, irrespective of medical necessity.

297. On information and belief, to the extent any DME and/or orthotic device was provided, the Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Alur Medical Supply, Dorsi Medical Supply, EGA Group, Infinity Health Products, Leica Supply, Millennium Supplies, MSSA, Ortho-Med Surgical Supply, Unlimited Products, Vespa Supply and YKLIK provided cheap, elastic, one-size-fits-all ankle braces for which no fitting and/or adjustment was ever performed. Exhibit "51" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to one or more of the aforementioned Retailers pursuant to the Retailers' submission of fraudulent bills for ankle braces using codes L1902 and/or L1906.

## 2. Fraudulent Billing in Excess of the Fee Schedule

298. On information and belief, in contravention of Regulation 83, which provides that the maximum permissible charge for DME is the fee payable for such equipment under the New York State Medicaid program at the time the equipment is provided, the Retail Owners, through their respective Retailers including, but not limited to, Alev Medical Supply, Alrof, Alur Medical Supply, A Plus Medical Supply, Avgur Supply, Bath Ortho Supply, DB Supply, Dorsi Medical Supply, EGA Group, Heal Supply, Infinity Health Products, Leica Supply, Med Help Supply, Mega Supplies Billing, Millennium Supplies, Olma Medical Equipment, Park Slope Medical & Surgical Supply, Promed Supply, Right Solution Medical Supply, Unlimited Products, Viss Supply, We Do Care Medical Supply, XVV and YKLIK, routinely billed for dollar amounts

greater than the dollar amounts set forth in the Fee Schedule. Exhibit "52" in the accompanying Compendium of Exhibits is a representative sample of instances where the foregoing Retailers billed one or more Plaintiffs in amounts greater than set forth in the Fee Schedule.

299. By submitting bills to Plaintiffs for DME and/or orthotic devices in excess of the relevant Fee Schedule in existence at the time, the Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Alrof, Alur Medical Supply, A Plus Medical Supply, Avgur Supply, Bath Ortho Supply, DB Supply, Dorsi Medical Supply, EGA Group, Heal Supply, Infinity Health Products, Leica Supply, Med Help Supply, Mega Supplies Billing, Millennium Supplies, Olma Medical Equipment, Park Slope Medical & Surgical Supply, Promed Supply, Right Solution Medical Supply, Unlimited Products, Viss Supply, We Do Care Medical Supply, XVV and YKLIK deliberately misrepresented the amounts they were entitled to receive under the No-fault Law, to the extent that the DME and/or orthotic devices were provided at all. By way of example and not limitation:

- The Retail Owners, through their respective Retailers, including, but not limited to, Olma Medical Equipment, Park Slope Medical & Surgical Supply, Right Solution Medical Supply, We Do Care Medical Supply and YKLIK, routinely submitted bills to Plaintiffs for lumbar cushions using code E0190 in amounts ranging from $38.50 to $105.00, when, based on the relevant Fee Schedule in existence at the time, DME provided under that code was only reimbursable in the amount of $22.04. Exhibit "53" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to Olma Medical Equipment, Park Slope Medical & Surgical Supply, Right Solution Medical Supply, We Do Care Medical Supply and YKLIK based upon those Retailers' submission of bills for lumbar cushions in excess of the permissible Fee Schedule amount.

- The Retailer Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, A Plus Medical Supplies, Avgur Supply, DB Supply, Med Help Supply, Mega Supplies Billing and Promed Supply, routinely billed Plaintiffs for electric heat pads (thermophores) under code E0215 in amounts ranging from $67.37 to $179.00, when, based on the relevant Fee Schedule in existence at

the time, that code is only reimbursable in the amount of $20.93. Exhibit "54" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to Alev Medical Supply, A Plus Medical Supplies, Avgur Supply, DB Supply, Med Help Supply, Mega Supplies Billing and Promed Supply for thermophores based upon those Retailers' submission of bills in excess of the permissible Fee Schedule amount.

- The Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Alrof, Alur Medical Supply, Avgur Supply, Bath Ortho Supply, DB Supply, Dorsi Medical Supply, EGA Group, Heal Supply, Infinity Health Products, Leica Supply, Promed Supply, Unlimited Products and We Do Care Medical Supply, routinely submitted bills to Plaintiffs for foam rubber mattresses using code E0272 in amounts ranging from $105.00 to $187.00, amounts which were in excess of the relevant Fee Schedules in existence at the time. Exhibit "55" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to Alev Medical Supply, Alrof, Alur Medical Supply, Avgur Supply, Bath Ortho Supply, DB Supply, Dorsi Medical Supply, EGA Group, Heal Supply, Infinity Health Products, Leica Supply, Promed Supply, Unlimited Products and We Do Care Medical Supply based upon those Retailers' submission of bills for foam rubber mattresses in excess of the permissible Fee Schedule amount.

- The Retail Owners, through their respective Retailers, including, but not limited to, Avgur Supply, DB Supply, Med Help Supply, Park Slope Medical & Surgical Supply and We Do Care Medical Supply, routinely submitted bills to Plaintiffs for over-bed tables using code E0274 in amounts ranging from $117.13 to $143.25, when, based on the relevant Fee Schedule in existence at the time, DME provided under that code was only reimbursable in the amount of $101.85. Exhibit "56" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to Avgur Supply, DB Supply, Med Help Supply, Park Slope Medical & Surgical Supply and We Do Care Medical Supply for foam rubber mattresses based upon those Retailers' submission of bills for over-bed tables in excess of the permissible Fee Schedule amount.

- The Retail Owners, through their respective Retailers, including, but not limited to, Infinity Health Products, Millennium Supplies Right Solution Medical Supply, Unlimited Products, Viss Supply and XVV and routinely submitted bills to Plaintiffs for general use wheelchair back cushions using code E2611 in amounts ranging from $297.00 to $338.00, amounts which were in excess of the relevant Fee Schedules in existence at the time. Exhibit "57" in the accompanying Compendium of Exhibits is a representative sample

of claims paid by one or more Plaintiffs to Infinity Health Products, Millennium Supplies Right Solution Medical Supply, Unlimited Products, Viss Supply and XVV Supplies for foam rubber mattresses based upon those Retailers' submission of bills for general use wheelchair back cushions in excess of the permissible Fee Schedule Amount.

- The Retail Owners, through their respective Retailers, including, but not limited to, Avgur Supply, Med Help Supply, DB Supply, Leica Supply, Unlimited Products and We Do Care Medical Supply, routinely submitted bills to Plaintiffs for cervical collars using code L0172 in amounts ranging from $77.50 to $89.00, when, based on the relevant Fee Schedule in existence at the time, DME provided under that code was only reimbursable in the amount of $75.00. Exhibit "58" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to Avgur Supply, Med Help Supply, DB Supply, Leica Supply, Unlimited Products and We Do Care Medical Supply based upon those Retailers' submission of bills for cervical collars in excess of the permissible Fee Schedule amount.

- The Retail Owners, through their respective Retailers, including, but not limited to, Avgur Supply, Bath Ortho Supply, Med Help Supply, DB Supply, We Do Care Medical Supply and YKLIK, routinely submitted bills to Plaintiffs for LSOs using code L0633 in amounts ranging from $230.86 to $844.00, when, based on the relevant Fee Schedule in existence at the time, DME provided under that code was only reimbursable in the amount of $225.31. Exhibit "59" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to Avgur Supply, Bath Ortho Supply, Heal Supply, Med Help Supply, DB Supply, We Do Care Medical Supply, XVV and YKLIK based upon those Retailers' submission of bills for LSOs in excess of the permissible Fee Schedule amount.

- The Retail Owners, through their respective Retailers, including, but not limited to, Alev Medical Supply, Heal Supply, Right Solution Medical Supply and YKLIK, routinely submitted bills to Plaintiffs for knee braces using code L1820 in amounts ranging from $112.00 to $236.00, when, based on the relevant Fee Schedule in existence at the time, DME provided under that code was only reimbursable in the amount of $110.00. Exhibit "60" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs to Alev Medical Supply, Heal Supply, Right Solution Medical Supply and YKLIK based upon those Retailers' submission of bills for knee braces in excess of the permissible Fee Schedule amount.

**3.  Fraudulent Billing for DME and/or Orthotic Devices Not Provided**

300.  On information and belief, in furtherance of the schemes to defraud alleged herein, the Retail Owners, through their respective Retailers, routinely submitted bills to Plaintiffs for DME and/or orthotic devices that were never provided. By way of example and not limitation, the Retail Owners, through their respective Retailers, with the exception of Fema Medical Supply, Trimed Medical Supply and Reliable Supply routinely submitted bills to Plaintiffs for cervical collars under codes L0120, L0140, L0150, L0172, L0174 and or L0180, in amounts ranging from of $75.00 to in excess of $200.00.

301.  Under the relevant Fee Schedule in existence at the time, the permissible charges for cervical collars range from $6.80 under code L0120 for basic flexible, foam collars to $357.00 for complex cervical collars molded to the patients' specifications. On information and belief, to the extent any DME and/or orthotic device was provided, the Retail Owners, through their respective Retailers, with the exception of Fema Medical Supply, Trimed Medical Supply and Reliable Supply provided cheap cervical collars for which the legitimate wholesale cost was approximately $7.50. Exhibit "61" in the accompanying Compendium of Exhibits is a representative sample of fraudulent claims paid by one or more Plaintiffs to the foregoing Retailers for cervical collars under codes L0120, L0140, L0150 L0160, L0172, L0174 and/or L0180.

302.  On information and belief, by billing cervical collars under codes L0120, L0172, L0120, L0140, L0150, L0160, L0172, L0174 and/or L0180, the Retail Owners, through their respective Retailers, with the exception of Fema Medical Supply, Trimed Medical Supply and Reliable Supply, falsely represented that they provided semi-rigid, thermoplastic two-piece collars, when they did not.

303.    By way of further example and not limitation, the Retail Owners, through their respective Retailers, with the exception of A Plus Medical Supplies, Amega, Avgur Supply, D & R Medical Supply, DB Supply, Med Help Supply, Mega Supplies Billing, Olma Medical Equipment, Pahta Medical Supply, Trimed Medical Supply and Vista Surgical Supplies routinely submitted bills to Plaintiffs seeking reimbursement for lumbar cushions, using codes E2601, E2602, E2605, E2611, E2612, 2613, E2616 and/or E2619 in amounts ranging from $114.13 to in excess of $390.00.

304.    Under the relevant Fee Schedule in existence at the time, codes E2601, E2602, 2605, E2611, E2612, 2613, E2616 and/or E2619 were for DME satisfying the description of cushions and/or cushion covers specifically reserved for lumbar support used in connection with a wheelchair.

305.    On information and belief, the aforementioned Retailers did not provide lumbar cushions or cushion covers used in connection with a wheelchair to any No-fault Claimant.

306.    On information and belief, none of the No-fault Claimants that received a lumbar cushion from one or more of the Retailers was wheelchair bound.

307.    On information and belief, to the extent any DME and/or orthotic device was provided, the lumbar cushions were not specialized wheelchair cushions, but rather simple back cushions for use in any chair that would otherwise be reimbursable under code E0190 at $22.04.

308.    On information and belief, by billing lumbar cushions under codes E2601, E2602, 2605, E2611 and E2612, E2616 and/or E2619, the Retail Owners, through their respective Retailers, with the exception of A Plus Medical Supplies, Amega, Avgur Supply, D & R Medical Supply, DB Supply, Fema Medical Supply, Med Help Supply, Mega Supplies Billing, Olma Medical Equipment, Pahta Medical Supply, Trimed Medical Supply and Vista Surgical Supplies,

falsely represented that they provided specialized wheelchair cushions, when they did not. Exhibit "62" in the accompanying Compendium of Exhibits is a representative sample of fraudulent claims paid by one or more Plaintiffs to the foregoing Retailers for lumbar cushions under codes E2601, E2602, 2605, E2611, E2612, E2616 and/or E2619.

309. On information and belief, under the relevant Fee Schedule in existence at the time, the permissible charges for cervical traction units range from $21.36 under code E0860, for basic units that are hung over the door, to $502.63 under code E0855 for more complex units.

310. On information and belief, the Retail Owners, through their respective Retailers, including, but not limited to, Alur Medical Supply, Dorsi Medical Supply, Infinity Health Products, Jesa Medical Supply, Med Help Supply, Medix Surgical Supply, Millennium Supplies, Olma Medical Equipment, Ortho-Med Surgical Supply, Pro-Vek Plus, Right Solution Medical Supply, Unlimited Products, Vespa Supply, We Do Care Medical Supplies and YKLIK, routinely submitted bills to Plaintiffs for complex cervical traction units using code E0855 at prices ranging from $480.00 to $1,005.26, when to the extent anything was provided, those Retailers purportedly provided inexpensive cervical traction units with pumps, including, but not limited to, replicas or knockoffs of a trademarked cervical traction unit manufactured and sold by Posture Pump, with a wholesale price that is a fraction of the cost associated with the authentic device. By way of example and not limitation, Exhibit "63" in the accompanying Compendium of Exhibits is a representative sample of claims paid by one or more Plaintiffs where the foregoing Retailers submitted fraudulent bills for cervical traction devices.

311. On information and belief, the legitimate wholesale cost for a Posture Pump unit or related device does not exceed $65.00, meaning that the maximum reimbursement for that item, if provided, and if it were a Non-Fee Schedule item, would be no more than $97.50.

## MONEY LAUNDERING SCHEME

312. On information and belief, Defendants knew that the money paid by insurers, in general, and Plaintiffs, in particular, to the Retailers represented the proceeds and profits of their unlawful activity. Thus, to ensure that they would ultimately receive their ill-gotten gains, the Defendants engaged in a complex check cashing and/or money laundering scheme in furtherance of the scheme to defraud.

313. On information and belief, these covert cash transactions were facilitated through various clandestine arrangements among one or more of the Retail Defendants, Wholesale Defendants, check brokers, who acted as intermediaries between the check cashers and the Retail and Wholesale Defendants in order to conceal the true beneficiaries of the transactions, and check cashers.

314. On information and belief, and as described herein, the Defendant Retailers and Defendant Wholesalers generated significant amounts of cash through transactions with check cashers, which cash was, among other things, used to facilitate the (i) secret cash kickback arrangements between the Defendant Retailers and Wholesale Defendants that were essential to foster the illusion that the Retailers actually paid the inflated amounts for DME and/or orthotic devices reflected on the wholesale invoices; (ii) secret cash kickback arrangements between the Retailers and No-fault Clinics, which were necessary to induce the clinics to supply the Defendant Retailers with prescriptions for bogus DME and/or orthotic devices; and (iii) the Defendant Retailers' and Defendant Wholesalers' transactions, which were intentionally disguised as business expenses in order evade corporate tax liabilities through false deductions and/or the under reporting of income, thereby maximizing the Defendants' profits from, and enhancing their incentives to continue, the fraudulent activities described herein.

315. On information and belief, in furtherance of the money laundering scheme, the Defendant Retailers issued checks drawn on their corporate accounts to the Defendant Wholesalers for the full amounts of inflated wholesale invoices that the Defendant Wholesalers provided to them. The wholesale invoices were provided to the Defendant Retailers to camouflage the conversion of the Defendant Retailers' checks payable to the Defendant Wholesalers to cash at check cashing establishments.

316. On information and belief, the Defendant Retailers requested that the Defendant Wholesalers have their checks cashed on the Defendant Wholesalers' corporate accounts to fraudulently demonstrate to insurers, such as Plaintiffs, that they paid for the wholesale items, when, in fact, they did not.

317. Once the Defendant Retailers' checks were deposited in the Defendant Wholesalers' bank accounts, the Wholesale Defendants converted the Defendant Retailers' checks to cash, by, among other things, issuing corresponding checks drawn on their own bank accounts and converting those corresponding checks to cash through check cashing establishments, ultimately returning upwards of 90% of the money to the Defendant Retailers while keeping a portion of the profits of the scheme for themselves.

318. On information and belief, the Defendant Wholesalers' checks oftentimes were made payable to entities that maintained bank accounts but had no apparent business or lawful purpose, made payable to fictitious payees to conceal the true beneficiaries of the transactions, and/or presented by "brokers" who acted as intermediaries between the check cashers and the Defendant Retailers and Defendant Wholesalers in order to conceal the true beneficiaries of the transactions.

319. On information and belief, in an effort to conceal the money laundering scheme's

existence and purpose, the Wholesale Defendants routinely presented, or caused to be presented, checks to check cashers that were structured in amounts slightly under the $10,000 floor that would have triggered the compulsory filing of a Currency Transaction Report ("CTR") to the Internal Revenue Service ("IRS").

320.     On information and belief, in those instances where the Wholesale Defendants presented checks to check cashers in amounts in excess of $10,000, the check cashiers, with the knowledge and consent of the Wholesale Owners and the Retail Owners, would generate a fraudulent CTR that usually listed the nominal owner of the wholesaler as having received currency from the negotiation of checks written from the Defendant Retailers, when, in fact, those individuals did not receive any currency, were not part of the transaction, were not aware of the transaction and oftentimes were not even present in the United States when the transactions took place. Instead, the Defendant Retailers were the true recipients of the cash generated by the aforementioned transactions.

## DISCOVERY OF THE FRAUD

321.     On information and belief, to induce Plaintiffs to promptly reimburse their claims for DME and/or orthotic devices, Defendants have gone to great lengths to systematically conceal their fraud. By way of example, and not limitation:

- The Retail Owners, through their respective Retailers routinely and deliberately: (1) failed to submit wholesale invoices with their initial bill submissions, thereby concealing the amounts that the Retailers actually paid for any DME and/or orthotic devices, the manufacturer, make, model, size and quality of the goods and the actual value of the goods in a legitimate marketplace; or (2) submitted fraudulent wholesale invoices from one or more of the Wholesale Defendants, reflecting prices far in excess of those actually paid by the Retailers to the extent necessary to support the fraudulent charges;

- With respect to Fee Schedule Items, the Retail Owners, through their respective Retailers routinely misrepresented in the bills submitted

111

to Plaintiffs that they provided more expensive items from the middle or top end of the Fee Schedule, rather than the inexpensive, basic items that actually were supplied; and

- The Retail Owners, through their respective Retailers, systematically failed and/or refused to provide Plaintiffs with a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted by the Retailers are legitimate.

322.     Plaintiffs are under a statutory and contractual obligation to promptly and fairly process claims within 30 days. The documents submitted to Plaintiffs in support of the fraudulent claims at issue, combined with the material misrepresentations, omissions and acts of fraudulent concealment described above, were designed to and did cause Plaintiffs to justifiably rely on them. As a proximate result, Plaintiffs have incurred damages of more than $ 14,000,000.00 based upon the fraudulent bill submissions.

323.     Based upon Defendants' material misrepresentations and other affirmative acts to conceal their fraud from Plaintiffs, Plaintiffs did not discover and should not have reasonably discovered that its damages were attributable to fraud until shortly before they filed this Complaint.

## STATEMENT OF CLAIMS

### FIRST CLAIM FOR RELIEF

### AGAINST GENNADIY BRONSHTEYN, ARKADI SHAPIRO, BENER WHOLESALE, INC., GALASA WHOLESALE, INC., MDDS WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, LIOUDMILA LITVINOVA, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

324.     The allegations of paragraphs 1 through 322 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

325.    At all times relevant herein, Alev Medical Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

326.    From, in or about 2006 through the date of the filing of this Complaint, Defendants Bronshteyn, Shapiro, Bener Wholesale, Galasa Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Alev Medical Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.    Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

327.    At all relevant times mentioned herein, Defendants Bronshteyn and Shapiro, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Alev Medical Supply enterprise and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Northbrook Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

328.    On information and belief, Defendants Bener Wholesale, Galasa Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by

providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Bener Wholesale, Galasa Wholesale, MDDS Wholesale and one or more of the ABC Corporations furnished documents that Bronshteyn and Shapiro required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

329.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Yuzovitskiy, G. Groysman, Litvinova and one or more of the John Does 9 through 20, through Bener Wholesale, Galasa Wholesale, MDDS Wholesale and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

330.    The racketeering acts set forth herein were carried out on a continued basis over a more than three-year period, were related and similar and were committed as part of Defendants Bronshteyn, Shapiro, Bener Wholesale, Galasa Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

331.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Alev Medical Supply continues to pursue collection on the fraudulent billing to the present day.

332. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Bronshteyn and Shapiro, with the knowledge and intent of Defendants Bener Wholesale, Galasa Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Alev Medical Supply enterprise based upon materially false and misleading information.

333. Through the Alev Medical Supply enterprise, Defendants Bronshteyn and Shapiro submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Bronshteyn and Shapiro, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Bronshteyn, Shapiro, Bener Wholesale, Galasa Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Alev Medical Supply enterprise through the filing of this Complaint.

334. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Bronshteyn and Shapiro, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

335. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. §

1961(1)(B).

336.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

337.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Northbrook Indemnity Company have been injured in their business and property, and Plaintiffs have been damaged in the aggregate amount presently in excess of $1,270,000.00, the exact amount to be determined at trial.

338.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Bronshteyn, Shapiro, Bener Wholesale, Galasa Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### SECOND CLAIM FOR RELIEF

### AGAINST DEFENDANTS ALEV MEDICAL SUPPLY, GENNADIY BRONSHTEYN AND ARKADI SHAPIRO

### (Common Law Fraud)

339.    The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

340.    Defendants Bronshteyn, Shapiro and Alev Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Northbrook Indemnity

Company for payment.

341. On information and belief, each and every bill and supporting documentation submitted by Defendants Bronshteyn, Shapiro and Alev Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

342. On information and belief, Defendants Bronshteyn, Shapiro and Alev Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Alev Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic

devices provided (*i.e.,* make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Bronshteyn and Shapiro, through Alev Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Bronshteyn and Shapiro, through Alev Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

343. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Alev Medical Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

344. Defendants Bronshteyn, Shapiro and Alev Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

345. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Bronshteyn, Shapiro and Alev Medical Supply's acts of fraud and deception.

346. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Alev Medical Supply's claims for No-fault

insurance benefits submitted in connection therewith.

347. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Bronshteyn, Shapiro and Alev Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

348. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and have been injured in their business and property in an amount believed to be in excess of $1,270,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

<h3 style="text-align:center">THIRD CLAIM FOR RELIEF</h3>

<h3 style="text-align:center">AGAINST DEFENDANTS ALEV MEDICAL SUPPLY, GENNADIY BRONSHTEYN<br>AND ARKADI SHAPIRO</h3>

<h3 style="text-align:center">(Unjust Enrichment)</h3>

349. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

350. By reason of their wrongdoing, Defendants Bronshteyn, Shapiro and Alev Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Northbrook Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

351. Plaintiffs are therefore entitled to restitution from Defendants Bronshteyn,

Shapiro and Alev Medical Supply in the amount by which they have been unjustly enriched.

352. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and have been injured in their business and property in an amount believed to be in excess of $1,270,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS BENER WHOLESALE, INC., GALASA WHOLESALE, INC., MDDS WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, LIOUDMILA LITVINOVA, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

353. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

354. On information and belief, Defendants Bener Wholesale, Galasa Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Northbrook Indemnity Company by Defendants Bronshteyn, Shapiro and Alev Medical Supply.

355. On information and belief, the acts taken by Defendants Bener Wholesale, Galasa Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the

fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Bronshteyn, Shapiro and Alev Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent invoices so that Defendants Bronshteyn, Shapiro and Alev Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendants Bronshteyn and Shapiro, through Alev Medical Supply, to Alev Medical Supply to in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Alev Medical Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Bronshteyn and Shapiro, through Alev Medical Supply, and the No-fault Clinics.

356.    On information and belief, the conduct of Defendants Bener Wholesale, Galasa Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Bronshteyn and Shapiro through Alev Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

357.    On information and belief, Defendants Bener Wholesale, Galasa Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent

scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

358. On information and belief, the conduct of Defendants Bener Wholesale, Galasa Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Northbrook Indemnity Company to pay money based upon the fraudulent charges submitted through Alev Medical Supply in an amount to be determined at trial, but in no event less than $1,270,000.00.

359. On information and belief, Defendants Bener Wholesale, Galasa Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

360. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## FIFTH CLAIM FOR RELIEF

### AGAINST ALEKSANDR FINKELSHTEYN, ROBERT FINKELSHTEYN, BENER WHOLESALE, INC., MDDS WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, LIOUDMILA LITVINOVA, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

361. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

362. At all times relevant herein, Alrof was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

363. From, in or about 2007 through the date of the filing of this Complaint, Defendants A. Finkelshteyn, R. Finkelshteyn, Bener Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Alrof enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

364. At all relevant times mentioned herein, Defendants A. Finkelshteyn and R. Finkelshteyn, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Alrof enterprise and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Northbrook Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

365. On information and belief, Defendants Bener Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive

DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Bener Wholesale, MDDS Wholesale and one or more of the ABC Corporations furnished documents that Defendants A. Finkelshteyn and R. Finkelshteyn required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

366.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Yuzovitskiy, G. Groysman, Litvinova and one or more of the John Does 9 through 20, through Bener Wholesale, MDDS Wholesale and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

367.    The racketeering acts set forth herein were carried out on a continued basis over a more than four-year period, were related and similar and were committed as part of Defendants A. Finkelshteyn,   R. Finkelshteyn, Bener Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

368.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Alrof continues to pursue collection on the fraudulent billing to the present day.

369.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants A. Finkelshteyn and R. Finkelshteyn, with the knowledge and intent of Defendants Bener Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Alrof enterprise based upon materially false and misleading information.

370.    Through the Alrof enterprise, Defendants A. Finkelshteyn and R. Finkelshteyn submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants A. Finkelshteyn and R. Finkelshteyn, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants A. Finkelshteyn, R. Finkelshteyn, Bener Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Alrof enterprise through the filing of this Complaint.

371.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants A. Finkelshteyn and R. Finkelshteyn, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

372.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. §

1961(1)(B).

373. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

374. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company have been injured in their business and property, and Plaintiffs have been damaged in the aggregate amount presently in excess of $604,000.00, the exact amount to be determined at trial.

375. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants A. Finkelshteyn, R. Finkelshteyn, Bener Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## SIXTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ALROF, INC., ALEKSANDR FINKELSHTEYN AND ROBERT FINKELSHTEYN

### (Common Law Fraud)

376. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

377. Defendants A. Finkelshteyn, R. Finkelshteyn and Alrof made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company for payment.

378.    On information and belief, each and every bill and supporting documentation submitted by Defendants A. Finkelshteyn, R. Finkelshteyn and Alrof to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

379.    On information and belief, Defendants A. Finkelshteyn, R. Finkelshteyn and Alrof intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Alrof was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (*i.e.,* make and model) and/or additional information that is necessary to determine whether the charges

127

submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Finkelshteyn, through Alrof, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants A. Finkelshteyn and R. Finkelshteyn, through Alrof, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

380. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Alrof's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

381. Defendants A. Finkelshteyn, R. Finkelshteyn and Alrof knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

382. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants A. Finkelshteyn, R. Finkelshteyn and Alrof's acts of fraud and deception.

383. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Alrof's claims for No-fault insurance benefits submitted in connection therewith.

384. Furthermore, the far reaching pattern of fraudulent conduct by Defendants A. Finkelshteyn, R. Finkelshteyn and Alrof evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

385. By reason of the foregoing, Plaintiffs Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and have been injured in their business and property in an amount believed to be in excess of $604,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

### SEVENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ALROF, INC., ALEKSANDR FINKELSHTEYN AND ROBERT FINKELSHTEYN

### (Unjust Enrichment)

386. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

387. By reason of their wrongdoing, Defendants A. Finkelshteyn, R. Finkelshteyn and Alrof have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Deerbrook Insurance Company and Allstate Fire & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

388. Plaintiffs are therefore entitled to restitution from Defendants A. Finkelshteyn, R. Finkelshteyn and Alrof in the amount by which they have been unjustly enriched.

389. By reason of the foregoing, Plaintiffs Allstate Indemnity Company, Allstate

Property & Casualty Insurance Company, Deerbrook Insurance Company and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and have been injured in their business and property in an amount believed to be in excess of $604,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## EIGHTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS BENER WHOLESALE, INC., MDDS WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, LIOUDMILA LITVINOVA, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

390. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

391. On information and belief, Defendants Bener Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Deerbrook Insurance Company and Allstate Fire & Casualty Insurance Company by Defendants A. Finkelshteyn, R. Finkelshteyn and Alrof.

392. On information and belief, the acts taken by Defendants Bener Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants A. Finkelshteyn, R. Finkelshteyn and Alrof purportedly provided to No-fault Claimants; (ii) knowingly providing the

fraudulent wholesale invoices so that Defendants A. Finkelshteyn, R. Finkelshteyn and Alrof could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendants A. Finkelshteyn and R. Finkelshteyn, through Alrof, to Alrof to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Alrof; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants A. Finkelshteyn and R. Finkelshteyn, through Alrof, and the No-fault Clinics.

393. On information and belief, the conduct of Defendants Bener Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants A. Finkelshteyn and R. Finkelshteyn through Alrof to obtain fraudulently inflated payments from Plaintiffs, among others.

394. On information and belief, Defendants Bener Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

395. On information and belief, the conduct of Defendants Bener Wholesale, MDDS

Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Deerbrook Insurance Company and Allstate Fire & Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Alrof in an amount to be determined at trial, but in no event less than $604,000.00.

396.    On information and belief, Defendants Bener Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

397.    By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## NINTH CLAIM FOR RELIEF

### AGAINST IRING ZAYONTS, IGOR SOBOLEVSKY, DEIMOS DISTRIBUTORS, INC., RIVIERA WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 5, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

398.    The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

399.    At all times relevant herein, Alur Medical Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

400. From, in or about 2006 through the date of the filing of this Complaint, Defendants Zayonts, Sobolevsky, Deimos Distributors, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Alur Medical Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

401. At all relevant times mentioned herein, Defendants Zayonts and Sobolevsky, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Alur Medical Supply enterprise and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

402. On information and belief, Defendants Deimos Distributors, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Deimos Distributors, Riviera Wholesale and one or more of the ABC

Corporations furnished documents that Defendants Zayonts and Sobolevsky required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

403.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Yuzovitskiy, G. Groysman, John Doe 5 and one or more of the John Does 9 through 20, through Deimos Distributors, Riviera Wholesale and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

404.    The racketeering acts set forth herein were carried out on a continued basis over a more than six-year period, were related and similar and were committed as part of Defendants Zayonts, Sobolevsky, Deimos Distributors, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

405.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Alur Medical Supply continues to pursue collection on the fraudulent billing to the present day.

406.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Zayonts and Sobolevsky, with the knowledge and intent of Defendants Deimos Distributors, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service

in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Alur Medical Supply enterprise based upon materially false and misleading information.

407.    Through the Alur Medical Supply enterprise, Defendants Zayonts and Sobolevsky submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Zayonts and Sobolevsky, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Zayonts, Sobolevsky, Deimos Distributors, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the enterprise through the filing of this Complaint.

408.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Zayonts and Sobolevsky in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

409.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

410.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

411.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate

Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $483,000.00, the exact amount to be determined at trial.

412.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Zayonts, Sobolevsky, Deimos Distributors, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### TENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ALUR MEDICAL SUPPLY, INC., IRING ZAYONTS AND IGOR SOBOLEVSKY

### (Common Law Fraud)

413.     The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

414.     Defendants Zayonts, Sobolevsky and Alur Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Company, Deerbrook Insurance Company, and Northbrook Indemnity Company for payment.

415.     On information and belief, each and every bill and supporting documentation submitted by Defendants Zayonts, Sobolevsky and Alur Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only

were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

416. On information and belief, Defendants Zayonts, Sobolevsky and Alur Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Alur Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent

137

protocol whereby Defendants Zayonts and Sobolevsky, through Alur Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Zayonts and Sobolevsky, through Alur Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

417. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Alur Medical Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

418. Defendants Zayonts, Sobolevsky and Alur Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

419. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Zayonts, Sobolevsky and Alur Medical Supply's acts of fraud and deception.

420. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Alur Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

421. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Zayonts, Sobolevsky and Alur Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

422. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Company, Deerbrook Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and have been injured in their business and property in an amount believed to be in excess of $483,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## ELEVENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ALUR MEDICAL SUPPLY, INC., IRING ZAYONTS AND IGOR SOBOLEVSKY

### (Unjust Enrichment)

423. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

424. By reason of their wrongdoing, Defendants Zayonts, Sobolevsky and Alur Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Company, Deerbrook Insurance Company and Northbrook Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

425. Plaintiffs are therefore entitled to restitution from Defendants Zayonts, Sobolevsky and Alur Medical Supply in the amount by which they have been unjustly enriched.

426. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Company, Deerbrook Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and have been injured in their business and property in an amount

believed to be in excess of $483,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## TWELFTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS DEIMOS DISTRIBUTORS, INC., RIVIERA WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 5, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

427. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

428. On information and belief, Defendants Deimos Distributors, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 5, one or more of the ABC Corporations 1 through 20 and John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Company, Deerbrook Insurance Company and Northbrook Indemnity Company by Defendants Zayonts, Sobolevsky and Alur Medical Supply.

429. On information and belief, the acts taken by Defendants Deimos Distributors, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Zayonts, Sobolevsky and Alur Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Zayonts, Sobolevsky and Alur Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a

portion of the amounts paid by Defendants Zayonts and Sobolevsky, through Alur Medical Supply, to Alur Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Alur Medical Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Zayonts and Sobolevsky, through Alur Medical Supply, and the No-fault Clinics.

430. On information and belief, the conduct of Defendants Deimos Distributors, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Zayonts and Sobolevsky through Alur Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

431. On information and belief, Defendants Deimos Distributors, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

432. On information and belief, the conduct of Defendants Deimos Distributors, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 5, one or more of the ABC

Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Company, Deerbrook Insurance Company and Northbrook Indemnity Company to pay money based upon the fraudulent charges submitted through Alur Medical Supply in an amount to be determined at trial, but in no event less than $483,000.00.

433. On information and belief, of Defendants Deimos Distributors, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

434. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## THIRTEENTH CLAIM FOR RELIEF

### AGAINST ALEKSANDR AFANASYEV, VADYM DETS, BELA RUD, VADIM VINOKOUR, DENIS ZAGLADKO, IVY MED DISTRIBUTORS, INC., JOHN DOE 3 , ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

435. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

436. At all times relevant herein, Amega was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

437. From, in or about 2009 through the date of the filing of this Complaint, Defendants Afanasyev, Dets, Rud, Vinokour, Zagladko, Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Amega enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

438. At all relevant times mentioned herein, Defendants Afanasyev, Dets, Rud, Vinokour and Zagladko, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Amega enterprise and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Company and Allstate New Jersey Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

439. On information and belief, Defendants Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Ivy Med Distributors and one or more of the ABC Corporations furnished documents that Defendants Afanasyev, Dets,

Rud, Vinokour and Zagladko required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

440. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by John Doe 3 and/or one or more of the John Does 9 through 20, through Defendant Ivy Med Distributors and/or one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

441. The racketeering acts set forth herein were carried out on a continued basis over more than two-year period, were related and similar and were committed as part of Defendants Dets, Vinokour, Rud, Afanasyev, Zagladko, Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

442. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Amega continues to pursue collection on the fraudulent billing to the present day.

443. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Afanasyev, Dets, Rud, Vinokour and Zagladko, with the knowledge and intent of Defendants Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in

144

violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Amega enterprise based upon materially false and misleading information.

444.    Through the Amega enterprise, Defendants Afanasyev, Dets, Rud, Vinokour and Zagladko submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Afanasyev, Dets, Rud, Vinokour and Zagladko, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Afanasyev, Dets, Rud, Vinokour, Zagladko, Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Amega enterprise through the filing of this Complaint.

445.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Afanasyev, Dets, Rud, Vinokour and Zagladko, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

446.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

447.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

448.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate

Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Company and Allstate New Jersey Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $344,000.00, the exact amount to be determined at trial.

449.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Afanasyev, Dets, Rud, Vinokour, Zagladko, Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FOURTEENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS AMEGA, INC., ALEKSANDR AFANASYEV, VADYM DETS, BELA RUD, VADIM VINOKOUR AND DENIS ZAGLADKO

### (Common Law Fraud)

450.    The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

451.    Defendants Afanasyev, Dets, Rud, Vinokour, Zagladko and Amega made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Company and Allstate New Jersey Insurance Company for payment.

452.    On information and belief, each and every bill and supporting documentation submitted by Defendants Afanasyev, Dets, Rud, Vinokour, Zagladko and Amega to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only

146

were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

453. On information and belief, Defendants Afanasyev, Dets, Rud, Vinokour, Zagladko and Amega intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Amega was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent

protocol whereby Defendants Afanasyev, Dets, Rud, Vinokour and Zagladko, through Amega, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Afanasyev, Dets, Rud, Vinokour and Zagladko, through Amega, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

454. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Amega's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

455. Defendants Afanasyev, Dets, Rud, Vinokour, Zagladko and Amega knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

456. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Afanasyev, Dets, Rud, Vinokour, Zagladko and Amega's acts of fraud and deception.

457. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Amega's claims for No-fault insurance benefits submitted in connection therewith.

458. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Afanasyev, Dets, Rud, Vinokour, Zagladko and Amega evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public

at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

459. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Company and Allstate New Jersey Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $344,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

### FIFTEENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS AMEGA, INC., ALEKSANDR AFANASYEV, VADYM DETS, BELA RUD, VADIM VINOKOUR AND DENIS ZAGLADKO

### (Unjust Enrichment)

460. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

461. By reason of their wrongdoing, Defendants Afanasyev, Dets, Rud, Vinokour, Zagladko and Amega have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Company and Allstate New Jersey Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

462. Plaintiffs are therefore entitled to restitution from Defendants Afanasyev, Dets, Rud, Vinokour, Zagladko and Amega in the amount by which they have been unjustly enriched.

463. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Company and Allstate New Jersey Insurance Company have sustained compensatory damages

and been injured in their business and property in an amount believed to be in excess of $344,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## SIXTEENTH CLAIM FOR RELIEF

## AGAINST IVY MED DISTRIBUTORS, INC., JOHN DOE 3, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

464. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

465. On information and belief, Defendants Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Company and Allstate New Jersey Insurance Company by Defendants Afanasyev, Dets, Rud, Vinokour, Zagladko and Amega.

466. On information and belief, the acts taken by Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Afanasyev, Dets, Rud, Vinokour, Zagladko and Amega purportedly provided to No-Fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Afanasyev, Dets, Rud, Vinokour, Zagladko and Amega could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendants Afanasyev,

150

Dets, Rud, Vinokour and Zagladko, through Amega, to Amega to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Amega; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Afanasyev, Dets, Rud, Vinokour and Zagladko, through Amega, and the No-fault Clinics.

467.    On information and belief, the conduct of Defendants Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Afanasyev, Dets, Rud, Vinokour and Zagladko, through Amega, to obtain fraudulently inflated payments from Plaintiffs, among others.

468.    On information and belief, Defendants Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

469.    On information and belief, the conduct of Defendants Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Company and Allstate New

Jersey Insurance Company to pay money based upon the fraudulent charges submitted through Amega in an amount to be determined at trial, but in no event less than $344,000.00.

470.   On information and belief, Defendants Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

471.   By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

### SEVENTEENTH CLAIM FOR RELIEF

### AGAINST ARTHUR LOJEWSKI, BENER WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

472.   The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

473.   At all times relevant herein, A Plus Medical Supplies was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

474.   From, in or about 2007 through the date of the filing of this Complaint, Defendants Lojewski, Bener Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the A Plus Medical Supplies enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and

152

included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

475.    At all relevant times mentioned herein, Defendant Lojewski, together with others unknown to Plaintiffs, exerted control over and directed the operations of the A Plus Medical Supplies enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

476.    On information and belief, Defendants Bener Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Bener Wholesale and one or more of the ABC Corporations furnished documents that Defendant Lojewski required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

477.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Yuzovitskiy, G. Groysman and one or more of the John Does 9 through 20, through Defendants Bener Wholesaler and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment

153

from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

478.    The racketeering acts set forth herein were carried out on a continued basis over a more than three-year period, were related and similar and were committed as part of Defendants Lojewski, Bener Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

479.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as A Plus Medical Supplies continues to pursue collection on the fraudulent billing to the present day.

480.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Lojewski, with the knowledge and intent of Defendants Bener Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the A Plus Medical Supplies enterprise based upon materially false and misleading information.

481.    Through the A Plus Medical Supplies enterprise, Defendant Lojewski submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Lojewski, as well as the payments that

154

Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Lojewski, Bener Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the A Plus Medical Supplies enterprise through the filing of this Complaint.

482.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Lojewski, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

483.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

484.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

485.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $38,000.00, the exact amount to be determined at trial.

486.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Lojewski, Bener Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## EIGHTEENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS A PLUS MEDICAL SUPPLIES CORP. AND ARTHUR LOJEWSKI

### (Common Law Fraud)

487. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

488. Defendants Lojewski and A Plus Medical Supplies made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company.

489. On information and belief, each and every bill and supporting documentation submitted by Defendants Lojewski and A Plus Medical Supplies to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

490. On information and belief, Defendants Lojewski and A Plus Medical Supplies intentionally, knowingly, fraudulently and with an intent to deceive submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

156

- False and misleading statements as to the amounts A Plus Medical Supplies was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Lojewski, through A Plus Medical Supplies, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Lojewski, through A Plus Medical Supplies, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

491. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant A Plus Medical Supplies' claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the

accompanying Compendium of Exhibits.

492.    Defendants Lojewski and A Plus Medical Supplies knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

493.    Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Lojewski and A Plus Medical Supplies' acts of fraud and deception.

494.    Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant A Plus Medical Supplies' claims for No-fault insurance benefits submitted in connection therewith.

495.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Lojewski and A Plus Medical Supplies evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

496.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $38,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## NINETEENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS A PLUS MEDICAL SUPPLIES CORP. AND ARTHUR LOJEWSKI

### (Unjust Enrichment)

497. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

498. By reason of their wrongdoing, Defendants Lojewski and A Plus Medical Supplies have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

499. Plaintiffs are therefore entitled to restitution from Defendants Lojewski and A Plus Medical Supplies in the amount by which they have been unjustly enriched.

500. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company. have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $38,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## TWENTIETH CLAIM FOR RELIEF

## AGAINST DEFENDANTS BENER WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

501.    The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

502.    On information and belief, Defendants Bener Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company by Defendants Lojewski and A Plus Medical Supplies.

503.    On information and belief, the acts taken by Defendants Bener Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Lojewski and A Plus Medical Supplies purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Lojewski and A Plus Medical Supplies could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Lojewski, through A Plus Medical Supplies, to A Plus Medical Supplies to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent

160

wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through A Plus Medical Supplies; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Lojewski, through A Plus Medical Supplies, and the No-fault Clinics.

504. On information and belief, the conduct of Defendants Bener Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendant Lojewski through A Plus Medical Supplies to obtain fraudulently inflated payments from Plaintiffs, among others.

505. On information and belief, Defendants Bener Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-Fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

506. On information and belief, the conduct of Defendants Bener Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company to pay money based upon the fraudulent charges submitted through Defendant A Plus Medical Supplies in an amount to be determined at trial, but

in no event less than $38,000.00.

507.     On information and belief, Defendants Bener Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

508.     By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## TWENTY-FIRST CLAIM FOR RELIEF

### AGAINST BETTY ANDRESOL, EDUARD BODRUNOV, DELAZOOM, INC., NEW STEP SERVICES, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 1, JOHN DOE 4, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

509.     The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

510.     At all times relevant herein, Avgur Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

511.     From, in or about 2009 through the date of the filing of this Complaint, Defendants Andresol, Bodrunov, Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Avgur Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the

Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

512.    At all relevant times mentioned herein, Defendants Andresol and Bodrunov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Avgur Supply enterprise and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

513.    On information and belief, Defendants Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Delazoom, New Step Services, and one or more of the ABC Corporations furnished documents that Defendants Andresol and Bodrunov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

514.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4 and one or more of the John Does 9 through 20, through Defendants Delazoom, New Step Services and one or more of the ABC Corporations, would be mailed to substantiate fraudulent

claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

515. The racketeering acts set forth herein were carried out on a continued basis over a more than two-year period, were related and similar and were committed as part of Defendants Andresol, Bodrunov, Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

516. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Avgur Supply continues to pursue collection on the fraudulent billing to the present day.

517. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Andresol and Bodrunov, with the knowledge and intent of Defendants Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Avgur Supply enterprise based upon materially false and misleading information.

518. Through the Avgur Supply enterprise, Defendants Andresol and Bodrunov submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Andresol and Bodrunov, as well as the

payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Andresol, Bodrunov, Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Avgur Supply enterprise through the filing of this Complaint.

519.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Andresol and Bodrunov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

520.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

521.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

522.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Allstate Property & Casualty Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $99,000.00, the exact amount to be determined at trial.

523.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Andresol, Bodrunov, Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the

costs of this lawsuit and reasonable attorneys' fees.

## TWENTY-SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANTS AVGUR SUPPLY, INC., BETTY ANDRESOL AND EDUARD BODRUNOV

### (Common Law Fraud)

524.     The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

525.     Defendants Andresol, Bodrunov and Avgur Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company for payment.

526.     On information and belief, each and every bill and supporting documentation submitted by Defendants Andresol, Bodrunov and Avgur Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

527.     On information and belief, Defendants Andresol, Bodrunov and Avgur Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

166

- False and misleading statements as to the amounts Avgur Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Andresol and Bodrunov, through Avgur Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Andresol and Bodrunov, through Avgur Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

528.    The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Avgur Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying

Compendium of Exhibits.

529.  Defendants Andresol, Bodrunov and Avgur Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

530.  Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Andresol, Bodrunov and Avgur Supply's acts of fraud and deception.

531.  Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Avgur Supply's claims for No-fault insurance benefits submitted in connection therewith.

532.  Furthermore, the far reaching pattern of fraudulent conduct by Defendants Andresol, Bodrunov and Avgur Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

533.  By reason of the foregoing, Plaintiffs Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $99,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**TWENTY-THIRD CLAIM FOR RELIEF**

**AGAINST DEFENDANTS AVGUR SUPPLY, INC., BETTY ANDRESOL AND EDUARD BODRUNOV**

**(Unjust Enrichment)**

534.  The allegations of paragraphs 1 through 323 are hereby repeated and realleged as

though fully set forth herein.

535. By reason of their wrongdoing, Defendants Andresol, Bodrunov and Avgur Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

536. Plaintiffs are therefore entitled to restitution from Defendants Andresol, Bodrunov and Avgur Supply in the amount by which they have been unjustly enriched.

537. By reason of the foregoing, Plaintiffs Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $99,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## TWENTY-FOURTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS DELAZOOM, INC., NEW STEP SERVICES, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 1, JOHN DOE 4, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

538. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

539. On information and belief, Defendants Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Property & Casualty Insurance Company,

169

Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company by Defendants Andresol, Bodrunov and Avgur Supply.

540.     On information and belief, the acts taken by Defendants Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Andresol, Bodrunov and Avgur Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Andresol, Bodrunov and Avgur Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendants Andresol and Bodrunov, through Avgur Supply, to Avgur Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Avgur Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Andresol and Bodrunov, through Avgur Supply, and the No-fault Clinics.

541.     On information and belief, the conduct of Defendants Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity

for Defendants Andresol and Bodrunov through Avgur Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

542. On information and belief, Defendants Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

543. On information and belief, the conduct of Defendants Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Avgur Supply in an amount to be determined at trial, but in no event less than $99,000.00.

544. On information and belief, Defendants Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

545. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## TWENTY-FIFTH CLAIM FOR RELIEF

## AGAINST MAKSYM KLOSOVSKIY, ARTEM YURYEV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

546.    The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

547.    At all times relevant herein, Bath Ortho Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

548.    From, in or about 2008 through the date of the filing of this Complaint, Defendants Klosovskiy, Yuryev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Bath Ortho Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

549.    At all relevant times mentioned herein, Defendants Klosovskiy and Yuryev, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Bath Ortho Supply enterprise and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate New Jersey Insurance

172

Company that were based, in part, on the utilization of fraudulent wholesale invoices.

550. On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendants Klosovskiy and Yuryev required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

551. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 9 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

552. The racketeering acts set forth herein were carried out on a continued basis over a more than two-year period, were related and similar and were committed as part of Defendants Klosovskiy, Yuryev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

553. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Bath Ortho Supply continues to pursue collection on the fraudulent billing to the present day.

554. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Klosovskiy and Yuryev, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Bath Ortho Supply enterprise based upon materially false and misleading information.

555. Through the Bath Ortho Supply enterprise, Defendants Klosovskiy and Yuryev submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Klosovskiy and Yuryev, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Klosovskiy, Yuryev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Bath Ortho Supply enterprise through the filing of this Complaint.

556. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Klosovskiy and Yuryev, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

557. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

558. Each submission of a fraudulent claim constitutes a pattern of racketeering

activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

559. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate New Jersey Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $197,000.00, the exact amount to be determined at trial.

560. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Klosovskiy, Yuryev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**TWENTY-SIXTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS BATH ORTHO SUPPLY, INC., MAKSYM KLOSOVSKIY AND ARTEM YURYEV**

**(Common Law Fraud)**

561. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

562. Defendants Klosovskiy, Yuryev and Bath Ortho Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate New Jersey Insurance Company for payment.

563. On information and belief, each and every bill and supporting documentation submitted by Defendants Klosovskiy, Yuryev and Bath Ortho Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they

purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

564. On information and belief, Defendants Klosovskiy, Yuryev and Bath Ortho Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Bath Ortho Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices,

concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Klosovskiy and Yuryev, through Bath Ortho Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Klosovskiy and Yuryev, through Bath Ortho Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

565.    The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Bath Ortho Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

566.    Defendants Klosovskiy, Yuryev and Bath Ortho Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

567.    Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Klosovskiy, Yuryev and Bath Ortho Supply's acts of fraud and deception.

568.    Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Bath Ortho Supply's claims for No-fault insurance benefits submitted in connection therewith.

569.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Klosovskiy, Yuryev and Bath Ortho Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large,

thus entitling Plaintiffs to recovery of exemplary and punitive damages.

570.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate New Jersey Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $197,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## TWENTY-SEVENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS BATH ORTHO SUPPLY, INC., MAKSYM KLOSOVSKIY AND ARTEM YURYEV

### (Unjust Enrichment)

571.    The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

572.    By reason of their wrongdoing, Defendants Klosovskiy, Yuryev and Bath Ortho Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate New Jersey Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

573.    Plaintiffs are therefore entitled to restitution from Defendants Klosovskiy, Yuryev and Bath Ortho Supply in the amount by which they have been unjustly enriched.

574.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate New Jersey Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $197,000.00, the exact amount to be

determined at trial, plus interest, costs and other relief the Court deems just.

## TWENTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

575. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

576. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate New Jersey Insurance Company by Defendants Yuryev, Klosovskiy and Bath Ortho Supply.

577. On information and belief, the acts taken by one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Klosovskiy, Yuryev and Bath Ortho Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Klosovskiy, Yuryev and Bath Ortho Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendants Klosovskiy and Yuryev, through Bath Ortho Supply, to Bath Ortho Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs

179

and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Bath Ortho Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Klosovskiy and Yuryev, through Bath Ortho Supply, and the No-fault Clinics.

578.    On information and belief, the conduct of Defendants one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Klosovskiy and Yuryev, through Bath Ortho Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

579.    On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

580.    On information and belief, the conduct of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate New Jersey Insurance Company to pay money based upon the fraudulent charges submitted through Bath Ortho Supply in an amount to be determined at trial, but in no event less than $197,000.00.

581.    On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20's extensive fraudulent

conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

582. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## TWENTY-NINTH CLAIM FOR RELIEF

### AGAINST ALEX PIVENSHTEYN, EXCELL PLUS, INC., MDDS WHOLESALE, INC., JOHN DOE 2, VADIM YUZOVITSKIY, GRIGORY GROYSMAN, LIOUDMILA LITVINOVA, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

583. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

584. At all times relevant herein, D&R Medical Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

585. From, in or about 2007 through the date of the filing of this Complaint, Defendants PIVENSHTEYN, Excell Plus, MDDS Wholesale, John Doe 2, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the D&R Medical Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

586. At all relevant times mentioned herein, Defendant PIVENSHTEYN, together with

others unknown to Plaintiffs, exerted control over and directed the operations of the D&R Medical Supply enterprise and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

587. On information and belief, Defendants Excell Plus, MDDS Wholesale, John Doe 2, Yuzovitskiy, G. Groysman, Litvinova, and one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Excell Plus, MDDS Wholesale and one or more of the ABC Corporations furnished documents that Defendant PIVENSHTEYN required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

588. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Yuzovitskiy, G. Groysman, Litvinova, John Doe 2 and one or more of the John Does 9 through 20, through Defendants Excell Plus, MDDS Wholesale and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

589. The racketeering acts set forth herein were carried out on a continued basis over a

more than four-year period, were related and similar and were committed as part of Defendants PIVENSHTEYN, Excell Plus, MDDS Wholesale, John Doe 2, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

590.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as D&R Medical Supply continues to pursue collection on the fraudulent billing to the present day.

591.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant PIVENSHTEYN, with the knowledge and intent of Defendants Excell Plus, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, John Doe 2, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the D&R Medical Supply enterprise based upon materially false and misleading information.

592.    Through the D&R Medical Supply enterprise, Defendant PIVENSHTEYN submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant PIVENSHTEYN, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants PIVENSHTEYN, Excell Plus, MDDS Wholesale, John Doe 2, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC

Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the D&R Medical Supply enterprise through the filing of this Complaint.

593.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant PIVENSHTEYN, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

594.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

595.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

596.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $119,000.00, the exact amount to be determined at trial.

597.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants PIVENSHTEYN, Excell Plus, MDDS Wholesale, John Doe 2, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## THIRTIETH CLAIM FOR RELIEF

## AGAINST DEFENDANTS D&R MEDICAL SUPPLY, INC. AND ALEX PIVENSHTEYN

### (Common Law Fraud)

598. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

599. Defendants PIVENSHTEYN and D&R Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property and Casualty Insurance Company for payment.

600. On information and belief, each and every bill and supporting documentation submitted by Defendants PIVENSHTEYN and D&R Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

601. On information and belief, Defendants PIVENSHTEYN and D&R Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;
- False and misleading statements as to the amounts D&R Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants PIVENSHTEYN, through D&R Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant PIVENSHTEYN, through D&R Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

602. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant D&R Medical Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

603. Defendants PIVENSHTEYN and D&R Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

604. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants PIVENSHTEYN and D&R Medical Supply's acts of fraud and deception.

605. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant D&R Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

606. Furthermore, the far reaching pattern of fraudulent conduct by Defendants PIVENSHTEYN and D&R Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

607. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $119,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**THIRTY-FIRST CLAIM FOR RELIEF**

**AGAINST DEFENDANTS D&R MEDICAL SUPPLY, INC. AND ALEX PIVENSHTEYN**

**(Unjust Enrichment)**

608. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as

though fully set forth herein.

609. By reason of their wrongdoing, Defendants PIVENSHTEYN and D&R Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property and Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

610. Plaintiffs are therefore entitled to restitution from Defendants PIVENSHTEYN and D&R Medical Supply in the amount by which they have been unjustly enriched.

611. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property and Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $119,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## THIRTY-SECOND CLAIM FOR RELIEF

### AGAINST DEFENDANTS EXCELL PLUS, INC., MDDS WHOLESALE, INC. JOHN DOE 2, VADIM YUZOVITSKIY, GRIGORY GROYSMAN, LIOUDMILA LITVINOVA, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

612. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

613. On information and belief, Defendants Excell Plus, MDDS Wholesale, John Doe 2, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property and Casualty Insurance Company by Defendants PIVENSHTEYN and D&R Medical Supply.

614. On information and belief, the acts taken Defendants Excell Plus, MDDS Wholesale, John Doe 2, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants PIVENSHTEYN and D&R Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants PIVENSHTEYN and D&R Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant PIVENSHTEYN, through D&R Medical Supply, to D&R Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through D&R Medical Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant PIVENSHTEYN, through D&R Medical Supply, and the No-fault Clinics.

615. On information and belief, the conduct of Defendants Excell Plus, MDDS Wholesale, John Doe 2, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the

fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendant PIVENSHTEYN through D&R Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

616. On information and belief, Defendants Excell Plus, MDDS Wholesale, John Doe 2, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

617. On information and belief, the conduct of Defendants Excell Plus, MDDS Wholesale, John Doe 2, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property and Casualty Insurance Company to pay money based upon the fraudulent charges submitted through D&R Medical Supply in an amount to be determined at trial, but in no event less than $119,000.00.

618. On information and belief, Defendants Excell Plus, MDDS Wholesale, John Doe 2, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

619. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive

damages, plus interest, costs and other relief the Court deems just.

## THIRTY-THIRD CLAIM FOR RELIEF

## AGAINST EDUARD BODRUNOV, DARIYA BYSTRA, DELAZOOM, INC., NEW STEP SERVICES, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 1, JOHN DOE 4, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

620.    The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

621.    At all times relevant herein, DB Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

622.    From, in or about 2009 through the date of the filing of this Complaint, Defendants Bodrunov, Bystra, Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the DB Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

623.    At all relevant times mentioned herein, Defendants Bystra and Bodrunov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the DB Supply enterprise and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and

supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

624. On information and belief, Defendants Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Delazoom, New Step Services and one or more of the ABC Corporations furnished documents that Defendants Bodrunov and Bystra required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

625. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4 and one or more of the John Does 9 through 20, through Defendants Delazoom, New Step Services and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

626. The racketeering acts set forth herein were carried out on a continued basis over more than a yearlong period, were related and similar and were committed as part of Defendants Bodrunov, Bystra, Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9

192

through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

627. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as DB Supply continues to pursue collection on the fraudulent billing to the present day.

628. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Bodrunov and Bystra, with the knowledge and intent of Defendants Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the DB Supply enterprise based upon materially false and misleading information.

629. Through the DB Supply enterprise, Defendants Bystra and Bodrunov submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Bodrunov and Bystra, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Bodrunov, Bystra, Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the DB Supply enterprise through the filing of this Complaint.

630. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Bodrunov and Bystra, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

631. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

632. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

633. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $64,000.00, the exact amount to be determined at trial.

634. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Bodrunov, Bystra, Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**THIRTY-FOURTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS DB SUPPLY, INC., EDUARD BODRUNOV AND DARIYA BYSTRA**

**(Common Law Fraud)**

635. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as

though fully set forth herein.

636. Defendants Bodrunov, Bystra and DB Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company for payment.

637. On information and belief, each and every bill and supporting documentation submitted by Defendants Bodrunov, Bystra and DB Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

638. On information and belief, Defendants Bodrunov, Bystra and DB Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts DB Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the

actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Bodrunov and Bystra, through DB Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Bystra and Bodrunov, through DB Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

639. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant DB Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

640. Defendants Bodrunov, Bystra and DB Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

641. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material

misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Bystra, Bodrunov and DB Supply's acts of fraud and deception.

642. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant DB Supply's claims for No-fault insurance benefits submitted in connection therewith.

643. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Bodrunov, Bystra and DB Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

644. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $64,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## THIRTY-FIFTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS DB SUPPLY, INC. AND DARIYA BYSTRA AND EDUARD BODRUNOV

### (Unjust Enrichment)

645. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

646. By reason of their wrongdoing, Defendants Bodrunov, Bystra and DB Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty

Insurance Company and Allstate Property & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

647. Plaintiffs are therefore entitled to restitution from Defendants Bodrunov, Bystra and DB Supply in the amount by which they have been unjustly enriched.

648. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $64,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## THIRTY-SIXTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS DELAZOOM, INC., NEW STEP SERVICES, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 1, JOHN DOE 4, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

649. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

650. On information and belief, Defendants Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company by Defendants Bystra, Bodrunov and DB Supply.

651. On information and belief, the acts taken by Defendants Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC

Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Bystra, Bodrunov and DB Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Bodrunov, Bystra and DB Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendants Bodrunov and Bystra, through DB Supply, to DB Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through DB Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Bodrunov and Bystra, through DB Supply, and the No-fault Clinics.

652. On information and belief, the conduct of Defendants Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Bodrunov and Bystra through DB Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

653. On information and belief, Defendants Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1

through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

654. On information and belief, the conduct of Defendants Delazoom, New Step Services, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company to pay money based upon the fraudulent charges submitted through DB Supply in an amount to be determined at trial, but in no event less than $64,000.00.

655. On information and belief, Defendants Delazoom, New Step Services, John Doe 1, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

656. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## THIRTY-SEVENTH CLAIM FOR RELIEF

### AGAINST MARIYA GOMELSKAYA, IGOR SHTURMAN, DEVONIAN, INC., FRAZIER TRADING COMPANY, INC., IVY MED DISTRIBUTORS, INC., MAJOR MARKET MERCHANDISE, INC., MICHAEL ZAVRAZHIN, VLADISLAV AGUVAYEV, JOHN DOE 3, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

657. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as

though fully set forth herein.

**THE RICO ENTERPRISE**

658. At all times relevant herein, Dorsi Medical Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

659. From, in or about 2008 through the date of the filing of this Complaint, Defendants Gomelskaya, Shturman, Devonian, Frazier Trading Company, Ivy Med Distributors, Major Market Merchandise, Zavrazhin, Aguvayev, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Dorsi Medical Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

660. At all relevant times mentioned herein, Defendants Gomelskaya and Shturman, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Dorsi Medical Supply enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

661. On information and belief, Defendants Devonian, Frazier Trading Company, Ivy Med Distributors, Major Market Merchandise, Zavrazhin, Aguvayev, John Doe 3, one or more of

201

the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Devonian, Frazier Trading Company, Ivy Med Distributors, Major Market Merchandise and one or more of the ABC Corporations 1 through 20 furnished documents that Defendants Gomelskaya and Shturman required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

662. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Zavrazhin, Aguvayev, John Doe 3 and one or more of the John Does 9 through 20, through Defendants Devonian, Frazier Trading Company, Ivy Med Distributors, Major Market Merchandise and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

663. The racketeering acts set forth herein were carried out on a continued basis over a more than three-year period, were related and similar and were committed as part of Defendants Gomelskaya, Shturman, Devonian, Frazier Trading Company, Ivy Med Distributors, Major Market Merchandise, Zavrazhin, Aguvayev, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

664. On information and belief, this pattern of racketeering activity poses a specific

202

threat of repetition extending indefinitely into the future, inasmuch as Dorsi Medical Supply continues to pursue collection on the fraudulent billing to the present day.

665.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Gomelskaya and Shturman, with the knowledge and intent of Defendants Devonian, Frazier Trading Company, Ivy Med Distributors, Major Market Merchandise, Zavrazhin, Aguvayev, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Dorsi Medical Supply enterprise based upon materially false and misleading information.

666.    Through the Dorsi Medical Supply enterprise, Defendants Gomelskaya and Shturman submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and supporting documents that were sent by Defendants Gomelskaya and Shturman, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.  By virtue of those activities, Defendants Gomelskaya, Shturman, Devonian, Frazier Trading Company, Ivy Med Distributors, Major Market Merchandise, Zavrazhin, Aguvayev, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Dorsi Medical Supply enterprise through the filing of this Complaint.

667.    A representative sample of predicate acts is set forth in the accompanying

Appendix, which identifies the nature and date of mailings that were made by Defendants Gomelskaya and Shturman, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

668.     Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

669.     Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

670.     By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $562,000.00, the exact amount to be determined at trial.

671.     Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Gomelskaya, Shturman, Devonian, Frazier Trading Company, Ivy Med Distributors, Major Market Merchandise, Zavrazhin, Aguvayev, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**THIRTY-EIGHTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS DORSI MEDICAL SUPPLY, INC., MARIYA GOMELSKAYA AND IGOR SHTURMAN**

**(Common Law Fraud)**

672.     The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

673. Defendants Gomelskaya, Shturman and Dorsi Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, Allstate New Jersey Insurance Company, Northbrook Indemnity Company and Allstate Property & Casualty Insurance Company for payment.

674. On information and belief, each and every bill and supporting documentation submitted by Defendants Gomelskaya, Shturman and Dorsi Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

675. On information and belief, Defendants Gomelskaya, Shturman and Dorsi Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Dorsi Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the

actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Gomelskaya and Shturman, through Dorsi Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Gomelskaya and Shturman, through Dorsi Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

676. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Dorsi Medical Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

677. Defendants Gomelskaya, Shturman and Dorsi Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

678. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material

misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Gomelskaya, Shturman and Dorsi Medical Supply's acts of fraud and deception.

679.    Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Dorsi Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

680.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Gomelskaya, Shturman and Dorsi Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

681.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, Allstate New Jersey Insurance Company, Northbrook Indemnity Company and Allstate Property & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $562,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

THIRTY-NINTH CLAIM FOR RELIEF

AGAINST DEFENDANTS DORSI MEDICAL SUPPLY, INC., MARIYA GOMELSKAYA AND IGOR SHTURMAN

(Unjust Enrichment)

682.    The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

683.    By reason of their wrongdoing, Defendants Gomelskaya, Shturman and Dorsi Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company,

Allstate Fire & Casualty Insurance Company, Allstate New Jersey Insurance Company, Northbrook Indemnity Company and Allstate Property & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

684.    Plaintiffs are therefore entitled to restitution from Defendants Gomelskaya, Shturman and Dorsi Medical Supply in the amount by which they have been unjustly enriched.

685.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, Allstate New Jersey Insurance Company, Northbrook Indemnity Company and Allstate Property & Casualty Insurance Company  have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $562,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

### FORTIETH CLAIM FOR RELIEF

### AGAINST DEFENDANTS DEVONIAN, INC., FRAZIER TRADING COMPANY, INC., IVY MED DISTRIBUTORS, INC. MAJOR MARKET MERCHANDISE, INC., MICHAEL ZAVRAZHIN, VLADISLAV AGUVAYEV, JOHN DOE 3 ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

686.    The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

687.    On information and belief, Defendants Devonian, Frazier Trading Company, Ivy Med Distributors, Major Market Merchandise, Zavrazhin, Aguvayev, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, Allstate New Jersey

Insurance Company, Northbrook Indemnity Company and Allstate Property & Casualty Insurance Company by Defendants Gomelskaya, Shturman and Dorsi Medical Supply.

688. On information and belief, the acts taken by Defendants Devonian, Frazier Trading Company, Ivy Med Distributors, Major Market Merchandise, Zavrazhin, Aguvayev, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Gomelskaya, Shturman and Dorsi Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Gomelskaya, Shturman and Dorsi Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Gomelskaya and Shturman through Dorsi Medical Supply, to Dorsi Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Dorsi Medical Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Gomelskaya and Shturman, through Dorsi Medical Supply, and the No-fault Clinics.

689. On information and belief, the conduct of Defendants Devonian, Frazier Trading Company, Ivy Med Distributors, Major Market Merchandise, Zavrazhin, Aguvayev, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of

and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Gomelskaya and Shturman through Dorsi Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

690.    On information and belief, Defendants Devonian, Frazier Trading Company, Ivy Med Distributors, Major Market Merchandise, Zavrazhin, Aguvayev, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

691.    On information and belief, the conduct of Defendants Devonian, Frazier Trading Company, Ivy Med Distributors, Major Market Merchandise, Zavrazhin, Aguvayev, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, Allstate New Jersey Insurance Company, Northbrook Indemnity Company and Allstate Property & Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Dorsi Medical Supply in an amount to be determined at trial, but in no event less than $562,000.00.

692.    On information and belief, Defendants Devonian, Frazier Trading Company, Ivy Med Distributors, Major Market Merchandise, Zavrazhin, Aguvayev, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

693. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## FORTY-FIRST CLAIM FOR RELIEF

### AGAINST GRIGORY BRANFENBRENER, LYUBOV GROYSMAN, SOFIYA KUPERMAN, DELAZOOM, INC., NEW STEP SERVICES, INC., WEST COAST, INC., YURI YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 1, JOHN DOE 4, JOHN DOE 7, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

694. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

695. At all times relevant herein, EGA Group was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

696. From, in or about 2009 through the date of the filing of this Complaint, Defendants Branfenbrener, L. Groysman, Kuperman, Delazoom, New Step Services, West Coast, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the EGA Group enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

697. At all relevant times mentioned herein, Defendants Branfenbrener, L. Groysman and Kuperman, together with others unknown to Plaintiffs, exerted control over and directed the

operations of the EGA Group enterprise and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

698.    On information and belief, Defendants Delazoom, West Coast, New Step Services, John Doe 1, John Doe 4, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Delazoom, New Step Services, West Coast and one or more of the ABC Corporations 1 through 20 furnished documents that Defendants Branfenbrener, L. Groysman and Kuperman required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

699.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants John Doe 1, John Doe 4, John Doe 7 and one or more of the John Does 9 through 20, through Defendants Delazoom, West Coast, New Step Services and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

700.    The racketeering acts set forth herein were carried out on a continued basis over a

212

more than two-year period, were related and similar and were committed as part of Defendants Branfenbrener, L. Groysman, Kuperman, Delazoom, New Step Services, West Coast, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

701.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as EGA Group continues to pursue collection on the fraudulent billing to the present day.

702.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Branfenbrener, L. Groysman, Kuperman, Delazoom, New Step Services, West Coast, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the EGA Group enterprise based upon materially false and misleading information.

703.    Through the EGA Group enterprise, Defendants Branfenbrener, L. Groysman and Kuperman submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Branfenbrener, L. Groysman and Kuperman, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants

Branfenbrener, L. Groysman, Kuperman, Delazoom, New Step Services, West Coast, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the EGA Group enterprise through the filing of this Complaint.

704. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Branfenbrener, L. Groysman and Kuperman, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

705. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

706. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

707. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $101,000.00, the exact amount to be determined at trial.

708. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Branfenbrener, L. Groysman, Kuperman, Delazoom, New Step Services, West Coast, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally,

three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FORTY-SECOND CLAIM FOR RELIEF

### AGAINST DEFENDANTS EGA GROUP, INC., GRIGORY BRANFENBRENER, LYUBOV GROYSMAN AND SOFIYA KUPERMAN

#### (Common Law Fraud)

709.    The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

710.    Defendants Branfenbrener, L. Groysman, Kuperman and EGA Group made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company for payment.

711.    On information and belief, each and every bill and supporting documentation submitted by Defendants Branfenbrener, L. Groysman, Kuperman and EGA Group to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

712.    On information and belief, Defendants Branfenbrener, L. Groysman, Kuperman and EGA Group intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of

the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts EGA Group was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Branfenbrener, Groysman and Kuperman, through EGA Group, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Branfenbrener, Groysman and Kuperman, through EGA Group, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

713. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant EGA Group's claims under the No-fault Law. Specific examples of the billing fraud

alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

714. Defendants Branfenbrener, L. Groysman, Kuperman and EGA Group knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

715. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Branfenbrener, L. Groysman, Kuperman and EGA Group's acts of fraud and deception.

716. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant EGA Group's claims for No-fault insurance benefits submitted in connection therewith.

717. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Branfenbrener, L. Groysman, Kuperman and EGA Group evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $101,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FORTY-THIRD CLAIM FOR RELIEF

## AGAINST DEFENDANTS EGA GROUP, INC., GRIGORY BRANFENBRENER, LYUBOV GROYSMAN AND SOFIYA KUPERMAN

### (Unjust Enrichment)

718.    The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

719.    By reason of their wrongdoing, Defendants Branfenbrener, L. Groysman, Kuperman and EGA Group have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

720.    Plaintiffs are therefore entitled to restitution from Defendants Branfenbrener, L. Groysman, Kuperman and EGA Group in the amount by which they have been unjustly enriched.

721.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $101,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FORTY-FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS DELAZOOM, INC., NEW STEP SERVICES, INC., WEST COAST, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 1, JOHN DOE 4, JOHN DOE 7, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

722. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

723. On information and belief, Defendants Delazoom, New Step Services, West Coast, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company by Defendants Kuperman, Branfenbrener, L. Groysman and EGA Group.

724. On information and belief, the acts taken by Defendants Delazoom, New Step Services, West Coast, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Branfenbrener, L. Groysman, Kuperman and EGA Group purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Branfenbrener, L. Groysman, Kuperman and EGA Group could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Branfenbrener,

L. Groysman and Kuperman, through EGA Group, to EGA Group to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through EGA Group; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Branfenbrener, L. Groysman and Kuperman, through EGA Group, and the No-fault Clinics.

725.    On information and belief, the conduct of Defendants Delazoom, New Step Services, West Coast, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Branfenbrener, L. Groysman and Kuperman through EGA Group to obtain fraudulently inflated payments from Plaintiffs, among others.

726.    On information and belief, Defendants Delazoom, New Step Services, West Coast, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

727.    On information and belief, the conduct of Defendants Delazoom, New Step Services, West Coast, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20

caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company to pay money based upon the fraudulent charges submitted through EGA Group in an amount to be determined at trial, but in no event less than $101,000.00.

728. On information and belief, Defendants Delazoom, New Step Services, West Coast, Yuzovitskiy, G. Groysman, John Doe 1, John Doe 4, John Doe 7, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

729. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## FORTY-FIFTH CLAIM FOR RELIEF

## AGAINST VLADAMIR KHMELNITSKI, OKSANA KOVALENKO, VIKTOR SEMERIK, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

730. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

731. At all times relevant herein, Enko Enterprises Int'l was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

732. From at least 2006 through the date of the filing of this Complaint, Khmelnitski, Kovalenko, Semerik, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Enko

Enterprises Int'l enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

733. At all relevant times mentioned herein, Defendants Khmelnitski, Kovalenko and Semerik, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Enko Enterprises Int'l enterprise and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

734. On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendants Khmelnitski, Kovalenko and Semerik required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

735. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 9 through 20, through one

222

or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

736.    The racketeering acts set forth herein were carried out on a continued basis over a more than five-year period, were related and similar and were committed as part of Defendants Khmelnitski, Kovalenko, Semerik, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

737.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Enko Enterprises Int'l continues to pursue collection on the fraudulent billing to the present day.

738.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Khmelnitski, Kovalenko and Semerik, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Enko Enterprises Int'l enterprise based upon materially false and misleading information.

739.    Through the Enko Enterprises Int'l enterprise, Defendants Khmelnitski, Kovalenko and Semerik submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Khmelnitski, Kovalenko and Semerik as well as the payments that Plaintiffs made in response to

those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Khmelnitski, Kovalenko, Semerik, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from at least 2006 through the filing of this Complaint.

740. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Khmelnitski, Kovalenko and Semerik, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

741. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

742. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

743. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $141,000.00, the exact amount to be determined at trial.

744. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Khmelnitski, Kovalenko, Semerik, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FORTY-SIXTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ENKO ENTERPRISES INT'L INC., VLADAMIR KHMELNITSKI, OKSANA KOVALENKO AND VIKTOR SEMERIK

### (Common Law Fraud)

745. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

746. Defendants Khmelnitski, Kovalenko, Semerik and Enko Enterprises Int'l made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate New Jersey Insurance Company for payment.

747. On information and belief, each and every bill and supporting documentation submitted by Defendants Khmelnitski, Kovalenko, Semerik and Enko Enterprises Int'l to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

748. On information and belief, Defendants Khmelnitski, Kovalenko, Semerik and Enko Enterprises Int'l intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false misrepresentations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;
- False and misleading statements as to the amounts Enko Enterprises Int'l was entitled to be reimbursed under the No-fault Law;

225

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Khmelnitski, Kovalenko and Semerik, through Enko Enterprises Int'l, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Khmelnitski, Kovalenko and Semerik, through Enko Enterprises Int'l, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

749. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Enko Enterprises Int'l's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

750. Defendants Khmelnitski, Kovalenko, Semerik and Enko Enterprises Int'l knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

751. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material

226

misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Khmelnitski, Kovalenko, Semerik and Enko Enterprises Int'l's acts of fraud and deception.

752.    Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Enko Enterprises Int'l's claims for No-fault insurance benefits submitted in connection therewith.

753.    Furthermore, the far reaching pattern of fraudulent conduct by Defendants Khmelnitski, Kovalenko, Semerik and Enko Enterprises Int'l evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

754.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate New Jersey Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $141,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FORTY-SEVENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS ENKO ENTERPRISES INT'L INC., VLADAMIR KHMELNITSKI, OKSANA KOVALENKO AND VIKTOR SEMERIK

### (Unjust Enrichment)

755.    The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

756.    By reason of their wrongdoing, Defendants Khmelnitski, Kovalenko, Semerik and Enko Enterprises Int'l have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company,

Allstate Property & Casualty Insurance Company and Allstate New Jersey Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

757. Plaintiffs are therefore entitled to restitution from Defendants Khmelnitski, Kovalenko, Semerik and Enko Enterprises Int'l in the amount by which they have been unjustly enriched.

758. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate New Jersey Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $141,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## FORTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

759. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

760. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate New Jersey Insurance Company by Defendants Khmelnitski, Kovalenko, Semerik and Enko Enterprises Int'l.

761. On information and belief, the acts taken by Defendants one or more of the ABC

Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Khmelnitski, Kovalenko, Semerik and Enko Enterprises Int'l purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Kovalenko, Khmelnitski, Semerik and Enko Enterprises Int'l could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Khmelnitski, Kovalenko and Semerik, through Enko Enterprises Int'l, to Enko Enterprises Int'l to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Enko Enterprises Int'l; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Khmelnitski, Kovalenko and Semerik, through Enko Enterprises Int'l, and the No-fault Clinics.

762. On information and belief, the conduct of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Khmelnitski, Kovalenko and Semerik through Enko Enterprises Int'l to obtain fraudulently inflated payments from Plaintiffs, among others.

763. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 aided and abetted the

fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

764. On information and belief, the conduct of Defendants one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate New Jersey Insurance Company to pay money based upon the fraudulent charges submitted through Enko Enterprises Int'l in an amount to be determined at trial, but in no event less than $141,000.00.

765. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

766. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## FORTY-NINTH CLAIM FOR RELIEF

### AGAINST GENNADIY BRONSHTEYN, MAKSYM FEDOTOV, ARKADI SHAPIRO, BENER WHOLESALE, INC., CHESTERON, INC., IVY MED DISTRIBUTORS, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 3, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

#### (RICO, pursuant to 18 U.S.C § 1962(c))

767. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

768. At all times relevant herein, Fema Medical Supply was an "enterprise" that

engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

769.    From, in or about 2009 through the date of the filing of this Complaint, Defendants Bronshteyn, Fedotov, Shapiro, Bener Wholesale, Chesteron, Ivy Med Distributors, Yuzovitskiy, G. Groysman, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Fema Medical Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.   Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

770.    At all relevant times mentioned herein, Defendants Bronshteyn, Fedotov and Shapiro, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Fema Medical Supply enterprise and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property and Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

771.    On information and belief, Defendants Bener Wholesale, Chesteron, Ivy Med Distributors, Yuzovitskiy, G. Groysman, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact

provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Bener Wholesale, Chesteron, Ivy Med Distributors, and one or more of the ABC Corporations furnished documents that Defendants Bronshteyn, Fedotov and Shapiro required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

772. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Yuzovitskiy, G. Groysman, John Doe 3 and one or more of the John Does 9 through 20, through Defendants Bener Wholesale, Chesteron, Ivy Med Distributors and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

773. The racketeering acts set forth herein were carried out on a continued basis over a more than two-year period, were related and similar and were committed as part of Defendants Bronshteyn, Fedotov, Shapiro, Bener Wholesale, Chesteron, Ivy Med Distributors, Yuzovitskiy, G. Groysman, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

774. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Fema Medical Supply continues to pursue collection on the fraudulent billing to the present day.

775. As a part of the pattern of racketeering activity and for the purpose of executing

the scheme and artifice to defraud as described above, Defendants Fedotov, Shapiro and Bronshteyn, with the knowledge and intent of Defendants Bener Wholesale, Chesteron, Ivy Med Distributors, Yuzovitskiy, G. Groysman, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Fema Medical Supply enterprise based upon materially false and misleading information.

776. Through the Fema Medical Supply enterprise, Defendants Bronshteyn, Fedotov and Shapiro submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Bronshteyn, Fedotov and Shapiro, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Bronshteyn, Fedotov, Shapiro, Bener Wholesale, Chesteron, Ivy Med Distributors, Yuzovitskiy, G. Groysman, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Fema Medical Supply enterprise through the filing of this Complaint.

777. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Bronshteyn, Fedotov and Shapiro, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

778. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. §

233

1961(1)(B).

779.  Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

780.  By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property and Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $645,000.00, the exact amount to be determined at trial.

781.  Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Bronshteyn, Fedotov, Shapiro, Bener Wholesale, Chesteron, Ivy Med Distributors, Yuzovitskiy, G. Groysman, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### FIFTIETH CLAIM FOR RELIEF

### AGAINST DEFENDANTS FEMA MEDICAL SUPPLY, INC., GENNADIY BRONSHTEYN, MAKSYM FEDOTOV AND ARKADI SHAPIRO

### (Common Law Fraud)

782.  The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

783.  Defendants Bronshteyn, Fedotov, Shapiro and Fema Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Allstate New Jersey

Insurance Company and Northbrook Indemnity Company for payment.

784.     On information and belief, each and every bill and supporting documentation submitted by Defendants Bronshteyn, Fedotov, Shapiro and Fema Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

785.     On information and belief, Defendants Bronshteyn, Fedotov, Shapiro and Fema Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Fema Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic

235

devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Fedotov, Shapiro and Bronshteyn, through Fema Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Bronshteyn, Fedotov and Shapiro, through Fema Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

786. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Fema Medical Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

787. Defendants Bronshteyn, Fedotov, Shapiro and Fema Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

788. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Bronshteyn, Fedotov, Shapiro and Fema Medical Supply's acts of fraud and deception.

789. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and

delivery receipts, they would not have paid Defendant Fema Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

790. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Bronshteyn, Fedotov, Shapiro and Fema Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

791. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Allstate New Jersey Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $645,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FIFTY-FIRST CLAIM FOR RELIEF

### AGAINST DEFENDANTS FEMA MEDICAL SUPPLY, INC., GENNADIY BRONSHTEYN, MAKSYM FEDOTOV AND ARKADI SHAPIRO (Unjust Enrichment)

792. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

793. By reason of their wrongdoing, Defendants Bronshteyn, Fedotov, Shapiro and Fema Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Allstate New Jersey Insurance Company and Northbrook Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be

237

permitted to keep.

794.    Plaintiffs are therefore entitled to restitution from Defendants Bronshteyn, Fedotov, Shapiro and Fema Medical Supply in the amount by which they have been unjustly enriched.

795.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Allstate New Jersey Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $645,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

**FIFTY-SECOND CLAIM FOR RELIEF**

**AGAINST DEFENDANTS BENER WHOLESALE, INC., CHESTERON, INC., IVY MED DISTRIBUTORS, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 3, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20**

**(Aiding and Abetting)**

796.    The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

797.    On information and belief, Defendants Bener Wholesale, Chesteron, Ivy Med Distributors, Yuzovitskiy, G. Groysman, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Allstate New Jersey Insurance Company and Northbrook Indemnity Company by Defendants Bronshteyn, Fedotov, Shapiro and Fema Medical Supply.

798. On information and belief, the acts taken by Defendants Bener Wholesale, Chesteron, Ivy Med Distributors, Yuzovitskiy, G. Groysman, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Bronshteyn, Fedotov, Shapiro and Fema Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Bronshteyn, Fedotov, Shapiro and Fema Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendants Bronshteyn, Fedotov and Shapiro, through Fema Medical Supply, to Fema Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Fema Medical Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Bronshteyn, Fedotov and Shapiro, through Fema Medical Supply, and the No-fault Clinics.

799. On information and belief, the conduct of Defendants Bener Wholesale, Chesteron, Ivy Med Distributors, Yuzovitskiy, G. Groysman, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity

for Defendants Bronshteyn, Fedotov and Shapiro through Fema Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

800. On information and belief, Defendants Bener Wholesale, Chesteron, Ivy Med Distributors, Yuzovitskiy, G. Groysman, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

801. On information and belief, the conduct of Defendants Bener Wholesale, Chesteron, Ivy Med Distributors, Yuzovitskiy, G. Groysman, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Allstate New Jersey Insurance Company and Northbrook Indemnity Company to pay money based upon the fraudulent charges submitted through Fema Medical Supply in an amount to be determined at trial, but in no event less than $645,000.00.

802. On information and belief, Defendants Bener Wholesale, Chesteron, Ivy Med Distributors, Yuzovitskiy, G. Groysman, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

803. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## FIFTY-THIRD CLAIM FOR RELIEF

## AGAINST NADIA LADANOVA, VLADIMIR YEPIFANOV, BENER WHOLESALE, INC., DEVONIAN, INC., MICHAEL ZAVRAZHIN, VADIM YUZOVITSKIY, GRIGORY GROYSMAN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

804. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

805. At all times relevant herein, Heal Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

806. From, in or about 2008 through the date of the filing of this Complaint, Defendants Ladanova, Yepifanov, Bener Wholesale, Devonian, Zavrazhin, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Heal Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

807. At all relevant times mentioned herein, Defendants Ladanova and Yepifanov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Heal Supply enterprise and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property & Casualty

241

Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

808.    On information and belief, Defendants Bener Wholesale, Devonian, Zavrazhin, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Bener Wholesale, Devonian, and one or more of the ABC Corporations furnished documents that Ladanova and Yepifanov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

809.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Zavrazhin, Yuzovitskiy, Groysman and one or more of the John Does 9 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

810.    The racketeering acts set forth herein were carried out on a continued basis over a more than three-year period, were related and similar and were committed as part of Defendants Ladanova, Yepifanov, Bener Wholesale, Devonian, Zavrazhin, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

811.    On information and belief, this pattern of racketeering activity poses a specific

threat of repetition extending indefinitely into the future, inasmuch as Heal Supply continues to pursue collection on the fraudulent billing to the present day.

812.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Ladanova and Yepifanov, with the knowledge and intent of Defendants Bener Wholesale, Devonian, Zavrazhin, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.    The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Heal Supply enterprise based upon materially false and misleading information.

813.    Through the Heal Supply enterprise, Defendants Ladanova and Yepifanov submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.    The bills and supporting documents that were sent by Defendants Ladanova and Yepifanov, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service.    By virtue of those activities, Defendants Ladanova, Yepifanov, Bener Wholesale, Devonian, Zavrazhin, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Heal Supply enterprise through the filing of this Complaint.

814.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Ladanova and Yepifanov, in furtherance of the scheme as well as the specific misrepresentations

identified for each of the mailings.

815.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

816.   Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

817.   By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $123,000.00, the exact amount to be determined at trial.

818.   Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Ladanova, Yepifanov, Bener Wholesale, Devonian, Zavrazhin, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### FIFTY-FOURTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS HEAL SUPPLY, INC., NADIA LADANOVA AND VLADIMIR YEPIFANOV

### (Common Law Fraud)

819.   The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

820.   Defendants Ladanova, Yepifanov and Heal Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty

244

Insurance Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company for payment.

821. On information and belief, each and every bill and supporting documentation submitted by Defendants Ladanova, Yepifanov and Heal Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

822. On information and belief, Defendants Ladanova, Yepifanov and Heal Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Heal Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Ladanova and Yepifanov, through Heal Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Ladanova and Yepifanov, through Heal Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

823.    The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Heal Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

824.    Defendants Ladanova, Yepifanov and Heal Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

825.    Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Ladanova, Yepifanov and Heal Supply's acts of fraud and deception.

826.    Had Plaintiffs known of the fraudulent content of the bills, prescriptions and

delivery receipts, they would not have paid Defendant Heal Supply's claims for No-fault insurance benefits submitted in connection therewith.

827. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Ladanova, Yepifanov and Heal Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

828. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $123,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FIFTY-FIFTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS HEAL SUPPLY, INC., NADIA LADANOVA AND VLADIMIR YEPIFANOV

### (Unjust Enrichment)

829. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

830. By reason of their wrongdoing, Defendants Ladanova, Yepifanov and Heal Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

831. Plaintiffs are therefore entitled to restitution from Defendants Ladanova, Yepifanov and Heal Supply in the amount by which they have been unjustly enriched.

832. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $123,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

**FIFTY-SIXTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS BENER WHOLESALE, INC., DEVONIAN, INC., MICHAEL ZAVRAZHIN, VADIM YUZOVITSKIY, GRIGORY GROYSMAN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20**

**(Aiding and Abetting)**

833. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

834. On information and belief, Defendants Bener Wholesale, Devonian, Zavrazhin, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company by Defendants Ladanova, Yepifanov and Heal Supply.

835. On information and belief, the acts taken by Defendants Bener Wholesale, Devonian, Zavrazhin, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent

scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Ladanova, Yepifanov and Heal Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Ladanova, Yepifanov and Heal Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendants Ladanova and Yepifanov, through Heal Supply, to Heal Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Heal Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Ladanova and Yepifanov, through Heal Supply, and the No-fault Clinics.

836.    On information and belief, the conduct of Defendants Bener Wholesale, Devonian, Zavrazhin, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Ladanova and Yepifanov through Heal Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

837.    On information and belief, Defendants Bener Wholesale, Devonian, Zavrazhin, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to

induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

838.    On information and belief, the conduct of Defendants Bener Wholesale, Devonian, Zavrazhin, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company to pay money based upon the fraudulent charges submitted through Heal Supply in an amount to be determined at trial, but in no event less than $123,000.00.

839.    On information and belief, Defendants Bener Wholesale, Devonian, Zavrazhin, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

840.    By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## FIFTY-SEVENTH CLAIM FOR RELIEF

### AGAINST MIKHAIL KAGAN, ILYA MUGERMAN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

841.    The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

842.    At all times relevant herein, Infinity Health Products was an "enterprise" that

engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

843. From at least 2006 through the date of the filing of this Complaint, Defendants Kagan, Mugerman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Infinity Health Products enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

844. At all relevant times mentioned herein, Defendants Kagan and Mugerman, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Infinity Health Products enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Fire & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

845. On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in

251

the Complaint. One or more of the ABC Corporations furnished documents that Defendants Kagan and Mugerman required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

846.    On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 9 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

847.    The racketeering acts set forth herein were carried out on a continued basis over a more than six-year period, were related and similar and were committed as part of Defendants Kagan, Mugerman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

848.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Infinity Health Products continues to pursue collection on the fraudulent billing to the present day.

849.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Kagan and Mugerman, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Infinity Health

252

Products enterprise based upon materially false and misleading information.

850. Through the Infinity Health Products enterprise, Defendants Kagan and Mugerman submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Kagan and Mugerman, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Kagan, Mugerman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from at least 2006 through the filing of this Complaint.

851. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Kagan and Mugerman, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

852. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

853. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

854. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Fire & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in

the aggregate amount presently in excess of $1,879,000.00, the exact amount to be determined at trial.

855.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Kagan, Mugerman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## FIFTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS INFINITY HEALTH PRODUCTS, LTD., MIKHAIL KAGAN AND ILYA MUGERMAN

### (Common Law Fraud)

856.    The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

857.    Defendants Kagan, Mugerman and Infinity Health Products made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Deerbrook Insurance Company for payment.

858.    On information and belief, each and every bill and supporting documentation submitted by Defendants Kagan, Mugerman and Infinity Health Products to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

859.    On information and belief, Kagan, Mugerman and Infinity Health Products

254

intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Infinity Health Products was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Kagan and Mugerman, through Infinity Health Products, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Kagan and Mugerman, through Infinity Health Products, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

860.    The foregoing was intended to deceive and mislead Plaintiffs into paying

Defendant Infinity Health Products' claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

861. Defendants Kagan, Mugerman and Infinity Health Products knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

862. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Kagan, Mugerman and Infinity Health Products' acts of fraud and deception.

863. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Infinity Health Products' claims for No-fault insurance benefits submitted in connection therewith.

864. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Kagan, Mugerman and Infinity Health Products evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

865. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Deerbrook Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $1,879,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## FIFTY-NINTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS INFINITY HEALTH PRODUCTS, LTD., MIKHAIL KAGAN AND ILYA MUGERMAN

### (Unjust Enrichment)

866.    The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

867.    By reason of their wrongdoing, Defendants Kagan, Mugerman and Infinity Health Products have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Deerbrook Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

868.    Plaintiffs are therefore entitled to restitution from Defendants Kagan, Mugerman and Infinity Health Products in the amount by which they have been unjustly enriched.

869.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Deerbrook Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $1,879,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## SIXTIETH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

870.    The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

871.    On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Deerbrook Insurance Company by Defendants Kagan, Mugerman and Infinity Health Products.

872.    On information and belief, the acts taken by one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Kagan, Mugerman and Infinity Health Products purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Kagan, Mugerman and Infinity Health Products could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendants Kagan and Mugerman through Infinity Health Products, to Infinity Health Products to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale

costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Infinity Health Products; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Kagan and Mugerman, through Infinity Health Products, and the No-fault Clinics.

873.    On information and belief, the conduct of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Kagan and Mugerman through Infinity Health Products to obtain fraudulently inflated payments from Plaintiffs, among others.

874.    On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

875.    On information and belief, the conduct of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Deerbrook Insurance Company to pay money based upon the fraudulent charges submitted through Infinity Health Products in an amount to be determined at trial, but in no event less than $1,879,000.00.

876.    On information and belief, one or more of the Defendant ABC Corporations 1

259

through 20 and one or more of the Defendant John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

877.    By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

**SIXTY-FIRST CLAIM FOR RELIEF**

**AGAINST GARY NABITOVSKY, EXCELL PLUS, INC., MDDS WHOLESALE, INC., RIVIERA WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMNAN, JOHN DOE 2, LIOUDMILA LITVINOVA, JOHN DOE 5, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20**

**(RICO, pursuant to 18 U.S.C § 1962(c))**

878.    The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

**THE RICO ENTERPRISE**

879.    At all times relevant herein, Jesa Medical Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

880.    From, in or about 2006 through the date of the filing of this Complaint, Defendants Nabitovsky, Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Jesa Medical Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference.    Defendants' conduct constitutes a

violation of 18 U.S.C. § 1962(c).

881. At all relevant times mentioned herein, Defendants Nabitovsky, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Jesa Medical Supply enterprise and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company were based, in part, on the utilization of fraudulent wholesale invoices.

882. On information and belief, Defendants Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants MDDS Wholesale, Riviera Wholesale, Excell Plus, and one or more of the ABC Corporations furnished documents that Defendant Nabitovsky required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

883. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5 and one or more of the John Does 9 through 20, through Defendants Excell Plus, MDDS Wholesale, Riviera Wholesale and one or more of the ABC Corporations,

would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

<h3 style="text-align:center"><u>The Pattern of Racketeering Activity</u><br>(Racketeering Acts)</h3>

884.    The racketeering acts set forth herein were carried out on a continued basis over a more than four-year period, were related and similar and were committed as part of Defendants Nabitovsky, Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

885.    On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Jesa Medical Supply continues to pursue collection on the fraudulent billing to the present day.

886.    As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Nabitovsky, with the knowledge and intent of Defendants Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Jesa Medical Supply enterprise based upon materially false and misleading information.

887.    Through the Jesa Medical Supply enterprise, Defendant Nabitovsky submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and

supporting documents that were sent by Defendants Nabitovsky, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Nabitovsky, Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Jesa Medical Supply enterprise through the filing of this Complaint.

888.    A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Nabitovsky, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

889.    Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

890.    Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

891.    By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $242,000.00, the exact amount to be determined at trial.

892.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Nabitovsky, Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John

Doe 2, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## SIXTY-SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANTS JESA MEDICAL SUPPLY, INC. AND GARY NABITOVSKY

### (Common Law Fraud)

893.    The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

894.    Defendants Nabitovsky and Jesa Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company for payment.

895.    On information and belief, each and every bill and supporting documentation submitted by Defendants Nabitovsky and Jesa Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

896.    On information and belief, Defendants Nabitovsky and Jesa Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations

264

and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Jesa Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Nabitovsky, through Jesa Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Nabitovsky, through Jesa Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

897. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Jesa Medical Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

898. Defendants Nabitovsky and Jesa Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

899. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Nabitovsky and Jesa Medical Supply's acts of fraud and deception.

900. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Jesa Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

901. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Nabitovsky and Jesa Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

902. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $242,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SIXTY-THIRD CLAIM FOR RELIEF

## AGAINST DEFENDANTS JESA MEDICAL SUPPLY, INC. AND GARY NABITOVSKY

### (Unjust Enrichment)

903.    The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

904.    By reason of their wrongdoing, Defendants Nabitovsky and Jesa Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

905.    Plaintiffs are therefore entitled to restitution from Defendants Nabitovsky and Jesa Medical Supply in the amount by which they have been unjustly enriched.

906.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $242,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## SIXTY-FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS EXCELL PLUS, INC., MDDS WHOLESALE, INC., RIVIERA WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 2, LIOUDMILA LITVINOVA, JOHN DOE 5, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

907.    The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

On information and belief, Defendants Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company by Defendants Nabitovsky and Jesa Medical Supply.

908.    On information and belief, the acts taken by Defendants Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Nabitovsky and Jesa Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Nabitovsky and Jesa Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Nabitovsky, through Jesa Medical Supply, to Jesa

Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Jesa Medical Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Nabitovsky, through Jesa Medical Supply, and the No-fault Clinics.

909. On information and belief, the conduct of Defendants Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendant Nabitovsky through Jesa Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

910. On information and belief, Defendants Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

911. On information and belief, the conduct of Defendants Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5,

one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company to pay money based upon the fraudulent charges submitted through Jesa Medical Supply in an amount to be determined at trial, but in no event less than $242,000.00.

912. On information and belief, Defendants Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

913. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

### SIXTY-FIFTH CLAIM FOR RELIEF

### AGAINST GRIGORY BRANFENBRENER, LYUBOV GROYSMAN, GALASA WHOLESALE, INC., ROPA, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 6, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

914. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

915. At all times relevant herein, Leica Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

916. From, in or about 2007 through the date of the filing of this Complaint,

Branfenbrener, L. Groysman, Galasa Wholesale, Ropa, Yuzovitskiy, G. Groysman, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Leica Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

917. At all relevant times mentioned herein, Defendants Branfenbrener and L. Groysman, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Leica Supply enterprise and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

918. On information and belief, Defendants Galasa Wholesale, Ropa, Yuzovitskiy, G. Groysman, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Galasa Wholesale, Ropa and one or more of the ABC Corporations furnished documents that Defendants Branfenbrener and L. Groysman required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device

claims, including fictitious wholesale invoices for medical supplies.

919. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Yuzovitskiy, G. Groysman, John Doe 6 and one or more of the John Does 9 through 20, through Defendants Galasa Wholesale, Ropa and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

920. The racketeering acts set forth herein were carried out on a continued basis over a more than three-year period, were related and similar and were committed as part of Defendants Branfenbrener, L. Groysman, Galasa Wholesale, Ropa, Yuzovitskiy, G. Groysman, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

921. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Leica Supply continues to pursue collection on the fraudulent billing to the present day.

922. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Branfenbrener and L. Groysman, with the knowledge and intent of Defendants Galasa Wholesale, Ropa, Yuzovitskiy, G. Groysman, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Leica Supply

enterprise based upon materially false and misleading information.

923. Through the Leica Supply enterprise, Defendants Branfenbrener and L. Groysman submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Branfenbrener and Groysman, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Branfenbrener, L. Groysman, Galasa Wholesale, Ropa, Yuzovitskiy, G. Groysman, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Leica Supply enterprise through the filing of this Complaint.

924. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Branfenbrener and L. Groysman, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

925. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

926. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

927. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently

in excess of $174,000.00, the exact amount to be determined at trial.

928.    Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Branfenbrener, L. Groysman, Galasa Wholesale, Ropa, Yuzovitskiy, G. Groysman, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### SIXTY-SIXTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS LEICA SUPPLY, INC., GRIGORY BRANFENBRENER AND LYUBOV GROYSMAN

### (Common Law Fraud)

929.    The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

930.    Defendants Branfenbrener, L. Groysman and Leica Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Northbrook Indemnity Company and Allstate Fire & Casualty Insurance Company for payment.

931.    On information and belief, each and every bill and supporting documentation submitted by Defendants Branfenbrener, L. Groysman and Leica Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

932.    On information and belief, Defendants Branfenbrener, L. Groysman and Leica

Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Leica Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Branfenbrener and Groysman, through Leica Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c)

DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Branfenbrener and Groysman, through Leica Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

933. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Leica Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

934. Defendants Branfenbrener, L. Groysman and Leica Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

935. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Branfenbrener, L. Groysman and Leica Supply's acts of fraud and deception.

936. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Leica Supply's claims for No-fault insurance benefits submitted in connection therewith.

937. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Branfenbrener, L. Groysman and Leica Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

938. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Northbrook Indemnity Company and Allstate Fire & Casualty Insurance Company have sustained compensatory

276

damages and been injured in their business and property in an amount believed to be in excess of $174,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SIXTY-SEVENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS LEICA SUPPLY, INC., GRIGORY BRANFENBRENER AND LYUBOV GROYSMAN

#### (Unjust Enrichment)

939.    The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

940.    By reason of their wrongdoing, Defendants Branfenbrener, L. Groysman and Leica Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Northbrook Indemnity Company and Allstate Fire & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

941.    Plaintiffs are therefore entitled to restitution from Defendants Branfenbrener, L. Groysman and Leica Supply in the amount by which they have been unjustly enriched.

942.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Northbrook Indemnity Company and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $174,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## SIXTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS GALASA WHOLESALE, INC., ROPA, INC., VADIM YUZOVITSKIY, GRIGORY GROISMAN, JOHN DOE 6, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

943.    The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

944.    On information and belief, Defendants Galasa Wholesale, Ropa, Yuzovitskiy, G. Groysman, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Northbrook Indemnity Company and Allstate Fire & Casualty Insurance Company by Defendants Branfenbrener, L. Groysman and Leica Supply.

945.    On information and belief, the acts taken by Defendants Galasa Wholesale, Ropa, Yuzovitskiy, G. Groysman, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Branfenbrener, L. Groysman and Leica Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Branfenbrener, L. Groysman and Leica Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendants Branfenbrener and L. Groysman through Leica Supply, to Leica Supply to create the impression of an actual sale in furtherance of the money laundering scheme;

278

(iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Leica Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Branfenbrener and L. Groysman, through Leica Supply, and the No-fault Clinics.

946.    On information and belief, the conduct of Defendants Galasa Wholesale, Ropa, Yuzovitskiy, G. Groysman, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Branfenbrener and L. Groysman through Leica Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

947.    On information and belief, Defendants Galasa Wholesale, Ropa, Yuzovitskiy, G. Groysman, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

948.    On information and belief, the conduct of Defendants Galasa Wholesale, Ropa, Yuzovitskiy, G. Groysman, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Northbrook

Indemnity Company and Allstate Fire & Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Leica Supply in an amount to be determined at trial, but in no event less than $174,000.00.

949. On information and belief, Defendants Galasa Wholesale, Ropa, Yuzovitskiy, G. Groysman, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

950. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## SIXTY-NINTH CLAIM FOR RELIEF

## AGAINST ELDAR AKHMEDOV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

951. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

952. At all times relevant herein, Med Help Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

953. From, in or about 2010 through the date of the filing of this Complaint, Defendants Akhmedov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Med Help Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in

the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

954. At all relevant times mentioned herein, Defendant Akhmedov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Med Help Supply enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

955. On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the Defendant ABC Corporations 1 through 20 furnished documents that Defendant Akhmedov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

956. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 9 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

281

## The Pattern of Racketeering Activity
### (Racketeering Acts)

957.     The racketeering acts set forth herein were carried out on a continued basis over a more than one-year period, were related and similar and were committed as part of Defendants Akhmedov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

958.     On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Med Help Supply continues to pursue collection on the fraudulent billing to the present day.

959.     As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Akhmedov, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Med Help Supply enterprise based upon materially false and misleading information.

960.     Through the Med Help Supply enterprise, Akhmedov submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Akhmedov, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Akhmedov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail

282

fraud, extending from the formation of the Med Help Supply enterprise through the filing of this Complaint.

961. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Akhmedov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

962. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

963. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

964. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $83,000.00, the exact amount to be determined at trial.

965. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Akhmedov, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## SEVENTIETH CLAIM FOR RELIEF

## AGAINST DEFENDANTS MED HELP SUPPLY, INC. AND ELDAR AKHMEDOV

### (Common Law Fraud)

966.    The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

967.    Defendants Akhmedov and Med Help Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Northbrook Indemnity Company and Allstate Fire & Casualty Insurance Company for payment.

968.    On information and belief, each and every bill and supporting documentation submitted by Defendants Akhmedov and Med Help Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

969.    On information and belief, Akhmedov and Med Help Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Med Help Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Akhmedov, through Med Help Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Akhmedov, through Med Help Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

970. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Med Help Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

971. Defendants Akhmedov and Med Help Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

972. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result

of Defendants Akhmedov and Med Help Supply's acts of fraud and deception.

973.   Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Med Help Supply's claims for No-fault insurance benefits submitted in connection therewith.

974.   Furthermore, the far reaching pattern of fraudulent conduct by Defendants Akhmedov and Med Help Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

975.   By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Northbrook Indemnity Company and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $83,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**SEVENTY-FIRST CLAIM FOR RELIEF**

**AGAINST DEFENDANTS MED HELP SUPPLY, INC. AND ELDAR AKHMEDOV**

**(Unjust Enrichment)**

976.   The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

977.   By reason of their wrongdoing, Defendants Akhmedov and Med Help Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Northbrook Indemnity Company and Allstate Fire & Casualty Insurance

Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

978.    Plaintiffs are therefore entitled to restitution from Defendants Akhmedov and Med Help Supply in the amount by which they have been unjustly enriched.

979.    By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Northbrook Indemnity Company and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $83,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

### SEVENTY-SECOND CLAIM FOR RELIEF

### AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

980.    The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

981.    On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Northbrook Indemnity Company and Allstate Fire & Casualty Insurance Company by Defendants Akhmedov and Med Help Supply.

982.    On information and belief, the acts taken by one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 in

furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Akhmedov and Med Help Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Akhmedov and Med Help Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Akhmedov, through Med Help Supply, to Med Help Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Med Help Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Akhmedov, through Med Help Supply, and the No-fault Clinics.

983.    On information and belief, the conduct of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendant Akhmedov through Med Help Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

984.    On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a

much lower rate, because they sought to continue profiting through the fraudulent scheme.

985. On information and belief, the conduct of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Northbrook Indemnity Company and Allstate Fire & Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Med Help Supply in an amount to be determined at trial, but in no event less than $83,000.00.

986. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

987. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## SEVENTY-THIRD CLAIM FOR RELIEF

### AGAINST VITALY LEVIN, GLOBAL BEST DEAL, INC., JOHN DOE 8, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

988. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

989. At all times relevant herein, Medix Surgical Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

990.    From, in or about 2010 through the date of the filing of this Complaint, Defendants Levin, Global Best Deal, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Medix Surgical Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

991.    At all relevant times mentioned herein, Defendant Levin, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Medix Surgical Supply enterprise and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

992.    On information and belief, Defendants Global Best Deal, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Global Best Deal and one or more of the ABC Corporations furnished documents that Defendant Levin required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME

and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

993. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by John Doe 8 and one or more of the John Does 9 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

994. The racketeering acts set forth herein were carried out on a continued basis over more than a yearlong period, were related and similar and were committed as part of Defendants Levin, Global Best Deal, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

995. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Medix Surgical Supply continues to pursue collection on the fraudulent billing to the present day.

996. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Levin, with the knowledge and intent of Defendants Global Best Deal, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Medix Surgical Supply enterprise based upon materially false and misleading information.

997. Through the Medix Surgical Supply enterprise, Defendant Levin submitted

hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Levin, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Levin, Global Best Deal, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Medix Surgical Supply enterprise through the filing of this Complaint.

998.   A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Levin, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

999.   Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1000.  Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1001.  By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $124,000.00, the exact amount to be determined at trial.

1002.  Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants

Levin, Global Best Deal, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## SEVENTY-FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS MEDIX SURGICAL SUPPLY, INC. AND VITALY LEVIN

### (Common Law Fraud)

1003. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1004. Defendants Vitaly Levin and Medix Surgical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company for payment.

1005. On information and belief, each and every bill and supporting documentation submitted by Defendants Levin and Medix Surgical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1006. On information and belief, Defendant Levin and Medix Surgical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

293

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Medix Surgical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Vitaly Levin, through Medix Surgical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Levin, through Medix Surgical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1007. The foregoing was intended to deceive and mislead Plaintiffs into paying

Defendant Medix Surgical Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1008. Defendants Levin and Medix Surgical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1009. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Levin and Medix Surgical Supply's acts of fraud and deception.

1010. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Medix Surgical Supply's claims for No-fault insurance benefits submitted in connection therewith.

1011. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Levin and Medix Surgical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1012. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $124,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SEVENTY-FIFTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS MEDIX SURGICAL SUPPLY, INC. AND VITALY LEVIN

### (Unjust Enrichment)

1013. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1014. By reason of their wrongdoing, Defendants Levin and Medix Surgical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1015. Plaintiffs are therefore entitled to restitution from Defendants Levin and Medix Surgical Supply in the amount by which they have been unjustly enriched.

1016. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $124,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## SEVENTY-SIXTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS GLOBAL BEST DEAL, INC., JOHN DOE 8, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1017. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1018. On information and belief, Defendants Global Best Deal, John Doe 8, one or more

296

of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company by Defendants Levin and Medix Surgical Supply.

1019.  On information and belief, the acts taken by Defendants Global Best Deal, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Levin and Medix Surgical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Levin and Medix Surgical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Levin, through Medix Surgical Supply, to Medix Surgical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Medix Surgical Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Levin, through Medix Surgical Supply, and the No-fault Clinics.

1020.  On information and belief, the conduct of Defendants Global Best Deal, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9

through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendant Levin through Medix Surgical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

1021.  On information and belief, Defendants Global Best Deal, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1022.  On information and belief, the conduct of Defendants Global Best Deal, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company and Allstate Property & Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Medix Surgical Supply in an amount to be determined at trial, but in no event less than $124,000.00.

1023.  On information and belief, Defendants Global Best Deal, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1024.  By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## SEVENTY-SEVENTH CLAIM FOR RELIEF

## AGAINST LEONID KOZACHKOV, BENER WHOLESALE, INC., CHESTERON, INC., MDDS WHOLESALE, INC., RIVIERA WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, LIOUDMILA LITVINOVA, JOHN DOE 5, ABC CORPORATIONS 1 THROUGH 20, AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1025. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

1026. At all times relevant herein, Mega Supplies Billing was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1027. From at least 2006 through the date of the filing of this Complaint, Defendants Kozachkov, Bener Wholesale, Chesteron, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Mega Supplies Billing enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1028. At all relevant times mentioned herein, Defendant Kozachkov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Mega Supplies Billing enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and

supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1029. On information and belief, Defendants Bener Wholesale, Chesteron, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Bener Wholesale, Chesteron, MDDS Wholesale, Riviera Wholesale and one or more of the ABC Corporations furnished documents that Defendant Kozachkov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1030. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Yuzovitskiy, Groysman, Litvinova, John Doe 5 and one or more of the John Does 9 through 20, through Defendants Bener Wholesale, Chesteron, MDDS Wholesale, Riviera Wholesale and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1031. The racketeering acts set forth herein were carried out on a continued basis over a more than six-year period, were related and similar and were committed as part of Defendants Kozachkov, Bener Wholesale, Chesteron, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G.

300

Groysman, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1032. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Mega Supplies Billing continues to pursue collection on the fraudulent billing to the present day.

1033. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Kozachkov, with the knowledge and intent of Defendants Bener Wholesale, Chesteron, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Mega Supplies Billing enterprise based upon materially false and misleading information.

1034. Through the Mega Supplies Billing enterprise, Defendant Kozachkov submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Kozachkov, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Kozachkov, Bener Wholesale, Chesteron, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a

continuous series of predicate acts of mail fraud, extending from at least 2006 through the filing of this Complaint.

1035. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Kozachkov, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1036. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1037. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1038. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $370,000.00, the exact amount to be determined at trial.

1039. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Kozachkov, Bener Wholesale, Chesteron, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## SEVENTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS MEGA SUPPLIES BILLING, INC. AND LEONID KOZACHKOV

### (Common Law Fraud)

1040. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1041. Defendants Kozachkov and Mega Supplies Billing made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Deerbrook Insurance Company and Allstate Fire & Casualty Insurance Company for payment.

1042. On information and belief, each and every bill and supporting documentation submitted by Defendants Kozachkov and Mega Supplies Billing to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1043. On information and belief, Defendants Kozachkov and Mega Supplies Billing intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

303

- False and misleading statements as to the amounts Mega Supplies Billing was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Kozachkov, through Mega Supplies Billing, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Kozachkov, through Mega Supplies Billing, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1044. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Mega Supplies Billing's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the

accompanying Compendium of Exhibits.

1045. Defendants Kozachkov and Mega Supplies Billing knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1046. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Kozachkov and Mega Supplies Billing's acts of fraud and deception.

1047. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Mega Supplies Billing's claims for No-fault insurance benefits submitted in connection therewith.

1048. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Kozachkov and Mega Supplies Billing evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1049. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Deerbrook Insurance Company and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $370,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## SEVENTY-NINTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS MEGA SUPPLIES BILLING INC. AND LEONID KOZACHKOV

### (Unjust Enrichment)

1050. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1051. By reason of their wrongdoing, Defendants Kozachkov and Mega Supplies Billing have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Deerbrook Insurance Company and Allstate Fire & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1052. Plaintiffs are therefore entitled to restitution from Defendants Kozachkov and Mega Supplies Billing in the amount by which they have been unjustly enriched.

1053. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Deerbrook Insurance Company and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $370,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## EIGHTIETH CLAIM FOR RELIEF

## AGAINST DEFENDANTS BENER WHOLESALE, INC., CHESTERON, INC., MDDS WHOLESALE, INC., RIVIERA WHOLESALE, VADIM YUZOVITSKIY, GRIGORY GROYSMAN, LIOUDMILA LITVINOVA, JOHN DOE 5, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1054. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1055. On information and belief, Defendants Bener Wholesale, Chesteron, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Deerbrook Insurance Company and Allstate Fire & Casualty Insurance Company by Defendants Kozachkov and Mega Supplies Billing.

1056. On information and belief, the acts taken by Defendants Bener Wholesale, Chesteron, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Kozachkov and Mega Supplies Billing purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Kozachkov and Mega Supplies Billing could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Kozachkov, through Mega

Supplies Billing, to Mega Supplies Billing to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Mega Supplies Billing; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Kozachkov, through Mega Supplies Billing, and the No-fault Clinics.

1057. On information and belief, the conduct of Defendants Bener Wholesale, Chesteron, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Kozachkov through Mega Supplies Billing to obtain fraudulently inflated payments from Plaintiffs, among others.

1058. On information and belief, Defendants Bener Wholesale, Chesteron, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1059. On information and belief, the conduct of Defendants Bener Wholesale, Chesteron, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, Litvinova, John

Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Deerbrook Insurance Company and Allstate Fire & Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Mega Supplies Billing in an amount to be determined at trial, but in no event less than $370,000.00.

1060. On information and belief, Defendants Bener Wholesale, Chesteron, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1061. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

### EIGHTY-FIRST CLAIM FOR RELIEF

### AGAINST ROMAN VCHERASHANSKY, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1062. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

1063. At all times relevant herein, Metrostar was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1064. From, in or about 2007 through the date of the filing of this Complaint,

Defendants Vcherashansky, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Metrostar enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1065. At all relevant times mentioned herein, Defendant Vcherashansky, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Metrostar enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1066. On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the Defendant ABC Corporations 1 through 20 furnished documents that Defendant Vcherashansky required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1067. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 9 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1068. The racketeering acts set forth herein were carried out on a continued basis over a more than three-year period, were related and similar and were committed as part of Defendants Vcherashansky, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1069. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Metrostar continues to pursue collection on the fraudulent billing to the present day.

1070. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Vcherashansky, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Metrostar enterprise based upon materially false and misleading information.

1071. Through the Metrostar enterprise, Defendant Vcherashansky submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and

311

supporting documents that were sent by Defendant Vcherashansky, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Vcherashansky, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Metrostar enterprise through the filing of this Complaint.

1072. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Vcherashansky, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1073. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1074. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1075. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $127,000.00, the exact amount to be determined at trial.

1076. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Vcherashansky, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the

costs of this lawsuit and reasonable attorneys' fees.

## EIGHTY-SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANTS METROSTAR, INC. AND ROMAN VCHERASHANSKY

### (Common Law Fraud)

1077. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1078. Defendants Vcherashansky and Metrostar made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company for payment.

1079. On information and belief, each and every bill and supporting documentation submitted by Defendants Vcherashansky and Metrostar to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1080. On information and belief, Defendants Vcherashansky and Metrostar intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Metrostar was

313

entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Vcherashansky, through Metrostar, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Vcherashansky, through Metrostar, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1081. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Metrostar's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1082. Defendants Vcherashansky and Metrostar knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1083. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material

misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Vcherashansky and Metrostar's acts of fraud and deception.

1084. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Metrostar's claims for No-fault insurance benefits submitted in connection therewith.

1085. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Vcherashansky and Metrostar evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1086. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $127,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## EIGHTY-THIRD CLAIM FOR RELIEF

## AGAINST DEFENDANTS METROSTAR, INC. AND ROMAN VCHERASHANSKY

### (Unjust Enrichment)

1087. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1088. By reason of their wrongdoing, Defendants Vcherashansky and Metrostar have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate

Fire & Casualty Insurance Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1089. Plaintiffs are therefore entitled to restitution from Defendants Vcherashansky and Metrostar in the amount by which they have been unjustly enriched.

1090. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $131,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## EIGHTY-FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1091. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1092. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company by Defendants Vcherashansky and Metrostar.

1093. On information and belief, the acts taken by one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic

316

devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Vcherashansky and Metrostar purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Vcherashansky and Metrostar could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Vcherashansky, through Metrostar, to Metrostar to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Metrostar; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Vcherashansky, through Metrostar, and the No-fault Clinics.

1094. On information and belief, the conduct of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendant Vcherashansky through Metrostar to obtain fraudulently inflated payments from Plaintiffs, among others.

1095. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1096. On information and belief, the conduct of one or more of the Defendant ABC

Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Metrostar in an amount to be determined at trial, but in no event less than $127,000.00.

1097. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1098. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## EIGHTY-FIFTH CLAIM FOR RELIEF

## AGAINST ALEKSANDR TARTAKOVSKIY, IVY MED DISTRIBUTORS, INC., JOHN DOE 3, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1099. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1100. At all times relevant herein, Millennium Supplies was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1101. From, in or about 2009 through the date of the filing of this Complaint, Defendants Tartakovskiy, Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted

318

and participated in the affairs of the Millennium Supplies enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1102. At all relevant times mentioned herein, Defendant Tartakovskiy, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Millennium Supplies enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1103. On information and belief, Defendants Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Ivy Med Distributors and one or more of the ABC Corporations furnished documents that Defendant Tartakovskiy required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1104. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by John Doe 3 and one or more of the John Does 9 through

20, through Defendant Ivy Med Distributors and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1105.  The racketeering acts set forth herein were carried out on a continued basis over a more than two-year period, were related and similar and were committed as part of Defendants Tartakovskiy, Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1106.  On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Millennium Supplies continues to pursue collection on the fraudulent billing to the present day.

1107.  As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Tartakovskiy, with the knowledge and intent of Defendants Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Millennium Supplies enterprise based upon materially false and misleading information.

1108.  Through the Millennium Supplies enterprise, Defendant Tartakovskiy submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants.  The bills and

supporting documents that were sent by Defendants Tartakovskiy, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Tartakovskiy, Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Millennium Supplies enterprise through the filing of this Complaint.

1109. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Tartakovskiy in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1110. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1111. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1112. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $243,000.00, the exact amount to be determined at trial.

1113. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Tartakovskiy, Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## EIGHTY-SIXTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS MILLENIUM SUPPLIES, INC. AND ALEKSANDR TARTAKOVSKIY

### (Common Law Fraud)

1114. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1115. Defendants Tartakovskiy and Millennium Supplies made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company for payment.

1116. On information and belief, each and every bill and supporting documentation submitted by Defendants Tartakovskiy and Millennium Supplies to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1117. On information and belief, Defendants Tartakovskiy and Millennium Supplies intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Millennium Supplies was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby, Defendant Tartakovskiy, through Millennium Supplies, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Tartakovskiy, through Millennium Supplies, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1118. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Millennium Supplies' claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1119. Defendants Tartakovskiy and Millennium Supplies knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1120. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Tartakovskiy and Millennium Supplies' acts of fraud and deception.

1121. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Millennium Supplies' claims for No-fault insurance benefits submitted in connection therewith.

1122. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Tartakovskiy and Millennium Supplies evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1123. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $243,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**EIGHTY-SEVENTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS MILLENIUM SUPPLIES, INC. AND ALEKSANDR TARTAKOVSKIY**

**(Unjust Enrichment)**

1124. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1125. By reason of their wrongdoing, Defendants Tartakovskiy and Millennium Supplies have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1126. Plaintiffs are therefore entitled to restitution from Defendants Tartakovskiy and Millennium Supplies in the amount by which they have been unjustly enriched.

1127. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $243,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## EIGHTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS IVY MED DISTRIBUTORS, INC., JOHN DOE 3, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1128. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1129. On information and belief, Defendants Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company by Defendants Tartakovskiy and Millennium Supplies.

1130. On information and belief, the acts taken by Defendants Ivy Med Distributors,

John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Tartakovskiy and Millennium Supplies purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Tartakovskiy and Millennium Supplies could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Tartakovskiy, through Millennium Supplies, to Millennium Supplies to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Millennium Supplies; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Tartakovskiy, through Millennium Supplies, and the No-fault Clinics.

1131. On information and belief, the conduct of Defendants Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Tartakovskiy through Millennium Supplies to obtain fraudulently inflated payments from Plaintiffs, among others.

1132. On information and belief, Defendants Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20

326

aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1133.  On information and belief, the conduct of Defendants Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Millennium Supplies in an amount to be determined at trial, but in no event less than $243,000.00.

1134.  On information and belief, Defendants Ivy Med Distributors, John Doe 3, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1135.  By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

**EIGHTY-NINTH CLAIM FOR RELIEF**

**AGAINST ALEKSANDER AFANASYEV, BELA RUD, VADIM VINOKOUR, DENIS ZAGLADKO, BENER WHOLESALE, INC., DELAZOOM, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 1, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20**

**(RICO, pursuant to 18 U.S.C § 1962(c))**

1136.  The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1137. At all times relevant herein, MSSA was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1138. From, in or about 2007 through the date of the filing of this Complaint, Defendants Afanasyev, Rud, Vinokour, Zagladko, Bener Wholesale, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the MSSA enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1139. At all relevant times mentioned herein, Defendants Afanasyev, Rud, Vinokour and Zagladko, together with others unknown to Plaintiffs, exerted control over and directed the operations of the MSSA enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1140. On information and belief, Defendants Bener Wholesale, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus

documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Bener Wholesale, Delazoom, and one or more of the ABC Corporations furnished documents that Defendants Afanasyev, Rud, Vinokour and Zagladko required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1141. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Yuzovitskiy, G. Groysman, John Doe 1 and one or more of the John Does 9 through 20, through Defendants Bener Wholesale, Delazoom and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1142. The racketeering acts set forth herein were carried out on a continued basis over a more than four-year period, were related and similar and were committed as part of Defendants Afanasyev, Rud, Vinokour, Zagladko, Bener Wholesale, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1143. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as MSSA continues to pursue collection on the fraudulent billing to the present day.

1144. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Afanasyev, Rud, Vinokour and

329

Zagladko, with the knowledge and intent of Defendants Bener Wholesale, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the MSSA enterprise based upon materially false and misleading information.

1145. Through the MSSA enterprise, Defendants Afanasyev, Rud, Vinokour and Zagladko submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Afanasyev, Rud, Vinokour and Zagladko, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Afanasyev, Rud, Vinokour, Zagladko, Bener Wholesale, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the MSSA enterprise through the filing of this Complaint.

1146. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Afanasyev, Rud, Vinokour and Zagladko, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1147. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1148. Each submission of a fraudulent claim constitutes a pattern of racketeering

activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1149. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $393,000.00, the exact amount to be determined at trial.

1150. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Afanasyev, Rud, Vinokour, Zagladko, Bener Wholesale, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**NINETIETH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS MSSA, CORP., ALEKSANDER AFANASYEV, BELA RUD, VADIM VINOKOUR AND DENIS ZAGLADKO**

**(Common Law Fraud)**

1151. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1152. Defendants Afanasyev, Rud, Vinokour, Zagladko and MSSA made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, Northbrook Indemnity Company and Allstate Indemnity Company for payment.

1153. On information and belief, each and every bill and supporting documentation

submitted by Defendants Afanasyev, Rud, Vinokour, Zagladko and MSSA to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1154. On information and belief, Defendants Afanasyev, Rud, Vinokour, Zagladko and MSSA intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts MSSA was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Afanasyev, Rud, Vinokour and Zagladko, through MSSA, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Afanasyev, Rud, Vinokour and Zagladko, through MSSA, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1155. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant MSSA's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1156. Defendants Afanasyev, Rud, Vinokour, Zagladko and MSSA knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1157. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Afanasyev, Rud, Vinokour, Zagladko and MSSA's acts of fraud and deception.

1158. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant MSSA's claims for No-fault insurance benefits submitted in connection therewith.

1159. Furthermore, the far reaching pattern of fraudulent conduct by Defendants

Afanasyev, Vinokour, Rud, Zagladko and MSSA evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1160. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, Northbrook Indemnity Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $393,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## NINETY-FIRST CLAIM FOR RELIEF

### AGAINST DEFENDANTS MSSA, CORP., ALEKSANDER AFANASYEV, BELA RUD, VADIM VINOKOUR AND DENIS ZAGLADKO

### (Unjust Enrichment)

1161. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1162. By reason of their wrongdoing, Defendants Afanasyev, Rud, Vinokour, Zagladko and MSSA have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, Northbrook Indemnity Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1163. Plaintiffs are therefore entitled to restitution from Defendants Afanasyev, Rud, Vinokour, Zagladko and MSSA in the amount by which they have been unjustly enriched.

1164. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate

Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, Northbrook Indemnity Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $393,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## NINETY-SECOND CLAIM FOR RELIEF

### AGAINST DEFENDANTS BENER WHOLESALE, INC., DELAZOOM, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 1, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (AIDING AND ABETTING)

1165. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1166. On information and belief, Defendants Bener Wholesale, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, Northbrook Indemnity Company and Allstate Indemnity Company by Defendants Afanasyev, Vinokour, Rud, Zagladko and MSSA.

1167. On information and belief, the acts taken by Defendants Bener Wholesale, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Afanasyev, Rud, Vinokour,

335

Zagladko and MSSA purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Afanasyev, Rud, Vinokour, Zagladko and MSSA could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendants Afanasyev, Rud, Vinokour and Zagladko, through MSSA, to MSSA to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through MSSA; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Afanasyev, Rud, Vinokour and Zagladko, through MSSA, and the No-fault Clinics.

1168. On information and belief, the conduct of Defendants Bener Wholesale, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Afanasyev, Rud, Vinokour and Zagladko through MSSA to obtain fraudulently inflated payments from Plaintiffs, among others.

1169. On information and belief, Defendants Bener Wholesale, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1170. On information and belief, the conduct of Defendants Bener Wholesale, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, Northbrook Indemnity Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through MSSA in an amount to be determined at trial, but in no event less than $393,000.00.

1171. On information and belief, Defendants Bener Wholesale, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1172. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## NINETY-THIRD CLAIM FOR RELIEF

## AGAINST OLEG SAVKUB, GALASA WHOLESALE, INC., NEW STEP SERVICES, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 4, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1173. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1174. At all times relevant herein, Olma Medical Equipment was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1175. From, in or about 2007 through the date of the filing of this Complaint, Defendants Savkub, Galasa Wholesale, New Step Services, Yuzovitskiy, G. Groysman, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Olma Medical Equipment enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1176. At all relevant times mentioned herein, Defendants Savkub, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Olma Medical Equipment enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1177. On information and belief, Defendants Galasa Wholesale, New Step Services, Yuzovitskiy, G. Groysman, John Doe 4, and one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Galasa Wholesale, New Step Services and one or more of the ABC Corporations furnished documents that Defendant Savkub required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims,

338

including fictitious wholesale invoices for medical supplies.

1178. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Yuzovitskiy, G. Groysman, John Doe 4 and one or more of the John Does 9 through 20, through Defendants Galasa Wholesale, New Step Service and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

**The Pattern of Racketeering Activity**
**(Racketeering Acts)**

1179. The racketeering acts set forth herein were carried out on a continued basis over a more than four-year period, were related and similar and were committed as part of Defendants Savkub, Galasa Wholesale, New Step Services, Yuzovitskiy, G. Groysman, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1180. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Olma Medical Equipment continues to pursue collection on the fraudulent billing to the present day.

1181. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Savkub, with the knowledge and intent of Defendants Galasa Wholesale, New Step Services, Yuzovitskiy, G. Groysman, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Olma Medical Equipment enterprise

based upon materially false and misleading information.

1182. Through the Olma Medical Equipment enterprise, Defendant Savkub submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Savkub, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Savkub, Galasa Wholesale, New Step Services, Yuzovitskiy, G. Groysman, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Olma Medical Equipment enterprise through the filing of this Complaint.

1183. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Savkub, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1184. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1185. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1186. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently

in excess of $87,000.00, the exact amount to be determined at trial.

1187. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Savkub, Galasa Wholesale, New Step Services, Yuzovitskiy, G. Groysman, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**NINETY-FOURTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS OLMA MEDICAL EQUIPMENT, INC. AND OLEG SAVKUB**

**(Common Law Fraud)**

1188. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1189. Defendants Savkub and Olma Medical Equipment made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, Northbrook Indemnity Company and Allstate Property & Casualty Insurance Company for payment.

1190. On information and belief, each and every bill and supporting documentation submitted by Defendants Savkub and Olma Medical Equipment to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1191. On information and belief, Defendants Savkub and Olma Medical Equipment

intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Olma Medical Equipment was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Savkub, through Olma Medical Equipment, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c)

DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Savkub, through Olma Medical Equipment, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1192. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Olma Medical Equipment's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1193. Defendants Savkub and Olma Medical Equipment knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1194. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Savkub and Olma Medical Equipment's acts of fraud and deception.

1195. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Olma Medical Equipment's claims for No-fault insurance benefits submitted in connection therewith.

1196. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Savkub and Olma Medical Equipment evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1197. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, Northbrook Indemnity Company and Allstate Property & Casualty Insurance Company have sustained compensatory

damages and been injured in their business and property in an amount believed to be in excess of $87,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**NINETY-FIFTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS OLMA MEDICAL EQUIPMENT, INC. AND OLEG SAVKUB**

**(Unjust Enrichment)**

1198. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1199. By reason of their wrongdoing, Defendants Savkub and Olma Medical Equipment have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, Northbrook Indemnity Company and Allstate Property & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1200. Plaintiffs are therefore entitled to restitution from Defendants Savkub and Olma Medical Equipment in the amount by which they have been unjustly enriched.

1201. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, Northbrook Indemnity Company and Allstate Property & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $87,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

# NINETY-SIXTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS GALASA WHOLESALE, INC., NEW STEP SERVICES, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 4, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1202. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1203. On information and belief, Defendants Galasa Wholesale, New Step Services, Yuzovitskiy, G. Groysman, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, Northbrook Indemnity Company and Allstate Property & Casualty Insurance Company by Defendants Savkub and Olma Medical Equipment.

1204. On information and belief, the acts taken by Defendants Galasa Wholesale, New Step Services, Yuzovitskiy, G. Groysman, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Savkub and Olma Medical Equipment purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Savkub and Olma Medical Equipment could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Savkub, through Olma Medical Equipment, to Olma Medical Equipment to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly

345

creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Olma Medical Equipment; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Savkub, through Olma Medical Equipment, and the No-fault Clinics.

1205. On information and belief, the conduct of Defendants Galasa Wholesale, New Step Services, Yuzovitskiy, G. Groysman, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendant Savkub through Olma Medical Equipment to obtain fraudulently inflated payments from Plaintiffs, among others.

1206. On information and belief, Defendants Galasa Wholesale, New Step Services, Yuzovitskiy, G. Groysman, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1207. On information and belief, the conduct of Defendants Galasa Wholesale, New Step Services, Yuzovitskiy, G. Groysman, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Fire & Casualty Insurance Company, Northbrook Indemnity Company and Allstate Property & Casualty Insurance Company to pay

money based upon the fraudulent charges submitted through Olma Medical Equipment in an amount to be determined at trial, but in no event less than $87,000.00.

1208. On information and belief, Defendants Galasa Wholesale, New Yuzovitskiy, G. Groysman, New Step Services, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1209. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## NINTY-SEVENTH CLAIM FOR RELIEF

## AGAINST BORIS KATZ, NEW STEP SERVICES, INC., JOHN DOE 4, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1210. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

1211. At all times relevant herein, Ortho Products & Equipment was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1212. From, in or about 2008 through the date of the filing of this Complaint, Defendants Katz, New Step Services, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Ortho Products & Equipment enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and

included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1213. At all relevant times mentioned herein, Defendant Katz, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Ortho Products & Equipment enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1214. On information and belief, Defendants New Step Services, John Doe 4 and one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants New Step Services, and one or more of the ABC Corporations furnished documents that Defendant Katz required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1215. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by John Doe 4 and one or more of the John Does 9 through 20, through New Step Services and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1216. The racketeering acts set forth herein were carried out on a continued basis over a more than six-year period, were related and similar and were committed as part of Defendants Katz, New Step Services, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1217. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Ortho Products & Equipment continues to pursue collection on the fraudulent billing to the present day.

1218. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Katz, with the knowledge and intent of Defendants New Step Services, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Ortho Products & Equipment enterprise based upon materially false and misleading information.

1219. Through the Ortho Products & Equipment enterprise, Defendant Katz submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Katz, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of

those activities, Defendants Katz, New Step Services, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Ortho Products & Equipment enterprise through the filing of this Complaint.

1220.  A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Katz in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1221.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1222.  Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1223.  By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $216,000.00, the exact amount to be determined at trial.

1224.  Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Katz, New Step Services, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## NINTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ORTHO PRODUCTS & EQUIPMENT, INC. AND BORIS KATZ

### (Common Law Fraud)

1225.  The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1226.  Defendants Katz and Ortho Products & Equipment made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company for payment.

1227.  On information and belief, each and every bill and supporting documentation submitted by Defendants Katz and Ortho Products & Equipment to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1228.  On information and belief, Defendants Katz and Ortho Products & Equipment intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Ortho Products & Equipment was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Katz, through Ortho Products & Equipment, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Katz, through Ortho Products & Equipment, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1229. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Ortho Products & Equipment's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1230. Defendants Katz and Ortho Products & Equipment knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1231. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Katz and Ortho Products & Equipment's acts of fraud and deception.

1232. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Ortho Products & Equipment's claims for No-fault insurance benefits submitted in connection therewith.

1233. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Katz and Ortho Products & Equipment evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1234. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $216,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## NINETY-NINTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ORTHO PRODUCTS & EQUIPMENT, INC. AND BORIS KATZ

### (Unjust Enrichment)

1235. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1236. By reason of their wrongdoing, Defendants Katz and Ortho Products & Equipment have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1237. Plaintiffs are therefore entitled to restitution from Defendants Katz and Ortho Products & Equipment in the amount by which they have been unjustly enriched.

1238. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $216,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDREDTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS NEW STEP SERVICES, INC., JOHN DOE 4, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1239. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1240. On information and belief, Defendants New Step Services, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company by Defendants Katz and Ortho Products & Equipment.

1241. On information and belief, the acts taken by Defendants New Step Services, John

354

Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Katz and Ortho Products & Equipment purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Katz and Ortho Products & Equipment could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Katz, through Ortho Products & Equipment, to Ortho Products & Equipment to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Ortho Products & Equipment; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Katz, through Ortho Products & Equipment, and the No-fault Clinics.

1242. On information and belief, the conduct of Defendants New Step Services, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Katz, through Ortho Products & Equipment to obtain fraudulently inflated payments from Plaintiffs, among others.

1243. On information and belief, Defendants New Step Services, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20

aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1244. On information and belief, the conduct of Defendants New Step Services, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Ortho Products & Equipment in an amount to be determined at trial, but in no event less than $216,000.00.

1245. On information and belief, Defendants New Step Services, John Doe 4, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1246. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED FIRST CLAIM FOR RELIEF

### AGAINST VITALY LEVIN, DEVONIAN, INC., FRAZIER TRADING COMPANY, INC., GLOBAL BEST DEAL, INC., IVY MED DISTRIBUTORS, INC., MICHAEL ZAVRAZHIN, VLADISLAV AGUVAYEV, JOHN DOE 3, JOHN DOE 8, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1247. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1248. At all times relevant herein, Ortho-Med Surgical Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1249. From at least 2006 through the date of the filing of this Complaint, Defendants Levin, Devonian, Frazier Trading Company, Global Best Deal, Ivy Med Distributors, Zavrazhin, Aguvayev, John Doe 3, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Ortho-Med Surgical Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1250. At all relevant times mentioned herein, Defendant Levin, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Ortho-Med Surgical Supply enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Fire & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1251. On information and belief, Defendants Devonian, Frazier Trading Company, Global Best Deal, Ivy Med Distributors, Zavrazhin, Aguvayev, John Doe 3, John Doe 8, one or

more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Devonian, Frazier Trading Company, Global Best Deal, Ivy Med Distributors and one or more of the ABC Corporations furnished documents that Defendant Levin required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1252. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Zavrazhin, Aguvayev, John Doe 3, John Doe 8 and one or more of the John Does 9 through 20, through Defendants Devonian, Frazier Trading Company, Global Best Deal, Ivy Med Distributors and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1253. The racketeering acts set forth herein were carried out on a continued basis over a more than five-year period, were related and similar and were committed as part of Defendants Levin, Devonian, Frazier Trading Company, Ivy Global Best Deal, Med Distributors, Zavrazhin, Aguvayev, John Doe 3, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1254. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Ortho-Med Surgical

Supply continues to pursue collection on the fraudulent billing to the present day.

1255. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Levin, with the knowledge and intent of Defendants Devonian, Frazier Trading Company, Global Best Deal, Ivy Med Distributors, Zavrazhin, Aguvayev, John Doe 3, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Ortho-Med Surgical Supply enterprise based upon materially false and misleading information.

1256. Through the Ortho-Med Surgical Supply enterprise, Defendant Levin submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Levin, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Levin, Devonian, Frazier Trading Company, Global Best Deal, Ivy Med Distributors, Zavrazhin, Aguvayev, John Doe 3, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from at least 2006 through the filing of this Complaint.

1257. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Levin, in furtherance of the scheme as well as the specific misrepresentations identified for each of the

359

mailings.

1258.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1259.  Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1260.  By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Fire & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $1,158,000.00, the exact amount to be determined at trial.

1261.  Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Levin, Devonian, Frazier Trading Company, Global Best Deal, Ivy Med Distributors, Zavrazhin, Aguvayev, John Doe 3, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### ONE HUNDRED SECOND CLAIM FOR RELIEF

### AGAINST DEFENDANTS ORTHO-MED SURGICAL SUPPLY, INC. AND VITALY LEVIN
#### (Common Law Fraud)

1262.  The allegations of paragraphs 1 through 322  are hereby repeated and realleged as though fully set forth herein.

1263.  Defendants    Levin    and    Ortho-Med    Surgical    Supply    made    material

misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company, Deerbrook Insurance Company and Northbrook Indemnity Company for payment.

1264. On information and belief, each and every bill and supporting documentation submitted by Defendants Levin and Ortho-Med Surgical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1265. On information and belief, Levin and Ortho-Med Surgical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Ortho-Med Surgical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus

50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendant Levin, through Ortho-Med Surgical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Levin, through Ortho-Med Surgical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1266. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Ortho-Med Surgical Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1267. Defendants Levin and Ortho-Med Surgical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1268. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result

of Defendants Levin and Ortho-Med Surgical Supply's acts of fraud and deception.

1269. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Ortho-Med Surgical Supply's claims for No-fault insurance benefits submitted in connection therewith.

1270. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Levin and Ortho-Med Surgical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1271. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company, Deerbrook Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $1,158,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**ONE HUNDRED THIRD CLAIM FOR RELIEF**

**AGAINST DEFENDANTS ORTHO-MED SURGICAL SUPPLY, INC. AND VITALY LEVIN**

**(Unjust Enrichment)**

1272. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1273. By reason of their wrongdoing, Defendants Levin and Ortho-Med Surgical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate

Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company, Deerbrook Insurance Company and Northbrook Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1274. Plaintiffs are therefore entitled to restitution from Defendants Levin and Ortho-Med Surgical Supply in the amount by which they have been unjustly enriched.

1275. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company, Deerbrook Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $1,158,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

### ONE HUNDRED FOURTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS DEVONIAN, INC., FRAZIER TRADING COMPANY, INC., GLOBAL BEST DEAL, INC., IVY MED DISTRIBUTORS, INC, MICHAEL ZAVRAZHIN, VLADISLAV AGUVAYEV, JOHN DOE 4, JOHN DOE 8, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1276. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1277. On information and belief, Defendants Devonian, Frazier Trading Company, Global Best Deal, Ivy Med Distributors, Yuzovitskiy, G. Groysman, Zavrazhin, Aguvayev, John Doe 3, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property &

Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company, Deerbrook Insurance Company and Northbrook Indemnity Company by Defendants Levin and Ortho-Med Surgical Supply.

1278. On information and belief, the acts taken by Defendants Devonian, Frazier Trading Company, Global Best Deal, Ivy Med Distributors, Zavrazhin, Aguvayev John Doe 3, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Levin and Ortho-Med Surgical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Levin and Ortho-Med Surgical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Levin, through Ortho-Med Surgical Supply, to Ortho-Med Surgical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Ortho-Med Surgical Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Levin, through Ortho-Med Surgical Supply, and the No-fault Clinics.

1279. On information and belief, the conduct of Defendants Devonian, Frazier Trading Company, Global Best Deal, Ivy Med Distributors, Zavrazhin, Aguvayev, John Doe 3, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9

through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Levin through Ortho-Med Surgical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

1280. On information and belief, Defendants Devonian, Frazier Trading Company, Global Best Deal, Ivy Med Distributors, Zavrazhin, Aguvayev, John Doe 3, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1281. On information and belief, the conduct of Defendants Devonian, Frazier Trading Company, Global Best Deal, Ivy Med Distributors, Zavrazhin, Aguvayev John Doe 3, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company, Deerbrook Insurance Company and Northbrook Indemnity Company to pay money based upon the fraudulent charges submitted through Ortho-Med Surgical Supply in an amount to be determined at trial, but in no event less than $1,158,000.00.

1282. On information and belief, Defendants Devonian, Frazier Trading Company, Global Best Deal, Ivy Med Distributors, Zavrazhin, Aguvayev, John Doe 3, John Doe 8, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton

366

dishonesty that entitles Plaintiffs to recover punitive damages.

1283. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED FIFTH CLAIM FOR RELIEF

### AGAINST SVETLANA ZILPER, DEIMOS DISTRIBUTORS, INC., GALASA WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1284. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1285. At all times relevant herein, Pahta Medical Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1286. From at least 2006 through the date of the filing of this Complaint, Defendants Zilper, Deimos Distributors, Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Pahta Medical Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1287. At all relevant times mentioned herein, Defendant Zilper, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Pahta Medical

Supply enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1288. On information and belief, Defendants Deimos Distributors, Galasa Wholesale, Yuzovitskiy, Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Deimos Distributors, Galasa Wholesale, and one or more of the ABC Corporations furnished documents that Defendant Zilper required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1289. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Yuzovitskiy, G. Groysman and one or more of the John Does 9 through 20, through Defendants Deimos Distributors, Galasa Wholesale and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1290. The racketeering acts set forth herein were carried out on a continued basis over a more than six-year period, were related and similar and were committed as part of Defendants Zilper, Deimos Distributors, Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the

ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1291. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Pahta Medical Supply continues to pursue collection on the fraudulent billing to the present day.

1292. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Zilper, with the knowledge and intent of Defendants Deimos Distributors, Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Pahta Medical Supply enterprise based upon materially false and misleading information.

1293. Through the Pahta Medical Supply enterprise, Defendant Zilper submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Zilper, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Zilper, Deimos Distributors, Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from at least 2006 through the filing of this Complaint.

369

1294. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Zilper, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1295. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1296. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1297. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $172,000.00, the exact amount to be determined at trial.

1298. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Zilper, Deimos Distributors, Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### ONE HUNDRED SIXTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS PAHTA MEDICAL SUPPLY, INC. AND SVETLANA ZILPER

### (Common Law Fraud)

1299. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1300. Defendants Zilper and Pahta Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company for payment.

1301. On information and belief, each and every bill and supporting documentation submitted by Defendants Zilper and Pahta Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1302. On information and belief, Defendants Zilper and Pahta Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Pahta Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

371

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendant Zilper, through Pahta Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Zilper, through Pahta Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1303. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Pahta Medical Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1304. Defendants Zilper and Pahta Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1305. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Zilper and Pahta Medical Supply's acts of fraud and deception.

1306. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Pahta Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

1307. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Zilper and Pahta Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1308. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $172,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**ONE HUNDRED SEVENTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS PAHTA MEDICAL SUPPLY, INC. AND SVETLANA ZILPER**

**(Unjust Enrichment)**

1309. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1310. By reason of their wrongdoing, Defendants Zilper and Pahta Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1311. Plaintiffs are therefore entitled to restitution from Defendants Zilper and Pahta Medical Supply in the amount by which they have been unjustly enriched.

1312. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $172,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED EIGHTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS DEIMOS DISTRIBUTORS, INC., GALASA WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1313. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1314. On information and belief, Defendants Deimos Distributors, Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company by Defendants Zilper and Pahta Medical Supply.

1315. On information and belief, the acts taken by Defendants Deimos Distributors, Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any

meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Zilper and Pahta Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Zilper and Pahta Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Zilper, through Pahta Medical Supply, to Pahta Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Pahta Medical Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Zilper, through Pahta Medical Supply, and the No-fault Clinics.

1316. On information and belief, the conduct of Defendants Deimos Distributors, Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Zilper through Pahta Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

1317. On information and belief, Defendants Deimos Distributors, Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable

375

under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1318. On information and belief, the conduct of Defendants Deimos Distributors, Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Pahta Medical Supply in an amount to be determined at trial, but in no event less than $172,000.00.

1319. On information and belief, Defendants Deimos Distributors, Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1320. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED NINTH CLAIM FOR RELIEF

### AGAINST RUSLAN ALYAS, MIKHAIL KREMARMAN, BENER WHOLESALE, INC., DEIMOS DISTRIBUTORS, INC., EXCELL PLUS, INC., MDDS WHOLESALE, INC., RIVIERA WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 2, LIOUDMILA LITVINOVA, JOHN DOE 5, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1321. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1322. At all times relevant herein, Park Slope Medical & Surgical Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1323. From, in or about 2006 through the date of the filing of this Complaint, Defendants Alyas, Kremarman, Bener Wholesale, Deimos Distributors, Excell Plus, MDDS Wholesale, Riviera Wholesale, John Doe 2, Yuzovitskiy, G. Groysman, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Park Slope Medical & Surgical Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1324. At all relevant times mentioned herein, Defendants Alyas and Kremarman, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Park Slope Medical & Surgical Supply enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1325. On information and belief, Defendants Bener Wholesale, Deimos Distributors, Excell Plus, MDDS Wholesale, Riviera Wholesale, John Doe 2, Yuzovitskiy, G. Groysman, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of

377

the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Bener Wholesale, Deimos Distributors, Excell Plus, MDDS Wholesale, and one or more of the ABC Corporations furnished documents that Alyas and Kremarman required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1326. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5 and one or more of the John Does 9 through 20, through Defendants Bener Wholesale, Deimos Distributors, Excell Plus, MDDS Wholesale, Riviera Wholesale and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1327. The racketeering acts set forth herein were carried out on a continued basis over a more than five-year period, were related and similar and were committed as part of Defendants Alyas, Kremarman, Bener Wholesale, Deimos Distributors, Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1328. On information and belief, this pattern of racketeering activity poses a specific

378

threat of repetition extending indefinitely into the future, inasmuch as Park Slope Medical & Surgical Supply continues to pursue collection on the fraudulent billing to the present day.

1329. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Alyas, Kremarman, with the knowledge and intent of Defendants Bener Wholesale, Deimos Distributors, Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Park Slope Medical & Surgical Supply enterprise based upon materially false and misleading information.

1330. Through the Park Slope Medical & Surgical Supply enterprise, Defendants Alyas and Kremarman submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Alyas, Kremarman, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Alyas, Kremarman, Bener Wholesale, Deimos Distributors, Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Park Slope Medical & Surgical Supply enterprise through the filing of this Complaint.

1331. A representative sample of predicate acts is set forth in the accompanying

Appendix, which identifies the nature and date of mailings that were made by Defendants Alyas and Kremarman, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1332. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1333. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

1334. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $613,000.00, the exact amount to be determined at trial.

1335. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Alyas, Kremarman, Bener Wholesale, Deimos Distributors, Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## ONE HUNDRED TENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS PARK SLOPE MEDICAL & SUPPLY, INC., RUSLAN ALYAS AND MIKHAIL KREMARMAN

### (Common Law Fraud)

1336. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as

though fully set forth herein.

1337. Defendants Alyas, Kremarman and Park Slope Medical & Surgical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Indemnity Company for payment.

1338. On information and belief, each and every bill and supporting documentation submitted by Defendants Alyas, Kremarman and Park Slope Medical & Surgical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1339. On information and belief, Alyas, Kremarman and Park Slope Medical & Surgical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Park Slope Medical & Surgical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading

381

statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Alyas and Kremarman, through Park Slope Medical & Surgical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Alyas and Kremarman, through Park Slope Medical & Surgical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1340. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Park Slope Medical & Surgical Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1341. Defendants Alyas, Kremarman and Park Slope Medical & Surgical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1342. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Alyas, Kremarman and Park Slope Medical & Surgical Supply's acts of fraud and deception.

1343. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Park Slope Medical & Surgical Supply's claims for No-fault insurance benefits submitted in connection therewith.

1344. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Alyas, Kremarman and Park Slope Medical & Surgical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1345. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $613,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## ONE HUNDRED ELVENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS PARK SLOPE MEDICAL & SUPPLY, INC., RUSLAN ALYAS AND MIKHAIL KREMARMAN

### (Unjust Enrichment)

1346. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1347. By reason of their wrongdoing, Defendants Alyas, Kremarman and Park Slope

Medical & Surgical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1348. Plaintiffs are therefore entitled to restitution from Defendants Alyas, Kremarman and Park Slope Medical & Surgical Supply in the amount by which they have been unjustly enriched.

1349. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $613,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED TWELVTH CLAIM FOR RELIEF

**AGAINST DEFENDANTS BENER WHOLESALE, INC., DEIMOS DISTRIBUTORS, INC., EXCELL PLUS, INC., MDDS WHOLESALE, INC., RIVIERA WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 2, LIOUDMILA LITVINOVA, JOHN DOE 5, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20**

### (Aiding and Abetting)

1350. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1351. On information and belief, Defendants Bener Wholesale, Deimos Distributors, Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2,

Litvinova, John Doe 5 and John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Indemnity Company by Defendants Alyas, Kremarman and Park Slope Medical & Surgical Supply.

1352. On information and belief, the acts taken by Defendants Bener Wholesale, Deimos Distributors, Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5 and John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Alyas, Kremarman and Park Slope Medical & Surgical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Alyas, Kremarman and Park Slope Medical & Surgical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Alyas and Kremarman, through Park Slope Medical & Surgical Supply, to Park Slope Medical & Surgical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Park Slope Medical & Surgical Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Alyas and Kremarman, through Park Slope Medical & Surgical Supply, and the No-fault Clinics.

1353. On information and belief, the conduct of Defendants Bener Wholesale, Deimos Distributors, Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5, John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Alyas and Kremarman, through Park Slope Medical & Surgical Supply, to obtain fraudulently inflated payments from Plaintiffs, among others.

1354. On information and belief, Defendants Bener Wholesale, Deimos Distributors, Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5, John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1355. On information and belief, the conduct of Defendants Bener Wholesale, Deimos Distributors, Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5, John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Park Slope Medical & Surgical Supply in an amount to be determined at trial, but in no event less than $613,000.00.

1356. On information and belief, Defendants Bener Wholesale, Deimos Distributors, Excell Plus, MDDS Wholesale, Riviera Wholesale, Yuzovitskiy, G. Groysman, John Doe 2, Litvinova, John Doe 5, John Does 9 through 20's extensive fraudulent conduct demonstrates a

high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1357. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

### ONE HUNDRED THIRTEENTH CLAIM FOR RELIEF

### AGAINST ARKADY BULOCHNIKOV, ROPA, INC., JOHN DOE 6, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1358. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### <u>THE RICO ENTERPRISE</u>

1359. At all times relevant herein, Prima Medical Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1360. From, in or about 2007 through the date of the filing of this Complaint, Defendants Bulochnikov, Ropa, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Prima Medical Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1361. At all relevant times mentioned herein, Defendants Bulochnikov, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Prima

Medical Supply enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1362.  On information and belief, Defendants Ropa, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Ropa, and one or more of the ABC Corporations furnished documents that Bulochnikov required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1363.  On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by John Doe 6 and one or more of the John Does 9 through 20, through Ropa and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1364.  The racketeering acts set forth herein were carried out on a continued basis over a more than four-year period, were related and similar and were committed as part of Defendants Bulochnikov, Ropa, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or

orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1365. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Prima Medical Supply continues to pursue collection on the fraudulent billing to the present day.

1366. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Bulochnikov, with the knowledge and intent of Defendants Ropa, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Prima Medical Supply enterprise based upon materially false and misleading information.

1367. Through the Prima Medical Supply enterprise, Bulochnikov submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Bulochnikov, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Bulochnikov, Ropa, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Prima Medical Supply enterprise through the filing of this Complaint.

1368. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Bulochnikov, in furtherance of the scheme as well as the specific misrepresentations identified

for each of the mailings.

1369. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1370. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1371. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $94,000.00 the exact amount to be determined at trial.

1372. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Bulochnikov, Ropa, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### ONE HUNDRED FOURTEENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS PRIMA MEDICAL SUPPLY, INC. AND ARKADY BULOCHNIKOV

### (Common Law Fraud)

1373. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1374. Defendants Bulochnikov and Prima Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate

Indemnity Company and Northbrook Indemnity Company for payment.

1375. On information and belief, each and every bill and supporting documentation submitted by Defendants Bulochnikov and Prima Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1376. On information and belief, Bulochnikov and Prima Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Prima Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic

devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Bulochnikov, through Prima Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Bulochnikov, through Prima Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1377. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Prima Medical Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1378. Defendants Bulochnikov and Prima Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1379. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Bulochnikov and Prima Medical Supply's acts of fraud and deception.

1380. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Prima Medical Supply's claims for No-

fault insurance benefits submitted in connection therewith.

1381. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Bulochnikov and Prima Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1382. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $94,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## ONE HUNDRED FIFTEENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS PRIMA MEDICAL SUPPLY, INC. AND ARKADY BULOCHNIKOV

#### (Unjust Enrichment)

1383. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1384. By reason of their wrongdoing, Defendants Bulochnikov and Prima Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company and Northbrook Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1385. Plaintiffs are therefore entitled to restitution from Defendants Bulochnikov and Prima Medical Supply in the amount by which they have been unjustly enriched.

1386. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $94,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED SIXTEENTHCLAIM FOR RELIEF

## AGAINST DEFENDANTS ROPA, INC., JOHN DOE 6, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1387. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1388. On information and belief, Defendants Ropa, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company and Northbrook Indemnity Company by Defendants Bulochnikov and Prima Medical Supply.

1389. On information and belief, the acts taken by Defendants Ropa, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Bulochnikov and Prima Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Bulochnikov and Prima Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking

back a portion of the amounts paid by Bulochnikov, through Prima Medical Supply, to Prima Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Prima Medical Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Bulochnikov, through Prima Medical Supply, and the No-fault Clinics.

1390. On information and belief, the conduct of Defendants Ropa, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Bulochnikov through Prima Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

1391. On information and belief, Defendants Ropa, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1392. On information and belief, the conduct of Defendants Ropa, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company,

Allstate Indemnity Company and Northbrook Indemnity Company to pay money based upon the fraudulent charges submitted through Prima Medical Supply in an amount to be determined at trial, but in no event less than $94,000.00.

1393.  On information and belief, Defendants Ropa, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1394.  By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED SEVENTEENTH CLAIM FOR RELIEF

### AGAINST IGOR LADANOV, ARTEM YURYEV, DELAZOOM, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 1, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1395.  The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

1396.  At all times relevant herein, Promed Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1397.  From, in or about 2009 through the date of the filing of this Complaint, Defendants Ladanov, Yuryev, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Promed Supply enterprise through a pattern of

racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1398. At all relevant times mentioned herein, Defendants Ladanov and Yuryev, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Yuryev enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiff Allstate Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1399. On information and belief, Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Delazoom, and one or more of the ABC Corporations furnished documents that Ladanov and Yuryev required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1400. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Yuzovitskiy, G. Groysman and one or more of the John Does 9 through 20, through Defendant Delazoom and one or more of the ABC

Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1401. The racketeering acts set forth herein were carried out on a continued basis over more than a yearlong period, were related and similar and were committed as part of Defendants Ladanov, Yuryev, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1402. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Promed Supply continues to pursue collection on the fraudulent billing to the present day.

1403. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Ladanov and Yuryev, with the knowledge and intent of Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Promed Supply enterprise based upon materially false and misleading information.

1404. Through the Promed Supply enterprise, Defendants Ladanov and Yuryev submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills

398

and supporting documents that were sent by Defendants Ladanov and Yuryev, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Ladanov and Yuryev, Delazoom, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Promed Supply enterprise through the filing of this Complaint.

1405. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Ladanov and Yuryev, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1406. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1407. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1408. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiff Allstate Insurance Company has been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $46,000.00, the exact amount to be determined at trial.

1409. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Ladanov, Yuryev, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally,

three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## ONE HUNDRED EIGHTEENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS PROMED SUPPLY, INC., IGOR LADANOV AND ARTEM YURYEV

### (Common Law Fraud)

1410.   The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1411. Defendants   Promed    Supply,    Ladanov    and    Yuryev    made    material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company for payment.

1412.   On information and belief, each and every bill and supporting documentation submitted by Defendants Promed Supply, Ladanov and Yuryev to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1413.   On information and belief, Defendants Promed Supply, Ladanov and Yuryev intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of

400

the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Promed Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Ladanov and Yuryev, through Promed Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Ladanov and Yuryev, through Promed Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1414. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Promed Supply's claims under the No-fault Law. Specific examples of the billing

fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1415. Defendants Ladanov, Yuryev and Promed Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1416. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Ladanov, Yuryev and Promed Supply's acts of fraud and deception.

1417. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Promed Supply's claims for No-fault insurance benefits submitted in connection therewith.

1418. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Ladanov, Yuryev and Promed Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1419. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $46,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## ONE HUNDRED NINETEENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS PROMED SUPPLY, INC., IGOR LADANOV AND ARTEM YURYEV

### (Unjust Enrichment)

1420. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1421. By reason of their wrongdoing, Defendants Ladanov, Yuryev and Promed Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1422. Plaintiffs are therefore entitled to restitution from Defendants Ladanov, Yuryev and Promed Supply in the amount by which they have been unjustly enriched.

1423. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $46,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED TWENTIETH CLAIM FOR RELIEF

## AGAINST DEFENDANTS DELAZOOM, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 1, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1424. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1425. On information and belief, Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company by Defendants Ladanov, Yuryev and Promed Supply.

1426. On information and belief, the acts taken by Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Ladanov, Yuryev and Promed Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Ladanov, Yuryev and Promed Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendants Ladanov and Yuryev, through Promed Supply, to Promed Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Promed Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Ladanov and Yuryev, through Promed Supply, and the No-fault Clinics.

1427. On information and belief, the conduct of Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of

the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Ladanov and Yuryev through Promed Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

1428. On information and belief, Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1429. On information and belief, the conduct of Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Promed Supply in an amount to be determined at trial, but in no event less than $46,000.00.

1430. On information and belief, Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1431. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED TWENTY-FIRST CLAIM FOR RELIEF

## AGAINST VLADIMIR KHMELNITSKI, VIKTOR SEMERIK, DELAZOOM, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 1, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1432. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

1433. At all times relevant herein, Pro-Vek Plus was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1434. From, in or about 2009 through the date of the filing of this Complaint, Defendants Khmelnitski, Semerik, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Pro-Vek Plus enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1435. At all relevant times mentioned herein, Defendants Khmelnitski and Semerik, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Pro-Vek Plus enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty

Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1436. On information and belief, Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, and one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Delazoom, and one or more of the ABC Corporations 1 through 20 furnished documents that Defendants Khmelnitski and Semerik required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1437. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Yuzovitskiy, G. Groysman, John Doe 1 and one or more of the John Does 9 through 20, through Defendants Delazoom and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1438. The racketeering acts set forth herein were carried out on a continued basis over a more than two-year period, were related and similar and were committed as part of Defendants Khmelnitski, Semerik, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not

407

stopped, such acts will continue into the future.

1439. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Pro-Vek Plus continues to pursue collection on the fraudulent billing to the present day.

1440. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Khmelnitski and Semerik, with the knowledge and intent of Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Pro-Vek Plus enterprise based upon materially false and misleading information.

1441. Through the Pro-Vek Plus enterprise, Defendants Khmelnitski and Semerik submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Khmelnitski and Semerik, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Khmelnitski, Semerik, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Pro-Vek Plus enterprise through the filing of this Complaint.

1442. A representative sample of predicate acts is set forth in the accompanying

Appendix, which identifies the nature and date of mailings that were made by Defendants Khmelnitski and Semerik, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1443.  Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1444.  Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1445.  By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $183,000.00, the exact amount to be determined at trial.

1446.  Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Khmelnitski, Semerik, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**ONE HUNDRED TWENTY-SECOND CLAIM FOR RELIEF**

**AGAINST DEFENDANTS PRO-VEK PLUS, INC., VLADIMIR KHMELNITSKI AND VIKTOR SEMERIK**

**(Common Law Fraud)**

1447.  The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1448. Defendants Khmelnitski, Semerik and Pro-Vek Plus made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company for payment.

1449. On information and belief, each and every bill and supporting documentation submitted by Defendants Khmelnitski, Semerik and Pro-Vek Plus to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1450. On information and belief, Defendants Khmelnitski, Semerik and Pro-Vek Plus intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Pro-Vek Plus was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

410

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Khmelnitski and Semerik, through Pro-Vek Plus, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Khmelnitski and Semerik, through Pro-Vek Plus, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1451. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Pro-Vek Plus' claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1452. Defendants Khmelnitski, Semerik and Pro-Vek Plus knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1453. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result

of Defendants Khmelnitski, Semerik and Pro-Vek Plus's acts of fraud and deception.

1454. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Pro-Vek Plus's claims for No-fault insurance benefits submitted in connection therewith.

1455. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Khmelnitski, Semerik and Pro-Vek Plus evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1456. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $183,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

### ONE HUNDRED TWENTY-THIRD CLAIM FOR RELIEF

### AGAINST DEFENDANTS PRO-VEK PLUS, INC., VLADIMIR KHMELNITSKI AND VIKTOR SEMERIK

### (Unjust Enrichment)

1457. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1458. By reason of their wrongdoing, Defendants Khmelnitski, Semerik and Pro-Vek Plus have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company that are the result

of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1459. Plaintiffs are therefore entitled to restitution from Defendants Khmelnitski, Semerik and Pro-Vek Plus in the amount by which they have been unjustly enriched.

1460. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $183,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED TWENTY-FOURTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS DELAZOOM, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 1, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

#### (Aiding and Abetting)

1461. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1462. On information and belief, Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company by Defendants Khmelnitski, Semerik and Pro-Vek Plus.

1463. On information and belief, the acts taken by Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more

of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Khmelnitski, Semerik and Pro-Vek Plus purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Khmelnitski, Semerik and Pro-Vek Plus could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendants Khmelnitski and Semerik, through Pro-Vek Plus, to Pro-Vek Plus to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Pro-Vek Plus; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Khmelnitski and Semerik, through Pro-Vek Plus, and the No-fault Clinics.

1464. On information and belief, the conduct of Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Khmelnitski and Semerik through Pro-Vek Plus to obtain fraudulently inflated payments from Plaintiffs, among others.

1465. On information and belief, Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce

Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1466. On information and belief, the conduct of Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company to pay money based upon the fraudulent charges submitted through Pro-Vek Plus in an amount to be determined at trial, but in no event less than $183,000.00.

1467. On information and belief, Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1468. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED TWENTY-FIFTH CLAIM FOR RELIEF

## AGAINST YURY GROISMAN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1469. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

1470. At all times relevant herein, Reliable Supply of NY was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18

U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1471. From, in or about 2008 through the date of the filing of this Complaint, Defendants Groisman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Reliable Supply of NY enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1472. At all relevant times mentioned herein, Defendants Groisman, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Reliable Supply of NY enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1473. On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Groisman required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for

416

medical supplies.

1474.  On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 9 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1475.  The racketeering acts set forth herein were carried out on a continued basis over a more than three-year period, were related and similar and were committed as part of Defendants Groisman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1476.  On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Reliable Supply of NY continues to pursue collection on the fraudulent billing to the present day.

1477.  As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Groisman, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341.  The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Reliable Supply of NY enterprise based upon materially false and misleading information.

1478.  Through the Reliable Supply of NY enterprise, Defendant Groisman submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were

purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Groisman, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Groisman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Reliable Supply of NY enterprise through the filing of this Complaint.

1479. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Groisman, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1480. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1481. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1482. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $38,000.00, the exact amount to be determined at trial.

1483. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Groisman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs

of this lawsuit and reasonable attorneys' fees.

## ONE HUNDRED TWENTY-SIXTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS RELIABLE SUPPLY OF NY, INC. AND YURY GROISMAN

### (Common Law Fraud)

1484. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1485. Defendants Groisman and Reliable Supply of NY made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company for payment.

1486. On information and belief, each and every bill and supporting documentation submitted by Defendants Groisman and Reliable Supply of NY to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1487. On information and belief, Defendants Groisman and Reliable Supply of NY intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Reliable Supply

of NY was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendant Groisman, through Reliable Supply of NY, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Groisman, through Reliable Supply of NY, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1488. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Reliable Supply of NY's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1489. Defendants Groisman and Reliable Supply of NY knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1490. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material

misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Groisman and Reliable Supply of NY's acts of fraud and deception.

1491. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Reliable Supply of NY's claims for No-fault insurance benefits submitted in connection therewith.

1492. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Groisman and Reliable Supply of NY evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1493. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $38,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## ONE HUNDRED TWENTY-SEVENTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS RELIABLE SUPPLY OF NY, INC. AND YURY GROISMAN

### (Unjust Enrichment)

1494. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1495. By reason of their wrongdoing, Defendants Groisman and Reliable Supply of NY have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property &

Casualty Insurance Company and Allstate Fire & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1496. Plaintiffs are therefore entitled to restitution from Defendants Groisman and Reliable Supply of NY in the amount by which they have been unjustly enriched.

1497. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $38,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED TWENTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1498. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1499. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company by Defendants Groisman and Reliable Supply of NY.

1500. On information and belief, the acts taken by one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale

invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Groisman and Reliable Supply of NY purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Groisman and Reliable Supply of NY could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Groisman, through Reliable Supply of NY, to Reliable Supply of NY to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Reliable Supply of NY; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Groisman, through Reliable Supply of NY, and the No-fault Clinics.

1501. On information and belief, the conduct of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Groisman through Reliable Supply of NY to obtain fraudulently inflated payments from Plaintiffs, among others.

1502. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a

much lower rate, because they sought to continue profiting through the fraudulent scheme.

1503. On information and belief, the conduct of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Reliable Supply of NY in an amount to be determined at trial, but in no event less than $38,000.00.

1504. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1505. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED TWENTY-NINTH CLAIM FOR RELIEF

### AGAINST YEFIM KLIKSHTEYN, CHESTERON, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1506. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1507. At all times relevant herein, Right Solution Medical Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1508. From, in or about 2009 through the date of the filing of this Complaint, Defendants Klikshteyn, Chesteron, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Right Solution Medical Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1509. At all relevant times mentioned herein, Defendant Klikshteyn, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Right Solution Medical Supply enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1510. On information and belief, Defendants Chesteron, and one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Chesteron, and one or more of the ABC Corporations furnished documents that Klikshteyn required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims,

including fictitious wholesale invoices for medical supplies.

1511. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Yuzovitskiy, G. Groysman and one or more of the John Does 9 through 20, through Defendant Chesteron and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1512. The racketeering acts set forth herein were carried out on a continued basis over a more than two-year period, were related and similar and were committed as part of Defendants Klikshteyn, Chesteron, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1513. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Right Solution Medical Supply continues to pursue collection on the fraudulent billing to the present day.

1514. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Klikshteyn, with the knowledge and intent of Defendants Chesteron, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Right Solution Medical Supply enterprise based upon materially false and misleading information.

426

1515. Through the Right Solution Medical Supply enterprise, Defendant Klikshteyn submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Klikshteyn, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Klikshteyn, Chesteron, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Right Solution Medical Supply enterprise through the filing of this Complaint.

1516. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Klikshteyn, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1517. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1518. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1519. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $357,000.00, the exact amount to be determined at trial.

1520. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Klikshteyn, Chesteron, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## ONE HUNDRED THIRTIETH CLAIM FOR RELIEF

## AGAINST DEFENDANTS RIGHT SOLUTION MEDICAL SUPPLY, INC. AND YEFIM KLIKSHTEYN

### (Common Law Fraud)

1521. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1522. Defendants Klikshteyn and Right Solution Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company for payment.

1523. On information and belief, each and every bill and supporting documentation submitted by Defendants Klikshteyn and Right Solution Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1524. On information and belief, Defendants Klikshteyn and Right Solution Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills,

prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Right Solution Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Klikshteyn, through Right Solution Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be

429

generically described on the prescriptions, all of which was designed to permit Defendant Klikshteyn, through Right Solution Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1525. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Right Solution Medical Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1526. Defendants Klikshteyn and Right Solution Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1527. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Klikshteyn and Right Solution Medical Supply's acts of fraud and deception.

1528. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Right Solution Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

1529. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Klikshteyn and Right Solution Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1530. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property

in an amount believed to be in excess of $357,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## ONE HUNDRED THIRTY-FIRST CLAIM FOR RELIEF

## AGAINST DEFENDANTS RIGHT SOLUTION MEDICAL SUPPLY, INC. AND YEFIM KLIKSHTEYN

### (Unjust Enrichment)

1531. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1532. By reason of their wrongdoing, Defendants Klikshteyn and Right Solution Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1533. Plaintiffs are therefore entitled to restitution from Defendants Klikshteyn and Right Solution Medical Supply in the amount by which they have been unjustly enriched.

1534. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $357,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED THIRTY-SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANTS CHESTERON, INC., ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1535. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1536. On information and belief, Defendants Chesteron, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company by Defendants Klikshteyn and Right Solution Medical Supply.

1537. On information and belief, the acts taken by Defendants Chesteron, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Klikshteyn and Right Solution Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Klikshteyn and Right Solution Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Klikshteyn, through Right Solution Medical Supply, to Right Solution Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale

costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Right Solution Medical Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Klikshteyn, through Right Solution Medical Supply, and the No-fault Clinics.

1538.  On information and belief, the conduct of Defendants Chesteron, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendant Klikshteyn through Right Solution Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

1539.  On information and belief, Defendants Chesteron, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1540.  On information and belief, the conduct of Defendants Chesteron, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Northbrook Indemnity Company to pay money based upon the fraudulent charges submitted through Right Solution Medical Supply in an amount to be determined at trial, but in no event less than $357,000.00.

1541.  On information and belief, Defendants Chesteron, one or more of the ABC

Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1542. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED THIRTY-THIRDCLAIM FOR RELIEF

### AGAINST MARIYA GOMELSKAYA, IGOR SHTURMAN, FRAZIER TRADING COMPANY, INC., VLADISLAV AGUVAYEV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1543. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1544. At all times relevant herein, Trimed Medical Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1545. From at least 2006 through the date of the filing of this Complaint, Defendants Gomelskaya, Shturman, Frazier Trading Company, Aguvayev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Trimed Medical Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1546.  At all relevant times mentioned herein, Defendants Gomelskaya and Shturman, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Trimed Medical Supply enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1547.  On information and belief, Defendants Frazier Trading Company, Aguvayev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint.   One or more of the ABC Corporations furnished documents that Defendants Gomelskaya and Shturman required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1548.  On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Aguvayev and one or more of the John Does 9 through 20, through Frazier Trading and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1549.  The racketeering acts set forth herein were carried out on a continued basis over a more than six-year period, were related and similar and were committed as part of Defendants

Gomelskaya, Shturman, Frazier Trading Company, Aguvayev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1550. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Trimed Medical Supply continues to pursue collection on the fraudulent billing to the present day.

1551. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Gomelskaya and Shturman, with the knowledge and intent of Defendants Frazier Trading Company, Aguvayev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Trimed Medical Supply enterprise based upon materially false and misleading information.

1552. Through the Trimed Medical Supply enterprise, Gomelskaya and Shturman submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Gomelskaya and Shturman, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Gomelskaya, Shturman, Frazier Trading Company, Aguvayev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending

from at least 2006 through the filing of this Complaint.

1553. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Gomelskaya and Shturman, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1554. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1555. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

1556. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $574,000.00, the exact amount to be determined at trial.

1557. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Gomelskaya, Shturman, Frazier Trading Company, Aguvayev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## ONE HUNDRED THIRTY-FOURTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS TRIMED MEDICAL SUPPLY, INC., MARIYA GOMELSKAYA AND IGOR SHTURMAN

### (Common Law Fraud)

1558. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1559. Defendants Gomelskaya, Shturman and Trimed Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Deerbrook Insurance Company for payment.

1560. On information and belief, each and every bill and supporting documentation submitted by Defendants Gomelskaya, Shturman and Trimed Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1561. On information and belief, Gomelskaya, Shturman and Trimed Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault

438

Claimants;

- False and misleading statements as to the amounts Trimed Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Gomelskaya and Shturman, through Trimed Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Shturman and Gomelskaya, through Trimed Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1562. The foregoing was intended to deceive and mislead Plaintiffs into paying

Defendant Trimed Medical Supply's claims under the No-fault Law. Specific examples of the

billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1563. Defendants Gomelskaya, Shturman and Trimed Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1564. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Gomelskaya, Shturman and Trimed Medical Supply's acts of fraud and deception.

1565. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Trimed Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

1566. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Gomelskaya, Shturman and Trimed Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1567. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Deerbrook Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $574,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## ONE HUNDRED THIRTY-FIFTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS TRIMED MEDICAL SUPPLY, INC., MARIYA GOMELSKAYA AND IGOR SHTURMAN

### (Unjust Enrichment)

1568. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1569. By reason of their wrongdoing, Defendants Gomelskaya, Shturman and Trimed Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Deerbrook Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1570. Plaintiffs are therefore entitled to restitution from Defendants Gomelskaya, Shturman and Trimed Medical Supply in the amount by which they have been unjustly enriched.

1571. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Deerbrook Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $57,4000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED THIRTY-SIXTH FOR RELIEF

## AGAINST DEFENDANTS FRAZIER TRADING COMPANY, INC., VLADISLAV AGUVAYEV, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1572. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1573. On information and belief, Defendants Frazier Trading Company, Aguvayev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Deerbrook Insurance Company by Defendants Gomelskaya, Shturman and Trimed Medical Supply.

1574. On information and belief, the acts taken by Defendants Frazier Trading Company, Aguvayev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Gomelskaya, Shturman and Trimed Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Gomelskaya, Shturman and Trimed Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendants Gomelskaya and Shturman, through Trimed Medical Supply, to Trimed Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly

creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Trimed Medical Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Gomelskaya and Shturman, through Trimed Medical Supply, and the No-fault Clinics.

1575. On information and belief, the conduct of Defendants Frazier Trading Company, Aguvayev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Gomelskaya and Shturman through Trimed Medical Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

1576. On information and belief, Defendants Frazier Trading Company, Aguvayev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1577. On information and belief, the conduct of Defendants Frazier Trading Company, Aguvayev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Deerbrook Insurance Company to pay money based upon the fraudulent charges submitted

through Trimed Medical Supply in an amount to be determined at trial, but in no event less than $574,000.00.

1578. On information and belief, Defendants Frazier Trading Company, Aguvayev, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1579. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED THIRTY-SEVENTH CLAIM FOR RELIEF

## AGAINST ILYA MUGERMAN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

## (RICO, pursuant to 18 U.S.C § 1962(c))

1580. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1581. At all times relevant herein, Unlimited Products was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1582. From, in or about 2008 through the date of the filing of this Complaint, Defendants Mugerman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Unlimited Products enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which

are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1583. At all relevant times mentioned herein, Defendant Mugerman, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Unlimited Products enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1584. On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Mugerman required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1585. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 9 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1586. The racketeering acts set forth herein were carried out on a continued basis over a more than six-year period, were related and similar and were committed as part of Defendants Mugerman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1587. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Unlimited Products continues to pursue collection on the fraudulent billing to the present day.

1588. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Mugerman, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Unlimited Products enterprise based upon materially false and misleading information.

1589. Through the Unlimited Products enterprise, Defendant Mugerman submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Mugerman, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of

mail fraud, extending from the formation of the Unlimited Products enterprise through the filing of this Complaint.

1590. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Mugerman, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1591. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1592. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1593. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $386,000.00, the exact amount to be determined at trial.

1594. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Mugerman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## ONE HUNDRED THIRTY-EIGHTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS UNLIMITED PRODUCTS, INC. AND ILYA MUGERMAN

### (Common Law Fraud)

1595. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1596. Defendants Mugerman and Unlimited Products made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Northbrook Indemnity Company and Allstate Property & Casualty Insurance Company for payment.

1597. On information and belief, each and every bill and supporting documentation submitted by Defendants Mugerman and Unlimited Products to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1598. On information and belief, Mugerman and Unlimited Products intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Unlimited

Products was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendant Mugerman, through Unlimited Products, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Mugerman, through Unlimited Products, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1599. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Unlimited Products' claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1600. Defendants Mugerman and Unlimited Products knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1601. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material

misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Mugerman and Unlimited Products' acts of fraud and deception.

1602. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Unlimited Products' claims for No-fault insurance benefits submitted in connection therewith.

1603. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Mugerman and Unlimited Products evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1604. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Northbrook Indemnity Company and Allstate Property & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $386,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

### ONE HUNDRED THIRTY-NINTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS UNLIMITED PRODUCTS, INC. AND ILYA MUGERMAN

### (Unjust Enrichment)

1605. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1606. By reason of their wrongdoing, Defendants Mugerman and Unlimited Products have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property &

Casualty Insurance Company, Allstate New Jersey Insurance Company, Northbrook Indemnity Company and Allstate Property & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1607. Plaintiffs are therefore entitled to restitution from Defendants Mugerman and Unlimited Products in the amount by which they have been unjustly enriched.

1608. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Northbrook Indemnity Company and Allstate Property & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $386,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED FORTIETH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1609. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1610. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Northbrook Indemnity Company and Allstate Property & Casualty Insurance Company by Defendants Mugerman and Unlimited Products.

1611. On information and belief, the acts taken by one or more of the Defendant ABC

451

Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Mugerman and Unlimited Products purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Mugerman and Unlimited Products could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Mugerman, through Unlimited Products, to Unlimited Products to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Unlimited Products; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Mugerman, through Unlimited Products, and the No-fault Clinics.

1612. On information and belief, the conduct of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Mugerman through Unlimited Products to obtain fraudulently inflated payments from Plaintiffs, among others.

1613. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 aided and abetted the

fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1614. On information and belief, the conduct of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Northbrook Indemnity Company and Allstate Property & Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Unlimited Products in an amount to be determined at trial, but in no event less than $386,000.00.

1615. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1616. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED FORTY-FIRST CLAIM FOR RELIEF

### AGAINST ALEXANDER AFANASYEV, BELA RUD, VADIM VINOKOUR, DENIS ZAGLADKO, DELAZOOM, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 1, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1617. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1618. At all times relevant herein, Vespa Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1619. From, in or about 2008 through the date of the filing of this Complaint, Defendants Afanasyev, Rud, Vinokour, Zagladko, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Vespa Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1620. At all relevant times mentioned herein, Defendants Afanasyev, Rud, Vinokour, Zagladko, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Vespa Supply enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1621. On information and belief, Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic

devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Delazoom, and one or more of the ABC Corporations furnished documents that Defendants Afanasyev, Rud, Vinokour, Zagladko required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1622. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Yuzovitskiy, G. Groysman, John Doe 1 and one or more of the John Does 9 through 20, through Defendants Delazoom and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1623. The racketeering acts set forth herein were carried out on a continued basis over a more than three-year period, were related and similar and were committed as part of Defendants Afanasyev, Rud, Vinokour, Zagladko, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1624. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Vespa Supply continues to pursue collection on the fraudulent billing to the present day.

1625. As a part of the pattern of racketeering activity and for the purpose of executing

the scheme and artifice to defraud as described above, Defendants Afanasyev, Rud, Vinokour, Zagladko, with the knowledge and intent of Defendants Yuzovitskiy, Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Vespa Supply enterprise based upon materially false and misleading information.

1626. Through the Vespa Supply enterprise, Afanasyev, Rud, Vinokour and Zagladko, submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Afanasyev, Rud, Vinokour and Zagladko, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Afanasyev, Rud, Vinokour, Zagladko, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Vespa Supply enterprise through the filing of this Complaint.

1627. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Afanasyev, Rud, Vinokour and Zagladko, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1628. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1629. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

1630. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $390,000.00, the exact amount to be determined at trial.

1631. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Afanasyev, Rud, Vinokour, Zagladko, Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### ONE HUNDRED FORTY-SECOND CLAIM FOR RELIEF

### AGAINST DEFENDANTS VESPA SUPPLY, INC., ALEXANDER AFANASYEV, BELA RUD, VADIM VINOKOUR AND DENIS ZAGLADKO

#### (Common Law Fraud)

1632. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1633. Defendants Afanasyev, Rud, Vinokour, Zagladko and Vespa Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Fire & Casualty Insurance Company for payment.

1634. On information and belief, each and every bill and supporting documentation submitted by Defendants Afanasyev, Rud, Vinokour, Zagladko and Vespa Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1635. On information and belief, Defendants Afanasyev, Rud, Vinokour, Zagladko and Vespa Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Vespa Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges

submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Afanasyev, Rud, Vinokour and Zagladko, through Vespa Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Afanasyev, Rud, Vinokour and Zagladko, through Vespa Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1636. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Vespa Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1637. Defendants Afanasyev, Rud, Vinokour, Zagladko and Vespa Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1638. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Afanasyev, Rud, Vinokour, Zagladko and Vespa Supply's acts of fraud and deception.

1639. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Vespa Supply's claims for No-fault

insurance benefits submitted in connection therewith.

1640. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Afanasyev, Rud, Vinokour, Zagladko and Vespa Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1641. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $390,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## ONE HUNDRED FORTY-THIRD CLAIM FOR RELIEF

## AGAINST DEFENDANTS VESPA SUPPLY, INC., ALEXANDER AFANASYEV, BELA RUD, VADIM VINOKOUR AND DENIS ZAGLADKO

### (Unjust Enrichment)

1642. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1643. By reason of their wrongdoing, Defendants Afanasyev, Rud, Vinokour, Zagladko and Vespa Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Fire & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1644. Plaintiffs are therefore entitled to restitution from Defendants Afanasyev, Rud,

Vinokour, Zagladko and Vespa Supply in the amount by which they have been unjustly enriched.

1645. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $390,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED FORTY-FOURTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS DELAZOOM, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 1, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1646. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1647. On information and belief, Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Fire & Casualty Insurance Company by Defendants Afanasyev, Rud, Vinokour, Zagladko and Vespa Supply.

1648. On information and belief, the acts taken by Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information

regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Afanasyev, Rud, Vinokour, Zagladko and Vespa Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Afanasyev, Rud, Vinokour, Zagladko and Vespa Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendants Afanasyev, Rud, Vinokour and Zagladko, through Vespa Supply, to Vespa Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Vespa Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Afanasyev, Rud, Vinokour and Zagladko, through Vespa Supply, and the No-fault Clinics.

1649. On information and belief, the conduct of Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Afanasyev, Rud, Vinokour and Zagladko through Vespa Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

1650. On information and belief, Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce

Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1651. On information and belief, the conduct of Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Fire & Casualty Insurance Company to pay money based upon the fraudulent charges submitted through Vespa Supply in an amount to be determined at trial, but in no event less than $390,000.00.

1652. On information and belief, Defendants Delazoom, Yuzovitskiy, G. Groysman, John Doe 1, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1653. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED FORTY-FIFTH CLAIM FOR RELIEF

### AGAINST ALEKSANDR AFANASYEV, NICHOLAS LESKO, BELA RUD, VADIM VINOKOUR, DENIS ZAGLADKO, GALASA WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1654. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1655. At all times relevant herein, Viss Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1656. From, in or about 2008 through the date of the filing of this Complaint, Defendants Afanasyev, Lesko, Rud, Vinokour, Zagladko, Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Viss Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1657. At all relevant times mentioned herein, Defendants Afanasyev, Lesko, Rud, Vinokour, Zagladko, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Viss Supply enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1658. On information and belief, Defendants Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including

fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Galasa Wholesale, and one or more of the ABC Corporations furnished documents that Defendants Afanasyev, Lesko, Rud, Vinokour, Zagladko required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1659. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Yuzovitskiy, G. Groysman and one or more of the John Does 9 through 20, through Galasa Wholesale and one or more of the ABC Corporations 1 through 20, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1660. The racketeering acts set forth herein were carried out on a continued basis over a more than three-year period, were related and similar and were committed as part of Defendants Afanasyev, Lesko, Rud, Vinokour, Zagladko, Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1661. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Viss Supply continues to pursue collection on the fraudulent billing to the present day.

1662. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Afanasyev, Lesko, Rud,

465

Vinokour and Zagladko, with the knowledge and intent of Defendants Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Viss Supply enterprise based upon materially false and misleading information.

1663. Through the Viss Supply enterprise, Defendants Afanasyev, Lesko, Rud, Vinokour and Zagladko submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Afanasyev, Lesko, Rud, Vinokour, Zagladko, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Afanasyev, Lesko, Rud, Vinokour, Zagladko, Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the Viss Supply enterprise through the filing of this Complaint.

1664. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Afanasyev, Lesko, Rud, Vinokour and Zagladko, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1665. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1666. Each submission of a fraudulent claim constitutes a pattern of racketeering

466

activity within the meaning of 18 U.S.C. § 1961(5).

## Damages

1667. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $127,000.00, the exact amount to be determined at trial.

1668. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Afanasyev, Lesko, Rud, Vinokour, Zagladko, Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## ONE HUNDRED FORTY-SIXTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS VISS SUPPLY, INC., ALEKSANDR AFANASYEV, NICHOLAS LESKO, BELA RUD, VADIM VINOKOUR AND DENIS ZAGLADKO

### (Common Law Fraud)

1669. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1670. Defendants Afanasyev, Lesko, Rud, Vinokour, Zagladko and Viss Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity Company for payment.

1671. On information and belief, each and every bill and supporting documentation submitted by Defendants Afanasyev, Lesko, Rud, Vinokour, Zagladko and Viss Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic

devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1672. On information and belief, Defendants Afanasyev, Lesko, Rud, Vinokour, Zagladko and Viss Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Viss Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices,

concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Afanasyev, Lesko, Rud, Vinokour, Zagladko, through Viss Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendants Afanasyev, Lesko, Rud, Vinokour, Zagladko, through Viss Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1673. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Viss Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1674. Defendants Afanasyev, Lesko, Rud, Vinokour, Zagladko and Viss Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1675. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Afanasyev, Lesko, Rud, Vinokour, Zagladko and Viss Supply's acts of fraud and deception.

1676. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Viss Supply's claims for No-fault insurance benefits submitted in connection therewith.

1677. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Afanasyev, Lesko, Rud, Vinokour, Zagladko and Viss Supply evinces a high degree of moral

turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1678. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $127,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

### ONE HUNDRED FORTY-SEVENTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS VISS SUPPLY, INC., ALEKSANDR AFANASYEV, NICHOLAS LESKO, BELA RUD, VADIM VINOKOUR AND DENIS ZAGLADKO

### (Unjust Enrichment)

1679. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1680. By reason of their wrongdoing, Defendants Afanasyev, Lesko, Rud, Vinokour, Zagladko and Viss Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1681. Plaintiffs are therefore entitled to restitution from Defendants Afanasyev, Lesko, Rud, Vinokour, Zagladko and Viss Supply in the amount by which they have been unjustly enriched.

1682. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and

Allstate Indemnity have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $127,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED FORTY-EIGHTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS GALASA WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

#### (Aiding and Abetting)

1683. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1684. On information and belief, Defendants Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity by Defendants Lesko, Vinokour, Rud, Afanasyev, Zagladko and Viss Supply.

1685. On information and belief, the acts taken by Defendants Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Lesko, Vinokour, Rud, Afanasyev, Zagladko and Viss Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Lesko, Vinokour, Rud, Afanasyev, Zagladko and Viss

Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendants Lesko, Vinokour, Rud, Afanasyev, Zagladko, through Viss Supply, to Viss Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Viss Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Afanasyev, Lesko, Rud, Vinokour and Zagladko, through Viss Supply, and the No-fault Clinics.

1686. On information and belief, the conduct of Defendants Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Afanasyev, Lesko, Rud, Vinokour and Zagladko through Viss Supply to obtain fraudulently inflated payments from Plaintiffs, among others.

1687. On information and belief, Defendants Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1688. On information and belief, the conduct of Defendants Galasa Wholesale,

Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs A Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Fire & Casualty Insurance Company and Allstate Indemnity to pay money based upon the fraudulent charges submitted through Viss Supply in an amount to be determined at trial, but in no event less than $127,000.00.

1689. On information and belief, Defendants Galasa Wholesale, Yuzovitskiy, G. Groysman, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1690. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED FORTY-NINTH CLAIM FOR RELIEF

### AGAINST IGOR KATS, SVETLANA ZILPER, MDDS WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, LIOUDMILA LATINOVA, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1691. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1692. At all times relevant herein, Vista Surgical Supplies was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1693. From at least 2006 through the date of the filing of this Complaint, Defendants Kats, Zilper, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC

Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the Vista Surgical Supplies enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1694. At all relevant times mentioned herein, Defendants Kats and Zilper, together with others unknown to Plaintiffs, exerted control over and directed the operations of the Vista Surgical Supplies enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1695. On information and belief, Defendants MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, and one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants MDDS Wholesale, and one or more of the ABC Corporations furnished documents that Kats and Zilper required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1696. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants Yuzovitskiy, G. Groysman, Litvinova and one or more of the John Does 9 through 20, through Defendants MDDS and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1697. The racketeering acts set forth herein were carried out on a continued basis over a more than six-year period, were related and similar and were committed as part of Defendants Kats, Zilper, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1698. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as Vista Surgical Supplies continues to pursue collection on the fraudulent billing to the present day.

1699. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendants Kats and Zilper, with the knowledge and intent of Defendants MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the Vista Surgical Supplies enterprise based upon materially false and misleading information.

475

1700. Through the Vista Surgical Supplies enterprise, Kats and Zilper submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Kats and Zilper, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Kats, Zilper, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending at least 2006 through the filing of this Complaint.

1701. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Kats and Zilper, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1702. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1703. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1704. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $403,000.00, the exact amount to be determined at trial.

1705. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Kats, Zilper, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

## ONE HUNDRED FIFTIETH CLAIM FOR RELIEF

### AGAINST DEFENDANTS VISTA SURGICAL SUPPLIES, INC., IGOR KATS AND SVETLANA ZILPER

### (Common Law Fraud)

1706. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1707. Defendants Kats, Zilper and Vista Surgical Supplies made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Deerbrook Insurance Company for payment.

1708. On information and belief, each and every bill and supporting documentation submitted by Defendants Kats, Zilper and Vista Surgical Supplies to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1709. On information and belief, Kats, Zilper and Vista Surgical Supplies intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale

invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts Vista Surgical Supplies was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Kats and Zilper, through Vista Surgical Supplies, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed

478

to permit Defendants Kats and Zilper, through Vista Surgical Supplies, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1710. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant Vista Surgical Supplies' claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1711. Defendants Kats, Zilper and Vista Surgical Supplies knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1712. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Kats, Zilper and Vista Surgical Supplies' acts of fraud and deception.

1713. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant Vista Surgical Supplies' claims for No-fault insurance benefits submitted in connection therewith.

1714. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Kats, Zilper and Vista Surgical Supplies evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1715. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Deerbrook Insurance Company have sustained compensatory damages and been injured in their business and property

in an amount believed to be in excess of $242,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## ONE HUNDRED FIFTY-FIRST CLAIM FOR RELIEF

## AGAINST DEFENDANTS VISTA SURGICAL SUPPLIES, INC., IGOR KATS AND SVETLANA ZILPER

### (Unjust Enrichment)

1716. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1717. By reason of their wrongdoing, Defendants Kats, Zilper and Vista Surgical Supplies have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Deerbrook Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1718. Plaintiffs are therefore entitled to restitution from Defendants Kats, Zilper and Vista Surgical Supplies in the amount by which they have been unjustly enriched.

1719. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Deerbrook Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $242000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED FIFTY-SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANTS MDDS WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, LIOUDMILA LATINOVA, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1720. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1721. On information and belief, Defendants MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Deerbrook Insurance Company by Defendants Kats, Zilper and Vista Surgical Supplies.

1722. On information and belief, the acts taken by Defendants MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Kats, Zilper and Vista Surgical Supplies purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Kats, Zilper and Vista Surgical Supplies could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Kats and Zilper, through Vista Surgical Supplies, to Vista Surgical Supplies to create the

impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through Vista Surgical Supplies; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendants Kats and Zilper, through Vista Surgical Supplies, and the No-fault Clinics.

1723. On information and belief, the conduct of Defendants MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Kats and Svetlana through Vista Surgical Supplies to obtain fraudulently inflated payments from Plaintiffs, among others.

1724. On information and belief, Defendants MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1725. On information and belief, the conduct of Defendants MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate New

Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Deerbrook Insurance Company to pay money based upon the fraudulent charges submitted through Vista Surgical Supplies in an amount to be determined at trial, but in no event less than $242,000.00.

1726. On information and belief, Defendants MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1727. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED FIFTY-THIRD CLAIM FOR RELIEF

### AGAINST IRINA PILYAVSKY, DELAZOOM, INC., FRAZIER TRADING COMPANY, INC., ROPA, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 1, VLADISLAV AGUVAYEV, JOHN DOE 6, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1728. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

1729. At all times relevant herein, We Do Care Medical Supply was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1730. From at least 2006 through the date of the filing of this Complaint, Defendants Pilyavsky, Delazoom, Frazier Trading Company, Ropa, Yuzovitskiy, G. Groysman, John Doe 1, Aguvayev, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the We Do

Care Medical Supply enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1731. At all relevant times mentioned herein, Defendant Pilyavsky, together with others unknown to Plaintiffs, exerted control over and directed the operations of the We Do Care Medical Supply enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1732. On information and belief, Defendants Delazoom, Frazier Trading Company, Ropa, Yuzovitskiy, G. Groysman, John Doe 1, Aguvayev, John Doe 6, and one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Delazoom, Frazier Trading Company, Ropa, and one or more of the ABC Corporations furnished documents that Pilyavsky required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1733. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendants John Doe 1, Yuzovitskiy, G. Groysman,

Aguvayev, John Doe 6 and one or more of the John Does 9 through 20, through Defendants Frazier Trading Company, Delazoom and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to induce payment from Plaintiffs.

### The Pattern of Racketeering Activity
### (Racketeering Acts)

1734. The racketeering acts set forth herein were carried out on a continued basis over a more than six-year period, were related and similar and were committed as part of Defendants Pilyavsky, Delazoom, Frazier Trading Company, Ropa, Yuzovitskiy, G. Groysman, John Doe 1, Aguvayev, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1735. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as We Do Care Medical Supply continues to pursue collection on the fraudulent billing to the present day.

1736. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Pilyavsky, with the knowledge and intent of Defendants Delazoom, Frazier Trading Company, Ropa, Yuzovitskiy, G. Groysman, John Doe 1, Aguvayev, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the We Do Care Medical Supply enterprise based upon materially false and misleading information.

1737. Through the We Do Care Medical Supply enterprise, Defendant Pilyavsky submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices

that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Pilyavsky, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Pilyavsky, Delazoom, Frazier Trading Company, Ropa, Yuzovitskiy, G. Groysman, John Doe 1, Aguvayev, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from at least 2006 through the filing of this Complaint.

1738. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendants Pilyavsky, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1739. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1740. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

### Damages

1741. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Property & Casualty Insurance have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $115,000.00, the exact amount to be determined at trial.

1742. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Pilyavsky, Delazoom, Frazier Trading Company, Ropa, Yuzovitskiy, G. Groysman, John Doe 1,

Aguvayev, John Doe 6, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

### ONE HUNDRED FIFTY-FOURTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS WE DO CARE MEDICAL SUPPLY, INC. AND IRINA PILYAVSKY

### (Common Law Fraud)

1743. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1744. Defendants Pilyavsky and We Do Care Medical Supply made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Deerbrook Insurance Company for payment.

1745. On information and belief, each and every bill and supporting documentation submitted by Defendants Pilyavsky and We Do Care Medical Supply to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1746. On information and belief, Defendant Pilyavsky and We Do Care Medical Supply intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations

and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts We Do Care Medical Supply was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Pilyavsky, through We Do Care Medical Supply, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Pilyavsky, through We Do Care Medical Supply, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit

488

to Plaintiffs and other insurers.

1747. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant We Do Care Medical Supply's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1748. Defendants Pilyavsky and We Do Care Medical Supply knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1749. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Pilyavsky and We Do Care Medical Supply's acts of fraud and deception.

1750. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant We Do Care Medical Supply's claims for No-fault insurance benefits submitted in connection therewith.

1751. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Pilyavsky and We Do Care Medical Supply evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1752. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Deerbrook Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $115,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

## ONE HUNDRED FIFTY-FIFTH CLAIM FOR RELIEF

## AGAINST DEFENDANTS WE DO CARE MEDICAL SUPPLY, INC. AND IRINA PILYAVSKY

### (Unjust Enrichment)

1753. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1754. By reason of their wrongdoing, Defendants Pilyavsky and We Do Care Medical Supply have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Deerbrook Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1755. Plaintiffs are therefore entitled to restitution from Defendants Pilyavsky and We Do Care Medical Supply in the amount by which they have been unjustly enriched.

1756. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Deerbrook Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $115,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED FIFTY-SIXTH FOR RELIEF

## AGAINST DEFENDANTS DELAZOOM, INC., FRAZIER TRADING COMPANY, INC., ROPA, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, JOHN DOE 1, VLADISLAV AGUVAYEV, JOHN DOE 6, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1757. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1758. On information and belief, Defendants Delazoom, Frazier Trading Company, Ropa, Yuzovitskiy, G. Groysman, John Doe 1, Aguvayev, John Doe 6, one or more of the ABC Corporations 1 through 20 and one ore more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Deerbrook Insurance Company by Defendants Pilyavsky and We Do Care Medical Supply.

1759. On information and belief, the acts taken by Defendants Delazoom, Frazier Trading Company, Ropa, Yuzovitskiy, G. Groysman, John Doe 1, Aguvayev, John Doe 6, one or more of the ABC Corporations 1 through 20 and one ore more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Pilyavsky and We Do Care Medical Supply purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Pilyavsky and We Do Care Medical Supply could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Pilyavsky, through We Do

Care Medical Supply, to We Do Care Medical Supply to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through We Do Care Medical Supply; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Pilyavsky, through We Do Care Medical Supply, and the No-fault Clinics.

1760. On information and belief, the conduct of Defendants Delazoom, Frazier Trading Company, Ropa, Yuzovitskiy, G. Groysman, John Doe 1, Aguvayev, John Doe 6, one or more of the ABC Corporations 1 through 20 and one ore more of the John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendant Pilyavsky, through We Do Care Medical Supply, to obtain fraudulently inflated payments from Plaintiffs, among others.

1761. On information and belief, Defendants Delazoom, Frazier Trading Company, Ropa, Yuzovitskiy, Groysman, John Doe 1, Aguvayev, John Doe 6, one or more of the ABC Corporations 1 through 20 and one ore more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1762. On information and belief, the conduct of Defendants Delazoom, Frazier Trading Company, Ropa, Yuzovitskiy, G. Groysman, John Doe 1, Aguvayev, John Doe 6, one or more of the ABC Corporations 1 through 20 and one ore more of the John Does 9 through 20 caused

Plaintiffs Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, Allstate New Jersey Insurance Company, Allstate Fire & Casualty Insurance Company and Deerbrook Insurance Company to pay money based upon the fraudulent charges submitted through We Do Care Medical Supply in an amount to be determined at trial, but in no event less than $115,000.00.

1763. On information and belief, Defendants Delazoom, Frazier Trading Company, Ropa, Yuzovitskiy, Groysman, John Doe 1, Aguvayev, John Doe 6, one or more of the ABC Corporations 1 through 20 and one ore more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1764. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED FIFTY-SEVENTH CLAIM FOR RELIEF

## AGAINST YEFIM KLIKSHTEYN, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (RICO, pursuant to 18 U.S.C § 1962(c))

1765. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

### THE RICO ENTERPRISE

1766. At all times relevant herein, XVV was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1767. From, in or about 2010 through the date of the filing of this Complaint, Defendants Klikshteyn, one or more of the ABC Corporations 1 through 20 and one or more of

the John Does 9 through 20 knowingly conducted and participated in the affairs of the XVV enterprise through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1768. At all relevant times mentioned herein, Defendant Klikshteyn, together with others unknown to Plaintiffs, exerted control over and directed the operations of the XVV enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to Plaintiffs Allstate Insurance Company and Allstate Indemnity Company that were based, in part, on the utilization of fraudulent wholesale invoices.

1769. On information and belief, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. One or more of the ABC Corporations furnished documents that Defendant Klikshteyn required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1770. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by one or more of the John Does 9 through 20, through one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and to

induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1771. The racketeering acts set forth herein were carried out on a continued basis over more than a yearlong, were related and similar and were committed as part of Defendants Klikshteyn, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1772. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as XVV continues to pursue collection on the fraudulent billing to the present day.

1773. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Klikshteyn, with the knowledge and intent of one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the XVV enterprise based upon materially false and misleading information.

1774. Through the XVV enterprise, Defendant Klikshteyn submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendants Klikshteyn, as well as the payments that Plaintiffs made in response to those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Klikshteyn, one or more of the ABC Corporations 1 through 20 and one or

495

more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the XVV enterprise through the filing of this Complaint.

1775. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Klikshteyn, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1776. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1777. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1778. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company and Allstate Indemnity Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $41,000.00, the exact amount to be determined at trial.

1779. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Klikshteyn, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this lawsuit and reasonable attorneys' fees.

**ONE HUNDRED FIFTY-EIGHTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS XVV, INC. AND YEFIM KLIKSHTEYN**

**(Common Law Fraud)**

1780. The allegations of paragraphs 1 through 322 are hereby repeated and realleged as

though fully set forth herein.

1781. Defendants Klikshteyn and XVV made material misrepresentations and/or omitted material statements in submitting No-fault claims to Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Fire & Casualty Insurance Company for payment.

1782. On information and belief, each and every bill and supporting documentation submitted by Defendants Klikshteyn and XVV to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1783. On information and belief, Defendant Klikshteyn and XVV intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts XVV was entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the

actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Klikshteyn, through XVV, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Klikshteyn, through XVV, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1784. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant XVV's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1785. Defendants Klikshteyn and XVV knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1786. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Klikshteyn and XVV's acts of fraud and deception.

1787. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant XVV's claims for No-fault insurance benefits submitted in connection therewith.

1788. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Klikshteyn and XVV evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1789. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $41,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**ONE HUNDRED FIFTY-NINTH CLAIM FOR RELIEF**

**AGAINST DEFENDANTS XVV, INC. AND YEFIM KLIKSHTEYN**

**(Unjust Enrichment)**

1790. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1791. By reason of their wrongdoing, Defendants Klikshteyn and XVV have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Fire & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1792. Plaintiffs are therefore entitled to restitution from Defendants Klikshteyn and XVV in the amount by which they have been unjustly enriched.

1793. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $41,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED SIXTIETH CLAIM FOR RELIEF

## AGAINST DEFENDANTS ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

### (Aiding and Abetting)

1794. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1795. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Fire & Casualty Insurance Company by Defendants Klikshteyn and XVV.

1796. On information and belief, the acts taken by one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Klikshteyn and XVV purportedly provided to No-fault Claimants; (ii) knowingly

providing the fraudulent wholesale invoices so that Defendants Klikshteyn and XVV could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Klikshteyn, through XVV, to XVV to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through XVV; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Klikshteyn, through XVV, and the No-fault Clinics.

1797. On information and belief, the conduct of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 in furtherance of the fraudulent scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Klikshteyn through XVV to obtain fraudulently inflated payments from Plaintiffs, among others.

1798. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1799. On information and belief, the conduct of one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property &

Casualty Insurance Company, Allstate New Jersey Insurance Company and Allstate Fire & Casualty Insurance Company to pay money based upon the fraudulent charges submitted through XVV in an amount to be determined at trial, but in no event less than $41,000.00.

1800. On information and belief, one or more of the Defendant ABC Corporations 1 through 20 and one or more of the Defendant John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1801. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED SIXTY-FIRST CLAIM FOR RELIEF

### AGAINST YEFIM KLIKSHTEYN, BENER WHOLESALE, INC., MDDS WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, LIOUDMILA LATINOVA, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

#### (RICO, pursuant to 18 U.S.C § 1962(c))

1802. The allegations of paragraphs 1 through 323 are hereby repeated and re-alleged as though fully set forth herein.

## THE RICO ENTERPRISE

1803. At all times relevant herein, YKLIK was an "enterprise" that engaged in, or the activities of which affected, interstate commerce, as that term is defined by 18 U.S.C. § 1961(4) and within the meaning of 18 U.S.C. § 1962(c).

1804. From, in or about 2007 through the date of the filing of this Complaint, Defendants Klikshteyn, Bener Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 knowingly conducted and participated in the affairs of the YKLIK enterprise

502

through a pattern of racketeering activity, including the many hundreds of acts of mail fraud described herein and included in the representative list of predicate acts set forth in the Appendix and Compendium of Exhibits accompanying this Complaint, all of which are incorporated by reference. Defendants' conduct constitutes a violation of 18 U.S.C. § 1962(c).

1805. At all relevant times mentioned herein, Defendant Klikshteyn, together with others unknown to Plaintiffs, exerted control over and directed the operations of the YKLIK enterprise, and utilized that control to conduct a pattern of racketeering activity that consisted of creating, submitting and/or causing to be submitted the fraudulent bills and supporting documents to that were based, in part, on the utilization of fraudulent wholesale invoices.

1806. On information and belief, Defendants Bener Wholesale, MDDS Wholesale, Yuzovitskiy, G. Groysman, Litvinova, and one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 participated in the scheme by providing inexpensive DME and/or orthotic devices, to the extent any such items were in fact provided, as well as bogus documentation, including fraudulent wholesale invoices that grossly inflated the purported costs of the DME and/or orthotic devices to facilitate the fraudulent billing alleged in the Complaint. Defendants Bener Wholesale, MDDS Wholesale, and one or more of the ABC Corporations furnished documents that Defendant Klikshteyn required, in furtherance of the scheme to defraud, to obtain payment from Plaintiffs for fraudulent DME and/or orthotic device claims, including fictitious wholesale invoices for medical supplies.

1807. On information and belief, it was both foreseeable and the intended consequence that the wholesale invoices provided by Defendant Yuzovitskiy, G. Groysman, Litvinova and one or more of the John Does 9 through 20, through Defendant Bener Wholesale, MDDS Wholesale and one or more of the ABC Corporations, would be mailed to substantiate fraudulent claims and

to induce payment from Plaintiffs.

## The Pattern of Racketeering Activity
### (Racketeering Acts)

1808. The racketeering acts set forth herein were carried out on a continued basis over a more than six-year period, were related and similar and were committed as part of Defendants Klikshteyn, Bener Wholesale, MDDS Wholesale, Yuzovitskiy, Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's ongoing scheme to fraudulently bill for DME and/or orthotic devices to defraud insurers, and, if not stopped, such acts will continue into the future.

1809. On information and belief, this pattern of racketeering activity poses a specific threat of repetition extending indefinitely into the future, inasmuch as YKLIK continues to pursue collection on the fraudulent billing to the present day.

1810. As a part of the pattern of racketeering activity and for the purpose of executing the scheme and artifice to defraud as described above, Defendant Klikshteyn, with the knowledge and intent of Defendants Bener Wholesale, Yuzovitskiy, G. Groysman, Wholesale, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, caused mailings to be made through the United States Postal Service in violation of 18 U.S.C. § 1341. The mailings were made in furtherance of a scheme or artifice to defraud Plaintiffs and to induce Plaintiffs to issue checks to the YKLIK enterprise based upon materially false and misleading information.

1811. Through the YKLIK enterprise, Klikshteyn submitted hundreds of fraudulent claim forms seeking payment for DME and/or orthotic devices that were purportedly (but not actually) provided to hundreds of No-fault Claimants. The bills and supporting documents that were sent by Defendant Klikshteyn, as well as the payments that Plaintiffs made in response to

those bills, were sent through the United States Postal Service. By virtue of those activities, Defendants Klikshteyn, Bener Wholesale, MDDS Wholesale, Yuzovitskiy, Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 engaged in a continuous series of predicate acts of mail fraud, extending from the formation of the YKLIK enterprise through the filing of this Complaint.

1812. A representative sample of predicate acts is set forth in the accompanying Appendix, which identifies the nature and date of mailings that were made by Defendant Klikshteyn, in furtherance of the scheme as well as the specific misrepresentations identified for each of the mailings.

1813. Mail fraud constitutes racketeering activity as that term is defined in 18 U.S.C. § 1961(1)(B).

1814. Each submission of a fraudulent claim constitutes a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(5).

**Damages**

1815. By reason of the foregoing violation of 18 U.S.C. § 1962(c), Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company and Allstate Fire & Casualty Insurance Company have been injured in their business and property and Plaintiffs have been damaged in the aggregate amount presently in excess of $565,000.00, the exact amount to be determined at trial.

1816. Pursuant to 18 U.S.C. § 1964(c), Plaintiffs are entitled to recover from Defendants Klikshteyn, Bener Wholesale, MDDS Wholesale, Yuzovitskiy, Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20, jointly and severally, three-fold damages sustained by them, together with the costs of this

lawsuit and reasonable attorneys' fees.

## ONE HUNDRED SIXTY-SECOND CLAIM FOR RELIEF

## AGAINST DEFENDANTS YKLIK, INC. AND YEFIM KLIKSHTEYN

### (Common Law Fraud)

1817.  The allegations of paragraphs 1 through 322 are hereby repeated and realleged as though fully set forth herein.

1818.  Defendants Klikshteyn and YKLIK made material misrepresentations and/or omitted material statements in submitting No-fault claims to Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Deerbrook Insurance Company and Allstate Fire & Casualty Insurance Company for payment.

1819.  On information and belief, each and every bill and supporting documentation submitted by Defendants Klikshteyn and YKLIK to Plaintiffs set forth false and fraudulent amounts for reimbursement for DME and/or orthotic devices that they purportedly supplied to No-fault Claimants. The false representations contained therein not only were intended to defraud Plaintiffs but constituted a grave and serious danger to the No-fault Claimants and the consumer public.

1820.  On information and belief, Klikshteyn and YKLIK intentionally, knowingly, fraudulently and with an intent to deceive, submitted bills, prescriptions, wholesale invoices and other documentation that contained false representations of material facts, including, but not limited to, the following fraudulent material misrepresentations and/or omissions of fact:

- False and misleading statements as to the nature, quality and cost of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading statements as to the amounts YKLIK was

entitled to be reimbursed under the No-fault Law;

- With respect to Fee Schedule Items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs that the DME and/or orthotic devices allegedly supplied were in fact the items supplied to the No-fault Claimants;

- With respect to Non-Fee Schedule items, false and misleading statements in the bills and supporting documentation submitted to Plaintiffs misrepresenting that the charges for the DME and/or orthotic devices purportedly supplied did not exceed the lesser of the actual wholesale cost of the medical equipment to the provider, plus 50%; or the usual and customary price charged to the public;

- False and misleading wholesale invoices that greatly inflated the true cost and/or quantity of the DME and/or orthotic devices purportedly supplied to No-fault Claimants;

- False and misleading wholesale invoices that systematically failed to provide a meaningful description of the DME and/or orthotic devices provided (i.e., make and model) and/or additional information that is necessary to determine whether the charges submitted are legitimate;

- False and misleading prescriptions for the DME and/or orthotic devices purportedly supplied to No-fault Claimants, generically describing the item to conceal the type of item being prescribed;

- False and misleading prescriptions for DME and/or orthotic devices, concealing the fact that the DME and/or orthotic devices were prescribed and supplied pursuant to a pre-determined, fraudulent protocol whereby Defendants Klikshteyn, through YKLIK, paid kickbacks to No-fault Clinics to induce the No-fault Clinics to direct their associated physicians and chiropractors to prescribe: (a) large amounts of substantially similar, medically unnecessary DME and/or orthotic devices; (b) DME and/or orthotic devices not covered by the New York State Fee Schedule; and (c) DME and/or orthotic devices that could be generically described on the prescriptions, all of which was designed to permit Defendant Klikshteyn, through YKLIK, to manipulate the payment formulas and their claims submissions in order to maximize the charges that they could submit to Plaintiffs and other insurers.

1821. The foregoing was intended to deceive and mislead Plaintiffs into paying Defendant YKLIK's claims under the No-fault Law. Specific examples of the billing fraud alleged herein are contained in the body of this Complaint as well as the accompanying Compendium of Exhibits.

1822. Defendants Klikshteyn and YKLIK knew the foregoing material misrepresentations to be false when made and nevertheless made these false representations with the intention and purpose of inducing Plaintiffs to rely thereon.

1823. Plaintiffs did in fact reasonably and justifiably rely on the foregoing material misrepresentations and statement of facts, which Plaintiffs were led to believe existed as a result of Defendants Klikshteyn and YKLIK's acts of fraud and deception.

1824. Had Plaintiffs known of the fraudulent content of the bills, prescriptions and delivery receipts, they would not have paid Defendant YKLIK's claims for No-fault insurance benefits submitted in connection therewith.

1825. Furthermore, the far reaching pattern of fraudulent conduct by Defendants Klikshteyn and YKLIK evinces a high degree of moral turpitude and wanton dishonesty, which, as alleged above, has harmed and will continue to harm the public at large, thus entitling Plaintiffs to recovery of exemplary and punitive damages.

1826. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Deerbrook Insurance Company and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $565,000.00, the exact amount to be determined at trial, plus interest, costs, punitive damages and other relief the Court deems just.

**ONE HUNDRED SIXTY-THIRD CLAIM FOR RELIEF**

**AGAINST DEFENDANTS YKLIK, INC. AND YEFIM KLIKSHTEYN**

**(Unjust Enrichment)**

1827. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as

though fully set forth herein.

1828. By reason of their wrongdoing, Defendants Klikshteyn and YKLIK have been unjustly enriched, in that they have, directly and/or indirectly, received moneys from Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Deerbrook Insurance Company and Allstate Fire & Casualty Insurance Company that are the result of unlawful conduct and that, in equity and good conscience, they should not be permitted to keep.

1829. Plaintiffs are therefore entitled to restitution from Defendants Klikshteyn and YKLIK in the amount by which they have been unjustly enriched.

1830. By reason of the foregoing, Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Deerbrook Insurance Company and Allstate Fire & Casualty Insurance Company have sustained compensatory damages and been injured in their business and property in an amount believed to be in excess of $565,000.00, the exact amount to be determined at trial, plus interest, costs and other relief the Court deems just.

## ONE HUNDRED SIXTY-FOURTH CLAIM FOR RELIEF

### AGAINST DEFENDANTS BENER WHOLESALE, INC., MDDS WHOLESALE, INC., VADIM YUZOVITSKIY, GRIGORY GROYSMAN, LIOUDMILA LATINOVA, ABC CORPORATIONS 1 THROUGH 20 AND JOHN DOES 9 THROUGH 20

#### (Aiding and Abetting)

1831. The allegations of paragraphs 1 through 323 are hereby repeated and realleged as though fully set forth herein.

1832. On information and belief, Defendants Bener Wholesale, MDDS Wholesale, Yuzovitskiy, Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one

509

or more of the John Does 9 through 20 knowingly aided and abetted the fraudulent scheme perpetrated on Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Deerbrook Insurance Company and Allstate Fire & Casualty Insurance Company by Defendants Klikshteyn and YKLIK.

1833.  On information and belief, the acts taken by Defendants Bener Wholesale, MDDS Wholesale, Yuzovitskiy, Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent scheme include: (i) knowingly creating fraudulent wholesale invoices that deliberately omit any meaningful information regarding the DME and/or orthotic devices, including the manufacturer, make and model of the DME and/or orthotic devices that Defendants Klikshteyn and YKLIK purportedly provided to No-fault Claimants; (ii) knowingly providing the fraudulent wholesale invoices so that Defendants Klikshteyn and YKLIK could mail fraudulent bills to Plaintiffs and other insurers; (iii) kicking back a portion of the amounts paid by Defendant Klikshteyn, through YKLIK, to YKLIK to create the impression of an actual sale in furtherance of the money laundering scheme; (iv) knowingly creating fraudulent wholesale invoices by intentionally inflating the amounts represented to constitute the wholesale costs and/or quantities of DME and/or orthotic devices in order to support the fraudulent billing submitted to Plaintiffs, among others, through YKLIK; and (v) knowingly facilitating the negotiation and payment of kickback agreements between Defendant Klikshteyn, through YKLIK, and the No-fault Clinics.

1834.  On information and belief, the conduct of Defendants Bener Wholesale, Yuzovitskiy, G. Groysman, Wholesale, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 in furtherance of the fraudulent

scheme is significant and material and is a necessary part of and is critical to the success of the fraudulent scheme because without their actions, there would be no opportunity for Defendants Klikshteyn through YKLIK to obtain fraudulently inflated payments from Plaintiffs, among others.

1835. On information and belief, Defendants Bener Wholesale, MDDS Wholesale, Yuzovitskiy, Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 aided and abetted the fraudulent scheme in a calculated effort to induce Plaintiffs into paying charges for DME and/or orthotic devices that were not compensable under the No-fault Laws, or were compensable at a much lower rate, because they sought to continue profiting through the fraudulent scheme.

1836. On information and belief, the conduct of Defendants Bener Wholesale, MDDS Wholesale, Yuzovitskiy, Groysman, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20 caused Plaintiffs Allstate Insurance Company, Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate New Jersey Insurance Company, Deerbrook Insurance Company and Allstate Fire & Casualty Insurance Company to pay money based upon the fraudulent charges submitted through YKLIK in an amount to be determined at trial, but in no event less than $565,000.00.

1837. On information and belief, Defendants Bener Wholesale, Yuzovitskiy, G. Groysman, Wholesale, Litvinova, one or more of the ABC Corporations 1 through 20 and one or more of the John Does 9 through 20's extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles Plaintiffs to recover punitive damages.

1838. By reason of the foregoing, Plaintiffs are entitled to compensatory and punitive damages, plus interest, costs and other relief the Court deems just.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE,** Plaintiffs demand judgment as follows:

i)      Compensatory damages in an amount in excess of $14,000,000.00, the exact amount to be determined at trial, together with prejudgment interest;

ii)      Punitive damages in such amount as the Court deems just;

iii)      Treble damages, costs and reasonable attorneys' fees on the First, Fifth, Ninth, Thirteenth, Seventeenth, Twenty-First, Twenty-Fifth, Twenty-Ninth, Thirty-Third, Thirty-Seventh, Forty-First, Forty-Fifth, Forty-Ninth, Fifty-Third, Fifty-Seventh, Sixty-First, Sixty-Fifth, Sixty-Ninth, Seventy-Third, Seventy-Seventh, Eighty-First, Eighty-Fifth, Eighty-Ninth, Ninety-Third, Ninety-Seventh, One Hundred First, One Hundred Fifth, One Hundred Ninth, One Hundred Thirteenth, One Hundred Seventeenth, One Hundred Twenty-First, One Hundred Twenty-Fifth,  One Hundred Twenty-Ninth, One Hundred Thirty-Third, One Hundred Thirty-Seventh, One Hundred Forty-First, One Hundred Forty-Fifth, One Hundred Forty-Ninth, One Hundred Fifty-Third, One Hundred Fifty-Seventh and One Hundred Sixty-First Claims for Relief, together with prejudgment interest;

iv)      Compensatory and punitive damages on the Second, Sixth, Tenth, Fourteenth, Eighteenth, Twenty-Second, Twenty-Sixth, Thirtieth, Thirty-Fourth, Thirty-Eighth, Forty-Second, Forty-Sixth, Fiftieth, Fifty-Fourth, Fifty-Eighth, Sixty-Second, Sixty-Sixth, Seventieth, Seventy-Fourth, Seventy-Eighth, Eighty-Second, Eighty-Sixth, Ninetieth, Ninety-Fourth, Ninety-Eighth, One Hundred Second, One Hundred Sixth, One Hundred Tenth, One Hundred Fourteenth, One Hundred Eighteenth, One Hundred Twenty-Second, One Hundred Twenty-Sixth, One Hundred Thirtieth, One Hundred Thirty-Fourth. One Hundred Thirty-Eighth, One Hundred Forty-Second, One Hundred Forty-Sixth, One Hundred Fiftieth, One Hundred Fifty-

Fourth, One Hundred Fifty-Eighth and One Hundred Sixty-Second Claims for Relief, together with prejudgment interest;

v)    Compensatory and punitive damages on the Third, Seventh, Eleventh, Fifteenth, Nineteenth, Twenty-Third, Twenty-Seventh, Thirty-First, Thirty-Fifth, Thirty-Ninth, Forty-Third, Forty-Seventh, Fifty-First, Fifty-Fifth, Fifth-Ninth, Sixty-Third, Sixty-Seventh, Seventy-First, Seventy-Fifth, Seventy-Ninth, Eighty-Third, Eighty-Seventh, Ninety-First, Ninety-Fifth, Ninety-Ninth, One Hundred Third, One Hundred Seventh, One Hundred Eleventh, One Hundred Fifteenth, One Hundred Nineteenth, One Hundred Twenty-Third, One Hundred Twenty-Seventh, One Hundred Thirty-First, One Hundred Thirty-Fifth, One Hundred Thirty-Ninth, One Hundred Forty-Third, One Hundred Forty-Seventh, One Hundred Fifty-First, One Hundred Fifty-Fifth, One Hundred Fifty-Ninth and One Hundred Sixty-Third Claims for Relief, together with prejudgment interest;

vi)    Compensatory and punitive damages on the Fourth, Eighth, Twelfth, Sixteenth, Twentieth, Twenty-Fourth, Twenty-Eighth, Thirty-Second, Thirty-Sixth, Fortieth, Forty-Fourth, Forty-Eighth, Fifty-Second, Fifty-Sixth, Sixtieth, Sixty-Fourth, Sixty-Eighth, Seventy-Second, Seventy-Sixth, Eightieth, Eighty-Fourth, Eighty-Eighth, Ninety-Second, Ninety-Sixth, One Hundredth, One Hundred Fourth, One Hundred Eighth, One Hundred Twelfth, One Hundred Sixteenth, One Hundred Twentieth, One Hundred Twenty-Fourth, One Hundred Twenty-Eighth, One Hundred Thirty-Second, One Hundred Thirty-Sixth, One Hundred Fortieth, One Hundred Forty-Fourth, One Hundred Forty-Eighth, One Hundred Fifty-Second, One Hundred Fifty-Sixth, One Hundred Sixtieth and One Hundred Sixty-Fourth Claims for Relief, together with prejudgment interest;; and

vii)     Costs, reasonable attorneys' fees and such other relief that the Court deems just

and proper.

Dated: New York, New York,
       May 16, 2012

                                        Stern & Montana, LLP


                                        By: _____
                                            Robert A. Stern (RAS-1282)
                                            Sandra P. Burgos (SB-6856)
                                            Daniel S. Marvin (DM-7106)
                                            Tina R. Karkera (TK-8565)
                                            Attorneys for Plaintiffs
                                            Trinity Centre
                                            115 Broadway
                                            New York, New York 10006
                                            (212) 532-8100

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------------------- X

ALLSTATE INSURANCE COMPANY, ALLSTATE INDEMNITY COMPANY, ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY, ALLSTATE NEW JERSEY INSURANCE COMPANY, ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, NORTHBROOK INDEMNITY COMPANY AND DEERBROOK INSURANCE COMPANY,

                              **Plaintiffs,**

    -against-

ALEKSANDR AFANASYEV, ELDAR AKHMEDOV, RUSLAN ALYAS, BETTY ANDRESOL, ARKADY BULOCHNIKOV, GRIGORY BRANFENBRENER, EDUARD BODRUNOV, GENNADIY BRONSHTEYN, DARIYA BYSTRA, VADYM DETS, MAKSYM FEDOTOV, ALEKSANDR FINKELSHTEYN, ROBERT FINKELSHTEYN, MARIYA GOMELSKAYA, YURY GROISMAN, LYUBOV GROYSMAN, MIKHAIL KAGAN, IGOR KATS, BORIS KATZ, VLADAMIR KHEMELNITSKI, YEFIM KLIKSHTEYN A/K/A YEFIM KLISSHTEYN, MAKSYM KLOSOVSKIY, OKSANA KOVALENKO, LEONID KOZACHKOV, MIKHAIL KREMARMAN, SOFIYA KUPERMAN, IGOR LADANOV, NADIA LADANOVA, NICHOLAS LESKO, VITALY LEVIN, ARTHUR LOJEWSKI, ILYA MUGERMAN, GARY NABITOVSKY, ALEX PIVENSHTEYN, IRINA PILYAVSKY, BELA RUD, OLEG SAVKUB, VIKTOR SEMERIK, ARKADI SHAPIRO, IGOR SHTURMAN A/KA IGOR SHIUPMAN, IGOR SOBOLEVSKY, ALEKSANDR TARTAKOVSKIY, ROMAN VCHERASHANSKY, VADIM VINOKOUR, VLADIMIR YEPIFANOV, ARTEM YURYEV, DENIS ZAGLADKO, IRINA ZAYONTS, SVETLANA ZILPER, A PLUS MEDICAL SUPPLIES CORP., ALEV MEDICAL SUPPLY, INC., ALROF, INC., ALUR MEDICAL SUPPLY, INC., AMEGA, INC., AVGUR SUPPLY, INC., BATH ORTHO SUPPLY, INC., D & R MEDICAL SUPPLY, INC., DB SUPPLY, INC., DORSI MEDICAL SUPPLY, INC., EGA GROUP, INC., ENKO ENTERPRISES INT'L, INC., FEMA MEDICAL SUPPLY, INC., HEAL SUPPLY INC., INFINITY HEALTH PRODUCTS, LTD., JESA MEDICAL SUPPLY, INC., LEICA SUPPLY INC., MED HELP SUPPLY, INC., MEDIX SURGICAL SUPPLY INC., MEGA SUPPLIES BILLING, INC., METROSTAR, INC., MILLENNIUM SUPPLIES, INC., MSSA, CORP., OLMA MEDICAL EQUIPMENT, INC., ORTHO PRODUCTS & EQUIPMENT, INC., ORTHO-MED SURGICAL SUPPLY, INC., PAHTA MEDICAL SUPPLY, INC., PARK SLOPE MEDICAL & SURGICAL SUPPLY, INC., PRIMA MEDICAL SUPPLY, INC., PROMED SUPPLY CO., INC., PRO-VEK PLUS INC., RELIABLE SUPPLY OF NY, INC., RIGHT SOLUTION MEDICAL SUPPLY, INC., TRIMED MEDICAL SUPPLY, INC., UNLIMITED PRODUCTS, LTD., VESPA SUPPLY, INC., VISS SUPPLY, INC., VISTA SURGICAL SUPPLIES, INC., WE DO CARE MEDICAL SUPPLY, INC., XVV, INC., YKLIK, INC., VLADISLAV AGUVAYEV, GRIGORY GROYSMAN, LIOUDMILA LITVINOVA, VADIM YUZOVITSKIY, MICHAEL ZAVRAZHIN, BENER WHOLESALE, INC., CHESTERON, INC., DEIMOS DISTRIBUTORS, INC., DELAZOOM, INC., DEVONIAN, INC., EXCELL PLUS, INC., FRAZIER TRADING COMPANY, INC., GALASA WHOLESALE, INC., GLOBAL BEST DEAL, INC., IVY MED DISTRIBUTORS, INC., MAJOR MARKET MERCHANDISE, INC., MDSS WHOLESALE, INC., NEW STEP SERVICES, INC., RIVIERA WHOLESALE, INC., ROPA, INC., WEST COAST, INC., JOHN DOES 1 THROUGH 20 AND ABC CORPORATIONS 1 THROUGH 20,

                              **Defendants.**

--------------------------------------------------------------------------- X

CIVIL ACTION
NO:_____

COMPLAINT

(TRIAL BY JURY DEMANDED)

# COMPLAINT

STERN & MONTANA, LLP
ATTORNEYS FOR PLAINTIFFS
TRINITY CENTRE
115 BROADWAY
NEW YORK, NEW YORK 10006
TELEPHONE: (212) 532-8100